# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 17-20631-CR-SCOLA/GOODMAN

UNITED STATES OF AMERICA,

     Plaintiff,

v.

OSMANY RODRIGUEZ DIAZ,

     Defendant.

_____/

Ex Rel PROPERTY INVESTMENT 7722 LLC
and BRANDON FALCON,

     Petitioners.

_____/

### REPORT AND RECOMMENDATIONS ON UNITED STATES' MOTION TO DISMISS PETITION FOR THIRD-PARTIES' INTEREST IN FORFEITED PROPERTY AND ON THE THIRD-PARTIES' PETITION

After this Court entered a Second Preliminary Order of Forfeiture [ ECF No. 416 (the "Forfeiture Order")], Claimants Property Investment 7722 LLC (the "LLC" or the "Entity") and Brandon Falcon ("Falcon" and collectively, "Claimants" or "Petitioners") jointly filed a petition [ECF No. 419], pursuant to Fed. R. Crim. P. 32.2(c) and 21 U.S.C. § 853(n)(2), to assert their legal interests in property identified in the Forfeiture Order. The Forfeiture Order granted the United States' motion for a second forfeiture order, based on the theory

that the real property at issue (i.e., 21105 S.W. 213 Avenue Road, Miami, FL 33187, the "Subject Property") belongs to the criminal defendant, Osmany Rodriguez Diaz ("Defendant" or "Diaz"), and is a substitute asset.

Under penalty of perjury, Claimants asserted their ownership interests in the real property. Claimants allege in their Petition that (1) Defendant Rodriguez has no ownership interest in the real property; (2) the LLC is the record title owner; (3) Claimant Falcon resides at the property with his family; (4) Falcon is the managing member and owner of the LLC; (5) Falcon obtained his controlling interest in the LLC on April 5, 2022, before entry of the substitute asset forfeiture order; and (6) the LLC has held title to the property since May 25, 2017.

Petitioners assert their legal and equitable right, title, and interest in the property under 21 U.S.C. § 853(n)(6)(A) -- in that their legal right, title, or interest in the property renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in them, rather than the defendant, and was superior to any right, title, or interest of the defendant at the time of the substitute asset forfeiture. They also are pursuing their claim under 21 U.S.C. § 853(n)(6)(B) -- in that Claimants qualify as bona fide purchasers of property reasonably without cause to believe that the property was subject to forfeiture within the meaning of 21 U.S.C. § 853(n)(6)(B) when the property and the legal and equitable interests were acquired by Claimants.

Claimants also asserted a constructive trust interest in the real property for

maintenance and preservation done on and to the property.

In response, the United States filed a motion [ECF No. 426] to dismiss the petition, arguing that Falcon lacks standing to pursue the third-party claim and that both Claimants (i.e., Falcon and the Entity) failed to establish grounds entitling them to relief in this ancillary forfeiture proceeding. Claimants filed a response [ECF No. 428] to the dismissal motion and requested, as alternative relief, leave to file an amended petition to cure any perceived pleadings defect. The United States filed a reply [ECF No. 431] and United States District Judge Robert N. Scola, Jr. referred [ECF No. 427] both the petition and the motion to dismiss to me.

For the reasons outlined in greater detail below, the Undersigned **respectfully recommends** that (1) the motion to dismiss be **granted in part and denied in part**; (2) Falcon be permitted to file an *amended* petition; (3) the LLC's claim be litigated at an evidentiary hearing type of ancillary proceeding; and (4) if Falcon were to submit an amended claim (in an amended petition) which would provide him with standing to challenge more than the $20,000 he asserts under a constructive trust theory, then the evidentiary hearing would accommodate that claim, as well.

The Undersigned notes that some of the United States' lack-of-standing and the-claim-fails-as-inadequate arguments are fact-based and are best resolved at the evidentiary hearing contemplated by the ancillary forfeiture proceeding framework, rather than through a motion to dismiss. Also, for purposes of the motion to dismiss only

(as opposed to a possible to-be-filed summary judgment motion or the ultimate evidentiary hearing itself), the Undersigned recommends that Falcon's constructive trust theory remain (and not be dismissed for lack of standing or a failure to state a claim), though that theory encompasses only the improvements and repairs he made and/or paid for (but not the entire real property itself).

In addition, the Undersigned notes that the United States relies upon the *lis pendens* and renewal of the *lis pendens* which it recorded against the Subject Property. But, as we will explain later in the ruling, both of those recordings were unauthorized and therefore cannot be used to bolster the United States' legal position in its motion to dismiss.

At bottom, the two recordings of the *lis pendens*, while accomplished after Defendant's conviction, were filed and recorded *before* the United States moved to forfeit the real property as a substitute asset (and, obviously, before the Court entered a forfeiture Order which granted the motion and forfeited the Subject Property to the United States, subject to third-party interests). Until the Court forfeited the Subject Property, it was merely a *potential* substitute asset -- a status which was insufficient under both federal and Florida law to justify a *lis pendens* at that time.

**Factual and Procedural Background**

The Superseding Indictment [ECF No. 79] contained a forfeiture count. That count lists specific properties, including real properties, which the United States contended would be subject to forfeiture under 18 U.S.C. § 982(a)(7), following a conviction. The

Subject Property, however, was not listed. The Superseding Indictment also listed other properties, including real properties, which the United States had the "intent" to seek forfeiture of under 21 U.S.C. § 853(p) as substitute assets. But the Subject Property was not listed there either.

On April 17, 2018, the Court entered a Preliminary Order of Forfeiture [ECF No. 171 ("Preliminary Forfeiture Order")], imposing a forfeiture money judgment of $1,728,508.00 against Defendant, as a leader in the conspiracy of the offense conduct, of which judgment Defendant has not attempted to pay down.

The United States was unable to recover Defendant's directly forfeitable property and ultimately identified the Subject Property, which was acquired by Defendant and titled in the name of the LLC.[1] The United States recorded a *lis pendens* against the Subject Property on September 13, 2018, and it recorded a renewal of its *lis pendens* on December 15, 2021. The renewal of the *lis pendens* was recorded four months **after** Petitioner Falcon's purported purchase of an interest in the Entity listed as the record owner of the Subject Property.

On August 5, 2022, the United States filed its Motion for Second Preliminary Order of Forfeiture. [ECF No. 415] The motion sought to forfeit the Subject Property as a substitute asset to satisfy, in part, the $1,728,508.00 forfeiture money judgment imposed

---

[1]     According to the United States' motion to dismiss, publicly available documents on Sunbiz.org show that Defendant created the LLC on May 10, 2017 and named himself as its Authorized Member and Registered Agent. [ECF No. 426].

on Defendant as part of his sentence. The United States submitted an FBI Special Agent's declaration [ECF No. 415-1] in support of the motion. The declaration explained that directly forfeitable property could not be located and was otherwise unavailable. The declaration did not, however, say anything about the representation, in the United States' motion, that the Subject Property was "acquired by [] Defendant through a company called Property Investment 7722 LLC" and that Defendant "is the Authorized Member and Registered Agent of Property Investment 7722 LLC that is he [sic] titled owner of real property located at 21105 SW 213 Avenue Road, Miami, FL 33187." [ECF No. 415, p. 5].

On August 8, 2022, the Court entered a Second Preliminary Order of Forfeiture (the "Forfeiture Order"), which forfeited the Subject Property to the United States as substitute property in satisfaction of the forfeiture money judgment, subject to third-party interests. [ECF No. 416].

In the Petition, Falcon contends that he "would be personally obligated on the mortgage for the property and is otherwise responsible for the property" because, although he is not the record title owner of the property, he is "the sole owner and controlling officer" of the LLC. [ECF No. 419, p. 2]. He says that "he would be personally injured by the forfeiture of his solely-owned company's assets." *Id.*

In its dismissal motion, the United States raises additional points about Falcon's claim in a footnote:

> [I]n response to the United States' First Set of Interrogatories propounded on Petitioner Falcon's Response to Interrogatory No. 5, Falcon states that:

"[o]n April 5, 2022, [he] acquired and became the sole owner of the company that already owned the property. [He is] not cognizant of the price paid by the LLC for the property or the specific circumstances of that acquisition. [His] terms for acquisition of the LLC met the demands of [] [Defendant and the] prior owner of the LLC and included finding and paying the lease for a new residence for him for a period of one year. The transaction was conducted on the basis of a **verbal agreement** with which [he] fully complied. Florida Secretary of State records (Sunbiz) reflect [his] ownership record as to the LLC." In support of the **verbal** agreement, Petitioner Falcon provided a copy of the front page of a **purported lease agreement** between Vilma Cuenca ("Landlord") and Defendant ("Tenant") for the term of one year (October 1, 2022 through September 30, 2023), and provided copies of four checks, each in the amount of $5,000, dated 11/1/2022; 12/1/2022; 1/1/2023; and 3/1/2023 (for a total of $20,000) as proof of the rent Petitioner paid on behalf of [] Defendant.[2]

[ECF No. 426, p. 12 n.4 (some alterations in Motion; footnote and emphasis added)].

The Petition, asserting that ownership of the Subject Property rests legally and beneficially with Claimants, asks the Court to amend the forfeiture order to remove from forfeiture the real estate at issue here. Falcon signed the Petition under penalty of perjury in his individual and representative capacity (i.e., on behalf of both himself and the Entity).

## Applicable Legal Standards and Analysis

Rule 32.2(c)(1)(A) of the Federal Rules of Criminal Procedure specifically authorizes the Court, on motion, to dismiss a third-party petition "for lack of standing, for failure to state a claim, or for any lawful reason." However, that Rule also provides

---

[2]     The United States did not submit the interrogatory answer itself, however. And it did not submit the front page of the purported lease agreement or copies of the four checks.

that "[f]or purposes of the motion (to dismiss), the facts set forth in the petition are **assumed to be true**." (emphasis added). In addition, the United States contends, because ancillary forfeiture proceedings following a criminal forfeiture Order are essentially *civil* in nature, a petition may be dismissed by a motion pursuant to Rule 12 of the Federal Rules of Civil Procedure. *See United States v. Gilbert*, 244 F.3d 888, 907 (11th Cir. 2001);[3] *United States v. Cohen*, 243 F. App'x 531, 534 (11th Cir. 2007). Petitioners have not challenged the United States' procedural step of using a civil-type motion to dismiss as the mechanism for advancing its challenge to their standing and to the Petition's merits.

Before discovery or a hearing, a motion to dismiss a petition should be treated like a motion to dismiss a civil complaint under Rule 12(b) of the Federal Rules of Civil Procedure. *United States v. Marion*, 562 F.3d 1330, 1342 (11th Cir. 2009) (explaining that a court in the ancillary hearing "may, on motion, **dismiss** the petition" for "**any lawful reason**" (citing *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004) (emphasis added)).[4] As mentioned, in considering a motion to dismiss, the court presumes the facts set forth

---

[3]     As noted by *United States v. Javat*, No. 20-13310, 2022 WL 703940, at *4 n.1 (11th Cir. Mar. 9, 2022), *Gilbert* was "superseded by rule on other grounds, as recognized in *United States v. Marion*, 562 F.3d 1339 (11th Cir. 2009)."

[4]     The *Marion* Court reversed a district court's order denying the United States' motion to dismiss a third-party's petition. 562 F.3d at 1339. The United States' motion argued that the third-party's petition was untimely. The petitioner there was the grandmother of the criminal defendant, who had pled guilty to a cocaine distribution conspiracy, and she claimed an interest in two Fort Myers' properties listed in the preliminary order of forfeiture.

in the petition to be **true**. Fed. R. Crim. P. 32.2(c)(1)(A). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (establishing same standard for a Rule 12(b)(6) motion); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (same).

To survive a motion to dismiss, a petition "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Although at the pleading stage a petition's allegations need not be **proven**, the petition "must do more than simply assert" the petitioner's interest, or "state that interest in a conclusory fashion." *United States v. Kokko*, No. 06-cr-20065, 2007 WL 2209260, at *5 (S.D. Fla. July 30, 2007). "The showing may not be a heavy burden, but it is a burden nonetheless." *Id.* at *5.

Section 853(n)(3) sets forth what must be included in the verified petition:

the nature and extent of the petitioner's right, title, or interest in the property, the **time and circumstances of the petitioner's acquisition** of the right, title, or interest in the property, any **additional facts supporting** the petitioner's claim, and the relief sought.

21 U.S.C. § 853(n)(3) (emphasis added).

When a petition fails to demonstrate standing under § 853(n)(3) and/or fails to state a claim for relief, a Court may strike or dismiss the petition -- or it may also, or in the alternative, require Petitioner to file an amended petition to clarify the claim so that it satisfies the statutory requirements. *See, e.g., Kokko*, 2007 WL 2209260, at *6 (requiring petitioner to file an amended petition within 20 days).

Falcon's Purported Standing

Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *United States v. $960,000 Dollars in U.S. Currency*, 307 F. App'x 251, 255 (11th Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (affirming order, after a bench trial, that claimant lacked sufficient possessory interest in currency seized in a shipping carton at international airport required for standing to contest forfeiture)); *see also United States v. Henry*, 621 F. App'x 968, 971-72 (11th Cir. 2015) (quoting *United States v. Weiss*, 467 F.3d 1300, 1307-08 (11th Cir. 2006) ("If a claimant lacks Article III standing to challenge a forfeiture, th[e] Court does not have jurisdiction to consider the claim.")).

The party invoking federal jurisdiction bears the burden of proving standing." *Bischoff v. Osceola Cnty.*, 222 F.3d 874, 878 (11th Cir. 2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *see also Henry*, 621 F. App'x at 972. If a petitioner lacks standing, then the Court need not address the substantive merits of its claim. *See United States v. Masilotti*, 510 F. App'x 809, 810 n.2 (11th Cir. 2013) (no need to address claimants' six substantive arguments or the United States' contention that the appeal was not timely filed when Court found that Claimants lacked standing).

Standing has three elements:

(1) the party claiming standing must have suffered an "injury in fact," an invasion of a legally protected interest that is both (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be some causal connection between the injury and the

complained-of conduct; and (3) it must be likely, not just speculative, the injury will be redressed by a favorable decision.

*Henry*, 621 F. App'x at 972.

"Standing in forfeiture cases has 'both constitutional and statutory aspects.'" *United States v. Thomas*, No. 19-cr-00457, 2021 WL 5278725, at *5 (M.D. Ala. July 13, 2021) (citing *United States v. Timley*, 507 F.3d 1125, 1129 (8th Cir. 2007) (quotation omitted)). "Constitutional standing, also referred to as Article III standing, requires a petitioner to establish an 'injury-in-fact' that is connected to the complained-of conduct, and to show that such injury is likely to be redressed by a favorable decision." *United States v. Tardon*, 493 F. Supp. 3d 1188, 1234 (S.D. Fla. 2020).

"Because Article III standing is a sine qua non to federal judicial involvement, a federal court must resolve any doubts about such standing before proceeding to adjudicate the merits of a given case." *Thomas*, 2021 WL 5278725, *at *5* (citing *United States v. Catala*, 870 F.3d 6, 9 (1st Cir. 2017)). This requirement "applies even when neither party has raised the issue." *Id*.

"At its core, Article III standing requires the existence of injury, not ownership." *Henry,* 621 F. App'x at 972. A petitioner need not own the property; a lesser property interest, such as a possessory interest, is enough for standing. *Id.; see also, United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019) ("To establish standing in a forfeiture proceeding, we have looked to whether the litigant has an interest in the property subject

to the forfeiture because, absent an interest in that property, there is no case or controversy."). "Ownership may be established by proof of actual possession, control, title, and financial stake. . . . It is well settled that a bare assertion of ownership in the property, without more, is not enough to prove an ownership interest sufficient to establish standing." *United States v. $11,320.00 in U.S. Currency*, 880 F. Supp. 2d 1310, 1323 (N.D. Ga. 2012) (citations and internal quotation marks omitted).

<u>Falcon's Status as an LLC Member</u>

The Petition alleges that the Subject Property is "titled in the name of Claimant record owner, Property Investment 7722 LLC, of which Claimant Brandon Falcon is managing member and owner." The Petition further contends that Falcon, as sole owner and controlling officer of the LLC, "would be personally obligated on the mortgage for the property and is otherwise responsible for the property." The Petition also claims that Falcon "would be personally injured by the forfeiture of his solely-owned company's assets."

"Federal law decides what interests are subject to forfeiture, but state property law defines what those interests are in the first instance." *United States v. Morales*, 36 F. Supp. 3d 1276, 1285 (M.D. Fla. 2014) (citing *United States v. Fleet*, 498 F.3d 1225, 1231 (11th Cir. 2007) and *United States v. Kennedy*, 201 F.3d 1324, 1334 (11th Cir. 2000)). In other words, a petitioner's claimed interest in forfeited property "is evaluated by the law of the jurisdiction creating the asserted interest, i.e. **state** law." *United States v. ADT Sec. Servs.*,

*Inc.*, 522 F. App'x 480, 490 (11th Cir. 2013) (emphasis supplied) (citing *United States v. Ramunno*, 599 F.3d 1269, 1272 1272 (11th Cir. 2010)).

Therefore, "once it is determined under state law that a third-party petitioner has a legal interest in the forfeited property, the court looks to federal law to determine whether the third-party petitioner's interest in the forfeited property is superior to the defendant's interest." *Morales*, 36 F. Supp. 3d at 1285 (citing *United States v. Shefton*, 548 F.3d 1360, 1364 (11th Cir. 2008)).

Under Florida's statutory scheme, a limited liability company (LLC) holds property **separate and apart** from the property of its members. *See* Fla. Stat. § 605.0110. (entitled "Limited liability company property").[5] Subsection 2 of the statute provides that "Property acquired with limited liability company funds is limited liability company property," and subsection 4 provides that "A *member* of a limited liability company *has no interest* in any specific limited liability company property." (emphasis supplied).

Florida's unequivocal statutory provisions mean that Falcon "cannot assert a claim on [his] own behalf" because his "claimed interest in the propert[y] arises only out of [his] membership in the LLC[] owning [that] propert[y]" *ADT Sec. Servs.*, 522 F. App'x at 490 (affirming summary judgment for United States in forfeiture action because the claimant in an *in rem* civil forfeiture proceeding against real properties asserted an interest arising

---

[5]   The United States cited [ECF No. 431, p. 2] Florida Statutes § 608.425, which was repealed and is the older, now-replaced version of the statute.

only out of its membership in LLCs owning the properties, which means claimant could not "assert a claim on its own behalf").

Given the Florida statute and case law authority construing its terms, it is clear that members of an LLC (like Falcon) lack standing to contest the forfeiture of assets purportedly owned by the LLC. In *ADT Sec. Services*, for example, the Bayhill LLC claimed an interest in properties because of its membership in *other* LLCs owning the properties -- a legal position our appellate court found incorrect. *See also United States v. All Funds in Acct. of Prop. Futures, Inc.*, 820 F. Supp. 2d 1305, 1325-29 (S.D. Fla. 2011) (analogizing members of an LLC to stockholders in a corporation and agreeing with the Government that, "just as shareholders lack standing to contest the forfeiture of corporate assets, LLC members lack standing to contest the forfeiture of assets owned by an LLC").

Other Florida federal courts agree with this rule concerning standing. *See also Rosenberg v. DVI Receivables, XIV, LLC*, No. 12-CV-22275, 2012 WL 5198341, at *2 (S.D. Fla. Oct. 19, 2012) ("Under Florida law, the shareholder standing rule applies to closely held corporations and to those with one shareholder."); *Hetrick v. Ideal Image Dev. Corp.*, 372 F. App'x. 985, 988-89 (11th Cir. 2010) (*citing Checkers Drive–In Restaurants, Inc. v. Tampa Checkmate Food Services, Inc.*, 805 So. 2d 941, 944 (Fla. 2d DCA 2001) (citation omitted)). *See also Lincoln Oldsmobile, Inc. v. Branch*, 574 So. 2d 1111, 1114 (Fla. 2d DCA 1990) ("[A] stockholder cannot maintain an action in his own name but must bring it in the name of the corporation. This is true **even where the individual is the *sole* stockholder of the**

**corporation**." (emphasis added)).[6]

As outlined above, in Florida, a member of an LLC lacks standing to contest property owned by the LLC because a member owns only his/her equitable share *in the LLC itself* and does not own the LLC property. Here, Petitioner Falcon claims that "the property in question is owned by, and belongs to, the Claimants [Falcon and Property Investment 7722 LLC][.]" [ECF 419, p. 1]; however, in Florida, a change in LLC membership would change only ownership in the *LLC*, but not ownership in the LLC *property* (as the *LLC* would still be the owner of the property).

Thus, Falcon lacks Article III standing **as an LLC member** to personally challenge the forfeiture of the Subject Property held in the name of the LLC, and *that portion* of his Petition should be **dismissed**, albeit **without prejudice**. But Falcon might be able to generate the requisite standing to challenge the forfeiture of the entire property itself through an amended petition focusing on any rights *he* has to live at the property (i.e., a possessory interest).

Ownership of the property at issue in a forfeiture proceeding is not required for Article III standing; a possessory interest alone, for example, will suffice. *See ADT Sec. Servs.*, 522 F. App'x at 489-90 (citing *United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1544 (11th Cir. 1987) (bailee has standing to challenge the forfeiture of seized

---

[6]     Our Eleventh Circuit cited *Lincoln Oldsmobile* with approval for this point in *Hetrick,* 372 F. App'x at 989.

currency, and noting that an "assignee who obtains his interest pursuant to [a] valid assignment by [a] party with [an] ownership interest has standing to contest [the] forfeiture")).

In the instant case, Falcon's Petition hinges primarily on his status as sole member of the LLC. The Petition succinctly *mentions* that Falcon "resides with his family" at the residential property at issue, but he does not explain the circumstances under which this has occurred or whether he has any ongoing right to *continue* to reside there. Did the LLC execute a lease giving him a contractual right to live there? Is there another type of written agreement, other than a lease, which gives Falcon any right to possess the property by residing there? Has Falcon paid rent to live at the property with his family, and is he required to pay rent in the future in order to continue to live there? Does he have an obligation to maintain the residential property owned by the LLC, and, if so, is it memorialized in writing? If he is, in effect, bartering his labor in exchange for the right to live at the home, are there specific tasks which he is expected to perform, and, if so, what are they?

These questions, and others, remain unanswered, as neither Petitioner provided in the Petition the type of information which would answer these questions (and provide the circumstances required by § 853(n)(3)).

Rather than conclusively determining that Falcon lacks standing and permanently foreclosing an opportunity to convince the Court to acknowledge his Petition on the

merits, the Undersigned deems it more prudent to give him an opportunity to submit an amended petition concerning his claim to the entire real property. Therefore, if Judge Scola were to adopt this Report and Recommendations, the Undersigned **respectfully recommends** that the Court provide Falcon with leave to file an amended petition within ten (10) days of the Order adopting the Report and Recommendations. [This recommendation is not a legal ruling or prediction that Falcon would in fact have the requisite standing to challenge the forfeiture of the entire real property if he were to file an amended petition. Any substantive ruling on standing concerning a not-yet-filed amended petition would be informed by the specific facts and underlying documents.].

In making this recommendation, the Undersigned notes that Petitioner's Opposition to the dismissal motion expressly requests leave to amend the petition (and even included that request in the title of the memorandum). *Cf. Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*) ("[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, **never** filed a motion to amend nor **requested** leave to amend before the district court"). *See generally Pinnacle Advert. and Mktg. Grp., Inc. v. Pinnacle Advert. and Mktg. Grp., LLC*, 7 F.4th 989, 1000 (11th Cir. 2021) (district courts have "broad discretion to allow pleading amendments even when a party does not formally request leave" and expressly rejecting argument that Federal Rule of Civil Procedure 15 be interpreted to include a formal requirement that a party seek leave from the district

court to amend its pleadings).[7]

<u>Alternate Theories Advanced by Petitioners</u>

The two Petitioners (the LLC and Falcon) have asserted interests under *both* 21 U.S.C. 853(n)(6)(A) and (B). The United States argues that this procedure is improper and justifies immediate dismissal. According to the United States, each Petitioner must, at the pleadings stage, specify *which* of the two subsections he (or it) is proceeding under. In other words, the United States argues that Petitioners must, at the pleadings stage, select one of the two subsections (and are prohibited from urging both, as alternative theories).

The Undersigned is not convinced by the Government's arguments.

Even in the two (non-precedential) cases cited by the Government, the courts found where "both provisions are [pled] in the alternative [the court] will . . . address both of them" on the merits, *United States v. Preston*, 123 F. Supp. 3d 108, 116 (D.D.C. 2015), or that where neither prong of § 853(n)(6) is specified and the petitioner 's claim is merely one as "a general creditor without a specific interest in the property ordered forfeit," *United States v. Ceballos-Lepe*, 977 F. Supp. 2d 1085, 1090 (D. Utah 2013), the asserted general creditor status would not suffice.

---

[7]  Federal Rule of Civil Procedure 15(a)(2) provides that "the court should freely give leave when justice so requires." In the instant case, of course, Claimants have filed only *one* petition (and have already requested leave to file an amended version, if necessary), so this case is different from others where leave was denied after more than two attempts to file an adequate pleading and/or where no request for leave was submitted. *Cf. Wagner v. Daewoo Heavy Indus.*, 314 F.3d at 542.

Neither § 853 nor Fed. R. Civ. P. 12 provides for dismissal of alternatively-pled claims. Indeed, because all forfeiture proceedings in the criminal case are *ex parte* as to the petitioners, not all factual variables concerning forfeiture are known to the petitioners in advance. Therefore, pleading in the alternative the legal theories for recovery is prudent and fully warranted under ancillary forfeiture procedure.

Moreover, "pleading in the alternative is permissible in federal court." *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1308 n.7 (11th Cir. 2020) ("Rule 8(d)[8] of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims.") (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009)). At some point, the two Petitioners will have to decide whether to proceed under subsection (A) or subsection (B), but not now, at the pleadings stage. *Block v. Matesic*, No. 21-61032, 2023 WL 3816693 (S.D. Fla. June 5, 2003) (denying motion to dismiss second amended complaint and holding that alternative pleadings are permissible).

<u>Petitioners' Constructive Trust Theory</u>

In their Petition, both Petitioners assert a constructive trust interest "in the dwelling" because "they have maintained and improved the property and made significant contributions to its maintenance and preservation." [ECF No. 419, p. 2] Although he is not a record title owner, Falcon alleges that he personally contributed to

---

[8]     Federal Rule of Civil Procedure 8(a)(3) provides that a demand for relief sought "**may** include relief in the **alternative** or different types of relief." Fed. R. Civ. P. 8(a)(3) (emphasis added).

the maintenance, preservation, and improvement of the real property.

After the United States filed its motion to dismiss, Petitioners submitted an Opposition [ECF No. 428] in which they pointed out that the United States sought and obtained additional discovery, including a list of financial expenditures, relating to the [P]etitioners' preservation, maintenance, and improvement of the property." *Id.* at 12. Their Opposition represents that the United States "claims that [P]etitioner has provided proof of payment of multiple invoices (but not all of the invoices) for work done on the Property" but then points out that "each of the invoices has been paid and the detailed records provided to the [G]overnment in discovery, including photographic and financial records, fully support the allegations of the [P]etition." *Id.*

The United States concedes that "[a] constructive trust, despite being an equitable remedy, *may* [in appropriate circumstances] serve as a cognizable, legal interest under 21 U.S.C. § [853](n)(6)(A) in forfeited property." [ECF No. 426, p. 10 (emphasis added) (citing *Shefton*, 548 F.3d at 1365)]. Acknowledging this possibility, the United States contends that Petitioners have not met the elements of a constructive trust under Florida law.

To survive dismissal, a third-party petitioner must show, as a "threshold state law question," that it is entitled to a constructive trust under state law. *See Ramunno*, 599 F.3d at 1274 n.2, 1275-76 (upholding district court's dismissal of petitioner's claim because it found, after a state law-permitted review of traditional principles of fairness and equity under Georgia law, a constructive trust was not warranted, a holding which eliminated

the need to consider the *federal* law issue).

"Federal law decides what interests are subject to forfeiture, but state property law defines what those interests are in the first instance." *Morales*, 36 F. Supp. 3d at 1285 (citing *Fleet*, 498 F.3d at 1231 and *Kennedy*, 201 F.3d at 1334). In other words, a petitioner's claimed interest in forfeited property "is evaluated by the law of the jurisdiction creating the asserted interest, i.e. state law." *ADT Sec. Servs., Inc.*, 522 F. App'x at 490 (citing *Ramunno,* 599 F.3d at 1272).

Thus, once it is determined under state law that a third-party petitioner has a legal interest in the forfeited property, the court looks to federal law to determine whether the third-party petitioner's interest in the forfeited property is superior to the defendant's interest. *Morales*, 36 F. Supp. 3d at 1285. And if a petitioner does not establish a legal interest in the property under the applicable state law, then there is no need to assess the federal law issue. *Shefton*, 548 F.3d at 1364.

Petitioners' request for the imposition of a constructive trust should "be assessed under the law of the jurisdiction 'which, with respect to that issue, has the most significant relationship to the occurrence and the parties.'" *See United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 205, 216 (D.D.C. 2011) (citing Restatement (Second) of Conflict of Laws § 145 (1971)). Based on the Petition (and the all-important facts that the real estate at issue is in Miami, Florida and that Falcon lives at the property and claims to have provided services there), Florida law is the relevant state law to

determine the availability of a constructive trust.

Under Florida law, "[a] constructive trust is one raised by equity in respect to property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it." *Provence v. Palm Beach Taverns, Inc.*, 676 So. 2d 1022, 1025 (Fla. 4th DCA 1996) (quoting *Quinn v. Phipps,* 113 So. 419, 422 (Fla. 1927)). As noted by the *Provence* Court, a constructive trust arises solely by operation of law. *Id.* (citing *Palmland Villas I Condo. Ass'n, Inc. v. Taylor,* 390 So. 2d 123 (Fla. 4th DCA 1980)). Thus, a constructive trust is a remedial device with dual objectives: to restore property to the rightful owner and to prevent unjust enrichment. *Id.* (citing *Abreu v. Amaro,* 534 So. 2d 771 (Fla. 3d DCA 1988)).

The United States contends that Petitioners have not adequately alleged facts to establish entitlement to a constructive trust under Florida law. Specifically, it argues that they did not satisfy Florida's required elements for a constructive trust: proving, by clear and convincing evidence, the existence of: "(1) a promise, express or implied, (2) [a] transfer of the property and reliance thereon, (3) a confidential relationship and (4) unjust enrichment. . . . similar to any equitable remedy, the enforcement of a constructive trust is tempered by equitable defenses, including laches and estoppel." [ECF No. 426, p. 12 (quoting *Provence,* 676 So. 2d at 1025 (internal citations omitted) and citing *Saporta v. Saporta,* 766 So. 2d 379, 381 (Fla. 3d DCA 2000) and *Maio v. Clarke,* 255 So. 3d 369, 371 (Fla. 4th DCA 2018))].

However, there is at least one federal case in our District describing applicable Florida law on constructive trusts in slightly different language, with different, and fewer elements. *Cf. United States v. Rothstein*, No. 09-60331-CR-COHN, 2010 WL 2927490, at *4 (S.D. Fla. July 21, 2010) (stating that under Florida law, the "elements of a constructive trust are: (1) a confidential relationship, by which (2) one acquires an advantage he should not, in equity and good conscience retain" (quoting *Bender v. Centrust Mortg. Corp.*, 51 F.3d 1027, 1030 (11th Cir. 1995))). *Rothstein* also cited *Williams v. Dep't of Health & Rehab. Servs.*, 522 So. 2d 951, 954 (Fla. 1st DCA 1988) for the two-factor rule (as opposed to the four factors outlined in *Provence*).

But *Provence* is a 1996 decision, while *Williams* was issued in 1988. Moreover, *Provence* appears to be the seminal Florida case outlining the requirements for a constructive trust, as it is repeatedly cited (and continues to be cited) in myriad cases, including decisions issued more recently than *Rothstein* (a federal case interpreting and relying on Florida law) and *Williams*. *See, e.g., Brown v. Regan*, No. 4D22-2352, 2023 WL 4094879, at *1 (Fla. 4th DCA June 21, 2023); *Silvas v. Silvas*, 334 So. 3d 630, 632 (Fla. 4th DCA 2022). In addition, Florida appellate courts other than the Second District (which decided *Provence*) *also* follow *Provence's* four-factor rule for constructive trusts. *See generally Crawley-Kitzman v. Hernandez*, 324 So. 2d 968, 976 (Fla. 3d DCA 2021); *Castetter v. Henderson*, 113 So. 3d 153 (Fla. 5th DCA 2013).

Given this dynamic, the Undersigned will use the four-factor *Provence* approach,

as I am convinced that it is an accurate statement of current and applicable Florida law on constructive trusts.

The United States argues that Petitioners did not attach to the Petition any financial documentation evidencing that money was used to *purchase* the Subject Property (but it noted that Petitioners' interrogatory answers provided additional information and that Petitioners provided copies of four $5,000 checks (from November 1, 2022, Dec. 1, 2022, January 1, 2023, and March 1, 2023) as proof that Petitioners paid rent on behalf of Defendant). Those checks, however, are not specifically alleged to have been used to *purchase* the real property or cause it to be transferred.

The United States also contends that Petitioners never pleaded the existence of a confidential relationship and never provided a tracing theory to confirm that funds went toward the Subject Property. According to the United States, Falcon submitted (in interrogatory answers) a list of expenses he purportedly incurred to clean up the property but did not provide any documentation to substantiate the purported expenses. According to the United States, the same response was provided in an interrogatory response by Property Investment 7722 LLC.

In conclusion, the United States says, the Court should decline to impose a constructive trust in Petitioners' favor under Florida law because they did not show an actual transfer of the real property and did not adequately plead the elements of a constructive trust. *See United States v. BNP Paribas S.A.*, No. 14 CR. 460 LGS, 2015 WL

1962882, at *4 (S.D.N.Y. Apr. 30, 2015) (finding petitioner, claiming an interest based on constructive trust, lacked standing because she traced no property interest to the forfeited property). *See also Small Bus. Admin. v. Echevarria*, 864 F. Supp. 1254, 1266 (S.D. Fla. 1994) (finding in favor of defendants after a bench trial because plaintiff failed to prove that defendants "obtained specific and identifiable property or property that could be clearly traced to [p]laintiff").

In addition to these arguments, the United States argues that the Court should not recognize a constructive trust, which is an equitable remedy, because equitable remedies are disfavored when there is an adequate remedy at law for the recovery of money -- and the United States says there are two other remedies available to Petitioners: (1) they can sue Defendant for fraud or breach of contract; and (2) they can sue the title company if they believe it gave them late notice of the *lis pendens*.

Because these other remedies exist, the United States argues, a constructive trust should not be available. *See Rothstein*, 2010 WL 2757203, at *4 (denying request for constructive trust because there is adequate remedy at law) (citing *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) ("It is well settled in Florida that . . . an equitable remedy [is] not available when there is an adequate legal remedy.*"); United States v. Rothstein*, 2010 WL 2813454, at *5 (S.D. Fla. July 14, 2010) (same); *United States v. Rothstein*, 2010 WL 2927490, at *5 (S.D. Fla. July 21, 2010) (same*); United States v. Rothstein*, 2010 WL 2943315, at *4 (S.D. Fla. July 26, 2010) (same).

In response, Petitioners say their Petition was sufficient to put the United States on notice of the nature of the constructive trust claim. In fact, they note, the United States sought and obtained discovery concerning Petitioners' "preservation, maintenance, and improvement of the property." [ECF No. 428, p. 12]. They argue that the repairs billed to, and paid by, them demonstrate that "their expensive and time-consuming efforts have turned the property around, from an uninhabitable dumping ground to a livable home."

According to Petitioners, the United States' actual opposition to the constructive trust theory is not with the fact that they contributed to the property. Instead, they say, the United States' primary challenge is "with the total value of the improvements and measure of the cost to [P]etitioners." And this, they say, is an issue for the ancillary hearing, where the Court can determine the extent of the constructive trust -- and not an issue to be resolved through a motion to dismiss.

Petitioners argue that Florida law permits their constructive trust theory because "a constructive trust . . .  is an equitable remedy to achieve justice and to prevent unjust enrichment." *Shultz v. Sun Bank/Naples, N.A.*, 553 So. 2d 202, 205 (Fla. 2d DCA 1989). They also cite a 1927 Florida Supreme Court case for the view that a constructive trust is "one raised by equity in respect to property which has been acquired by fraud, or where, though acquired without fraud, it is against equity that it should be retained." *Quinn v. Phipps*, 93 Fla. 805, 113 So. 419, 422 (1927).

Therefore, Petitioners urge, the constructive trust theory should apply here to

prevent an "inequitable taking of the **improvements made by petitioners** is supported by equity." [ECF No. 428, p. 14 (emphasis added)].

Using this approach, Petitioners might be entitled to a constructive trust remedy **for the value of the improvements** they made to the real property (as opposed to a remedy providing relief for the *entire* property). Thus, based on the evidence discussed thus far by the parties, Petitioners might be entitled to a constructive trust remedy over a $20,000 portion of the property (representing the four $5,000 checks they delivered) and perhaps for the value of other improvements and repairs.

Petitioners suggest that Florida law permits a constructive trust over a *portion* of a property, even if some other portion is deemed forfeitable. In support, they cite *Ramunno*, 599 F.3d at 1275 n.3 ("If [the petitioner] received a constructive trust limited to his pro-rata share of the forfeited assets, the potential unfairness to the other fraud victims would appear to be eliminated.").

Petitioners take issue with the United States' argument that the existence of other remedies precludes a constructive trust remedy. They brand the suggestion that they should sue Defendant or the title company as "not realistic" because, "at the very least," it is "unclear how improvement made on a home that [] [D]efendant did not, and does not, own could be billed to [] [D]efendant or how the title company could be held liable when there is no indication of title policy coverage in this matter." [ECF No. 428, p. 14].

Assuming, for the sake of discussion, that Petitioners have alleged a constructive

trust theory under Florida law, the Court needs to evaluate the effect of the constructive

trust on the Forfeiture Order (i.e., analyzing the theory under federal law). "While [state]

law determines the nature of [a petitioner's] interest in the property -- that is, whether he

is entitled to a constructive trust," *Ramunno*, 599 F.3d at 1273-74 (citing *Fleet*, 498 F.3d at

1231), "we apply federal law to determine whether that interest is a 'legal interest' under

§ 853(n)(6)(A) and whether it was superior to [the defendant's] interest at the time of the

fraud. *Ramunno*, 599 F.3d at 1274.

In *Shefton,* the Eleventh Circuit confirmed that "a constructive trust *can* render a

forfeiture order invalid" under § 853(n)(6)(A). 548 F.3d at 1365 (emphasis supplied)

(citing *United States v. $4,224,958.57,* 392 F.3d 1002, 1004–05 (9th Cir. 2004) (stating that if

the petitioners can prove the defendant defrauded them of funds he forfeited to the

Government, they are beneficiaries of a constructive trust and can challenge the

forfeiture); *United States v. Schwimmer*, 968 F.2d 1570, 1574, 1582 (2d Cir. 1992) (holding

that Congress's reference to "legal right, title, or interest" included interests arising in

equity and that "a constructive trust warrants an amendment of an order of forfeiture . .

. if . . . the property ordered forfeited is traceable to property held in constructive trust").

*Shefton* articulates two additional holdings relevant here: (1) "Although a

constructive trust is a judicially recognized remedy, . . . it arises when the underlying

*equities exist*, not when it is *announced*" and (2) the issue is not whether the petitioner's

constructive trust interest is superior to the **Government's** claim -- it is, instead, "whether

the petitioner's interest is superior to the *defendant's* interest in the forfeited property." *Id.*

at 1366 (final emphasis by the *Shefton* Court; other emphasis by the Undersigned).

Although the United States filed a Reply memorandum, it did not in any way

discuss the constructive trust theory or Petitioners' arguments on why they are entitled

to that equitable remedy.

Evaluating the parties' competing positions on the constructive trust theory is

made more difficult by the procedural posture: motions to dismiss a third-party petition

seeking an ancillary hearing in a criminal forfeiture scenario are typically analyzed

through a review of only the Petition itself -- i.e., whether the Petition adequately alleges

standing and grounds for relief when the allegations in the Petition are deemed true.

*Shefton*, 548 F.3d at 1363. *Cf. United States v. Couch,* No. 15-0088, 2017 WL 4105769 (S.D.

Ala. Sept. 15, 2017) (a petition may be dismissed before a hearing on a motion to dismiss

where the third-party lacks standing or fails to allege any recognizable right, title, or

interest in the forfeited property).

Because ancillary forfeiture proceedings are civil in nature, a party may move for

summary judgment after the close of discovery. *Morales*, 36 F. Supp. 3d at 1285. But no

summary judgment motion has been filed; we are here on a threshold motion to dismiss.

If the parties litigating a motion to dismiss a petition discuss purported new facts

not mentioned in the petition challenged in a dismissal motion, then the Court is usually

required to further develop the factual record, either through an evidentiary hearing, a

summary judgment mechanism (to see if there are any disputes of material facts) or at the evidentiary ancillary hearing. *See Henry*, 621 F. App'x at 972 ("We have explained district judges '*cannot* decide disputed factual questions or make findings of credibility essential to the question of standing on the paper record alone but *must* hold an evidentiary hearing.' *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 879 (11th Cir. 2000); *see also id*. at 881–82 (determining the district judge improperly weighed conflicting affidavits to determine the plaintiffs lacked standing). Instead, 'a district court should resolve disputed factual issues either at a pretrial evidentiary hearing or at trial.' *Id*. at 879." (emphasis in original)).

Here, however, both sides have asserted arguments based on facts outside of the Petition. Both sides refer to interrogatory answers and documents produced by Petitioners after the Petition was filed. The dismissal motion refers to factual allegations beyond the scope of the Petition itself, such as the reference to the LLC as a "shell company." [ECF No. 426, p. 4].

On the other hand, well-prepared summary judgment briefings could demonstrate a factual record on which the Court could safely render decisions about the constructive trust theory. Alternatively, the Court could hold an evidentiary hearing to elicit a more-developed factual record of the factors used to evaluate the theory. Or, if those alternatives are not pursued or do not yield results enabling the Court to conclusively decide the issue, then the Court can decide whether Petitioners have

successfully pursued a constructive trust theory at the final ancillary hearing.

For these reasons, the Undersigned respectfully recommends that this portion of the dismissal motion be **denied without prejudice**. The United States may pursue its opposition to the constructive trust theory in a summary judgment motion, at a pre-trial evidentiary hearing, or at the final ancillary hearing.

<u>Dispute Over the *Lis Pendens* Filed (and Refiled) by the United States</u>

In its dismissal motion, the United States contends that Petitioners cannot establish bona fide purchaser status under Florida law because Florida is a pure notice recording state -- and the United States "properly recorded a renewal of *lis pendens* against the Subject Property on December 15, 2021." [ECF No. 426, p. 8]. It also notes that Falcon claims to have purchased the ownership interest in the LLC which holds title to the Subject Property on April 4, 2022, nearly four months after the renewed filing of the *lis pendens*. According to the United States, under Florida law, any person trying to buy the property after December 15, 2021 "was, at the very least, on constructive notice of the Government's lien on the Subject Property." *Id*. at 9.[9]

But Petitioners contend that both the original filing of the *lis pendens* and its refiling

---

[9]    The United States does not explain why it did not argue that anyone trying to buy the property after *September 13, 2018*, when it first filed its notice of *lis pendens*, was on constructive notice. The contents of the two notices are identical, so it is unclear why the United States selected the *later* date. As we will soon see, though, both notices were unauthorized, and they were unauthorized for the same reason: they were premature, filed before the Government's potential theory ripened into an actual interest in the Subject Property.

were unauthorized and have no legal impact. The United States disagrees, arguing that the case is post-judgment (as opposed to pre-judgment) and that the *lis pendens* was recorded after the Court's entry of a Preliminary Order of Forfeiture and before Petitioners' third-party claim. [ECF No. 436]

In order to assess these competing positions, the Undersigned will highlight the relevant dates:

May 10, 2017: Defendant created Property Investment 7722 LLC (the "Entity") and named himself as its authorized member and registered agent.

May 25, 2017: Entity obtains Subject Property through warranty deed.

September 6, 2017: Indictment filed. 13 real properties listed in forfeiture count, but not the Subject Property.

October 24, 2017: Superseding Indictment filed. Subject Property not listed in the forfeiture count.

February 2, 2018: Defendant changes his plea to guilty on Count I, for conspiracy to commit health care fraud and wire fraud.

April 17, 2018: Court enters Preliminary Order of Forfeiture, Including A Forfeiture Judgment (of $1,728,508.00). It notes that Diaz agreed to forfeit his interest in specific properties, but the Subject Property is not one of them.

April 24, 2018: Court imposes judgment against Diaz, sentencing him to 42 months in federal prison.

September 13, 2018: First *lis pendens* on Subject Property filed in Miami-Dade County public records. It advised about the filing of the indictment and represented that the United States **"may"** seek to forfeit the Subject Property. (emphasis supplied). It did not say that the United States already had an interest in the Subject Property or that a Court had entered an Order or Judgment forfeiting the Subject Property to the United States. The *lis pendens* could not have accurately made that representation, as no Order or Judgment forfeiting the Subject Property to the United States had been entered at the time.

August 9, 2019: Court issues amended judgment, reducing Diaz's term of imprisonment from 42 months to 24 months.

December 15, 2021: Renewal of *lis pendens* filed in the public records of Miami-Dade County. The language was identical: it said the United States "may" seek to forfeit the Subject Property, did not say that the United States already had an interest in the Subject Property and did not contend that an Order or Judgment had already forfeited to it the Subject Property.

April 4, 2022: Date Falcon claims he purchased ownership interest in the Entity owning the Subject Property.

August 5, 2022: Government files motion for second preliminary order of forfeiture, seeking to forfeit the Subject Property as a substitute asset.

August 8, 2022: Court issues second preliminary forfeiture order, forfeiting Subject

Property to the United States, subject to adjudicating all third-party interests.

April 24, 2023: United States files motion to dismiss the Petition.

<u>November 15, 2022:</u> Petitioners filed the Petition at issue here.

<u>April 24, 2023:</u> United States files motion to dismiss the Petition.

Significantly, the United States recorded both its initial *lis pendens* and its renewal of the *lis pendens* **before** the Court forfeited the Subject Property to it -- and before the United States even sought an updated forfeiture order on the Subject Property under a substitute assets theory. Thus, at the time the Entity purchased the Subject Property and at the time that Falcon acquired his interest in the Entity, the United States had not yet acquired an interest in the Subject Property. As noted, the *lis pendens* filed in the public records advised only that the United States **might** seek to forfeit the Subject Property.

So that is similar to a notice advising that a party might in the future try to obtain a lien against some real property but had not acquired a lien and had not yet determined if it would ever actually seek one.

Therefore, the issue is whether the United States was authorized to record the *lis pendens* when it did -- i.e., before it applied for the supplemental forfeiture judgment which would, if the Court were to grant its motion, have provided it with an actual interest in the Subject Property.

Chief Magistrate Judge Edwin G. Torres has already (and recently) ruled upon, and wrote extensively about, this issue in *United States v. Rivera,* No. 22-20552-Cr-GAYLES/TORRES, 2023 WL 4363544 (S.D. Fla. July 6, 2023). The Undersigned sees little

benefit in reinventing the wheel, especially when I find the opinion well-written, comprehensively researched, and persuasive. Therefore, I will only summarize the highlights. Before doing so, however, the Undersigned will outline the key facts.

A federal grand jury indicted the defendants on several criminal charges. The indictment identifies several properties which are subject to forfeiture as tainted assets, in that they are connected to the defendants' unlawful activities. But the indictment also identifies eight parcels of real property as "substitute property" for *possible* forfeiture *if* the tainted assets are unavailable upon conviction. In the month following the issuance of the indictment, the United States recorded notices of *lis pendens* with the county clerks where the substitute properties are located. Similar to the language used in the *lis pendens* at issue here, the United States explained in each notice that it "may" seek to forfeit the real property named in the *lis pendens*.

The defendants then filed a joint motion to dissolve the notices of *lis pendens*.

Framed by this factual background, the Undersigned lists the legal highlights of *Rivera*, to the extent they are relevant here.

First, unlike tainted property, substitute assets (like the Subject Property) are not involved in or connected in any way to a defendant's alleged criminality.

Second, unlike their applicability to property directly linked to a defendant's offense of conviction (so-called "tainted property"), 21 U.S.C. § 853's forfeiture provisions do not contain a relation-back provision applicable to untainted, or substitute, assets.

Third, although 21 U.S.C. § 853 allows the Government to preserve the availability of tainted property by asking the Court to enter orders or take other necessary steps to preserve the availability of tainted property, it does not grant similar powers to the Government for substitute property.

Fourth, the filing of a notice of *lis pendens* in Florida is governed by Florida Statutes § 48.23(3), which requires the notice proponent to show that the pending submission is "founded on a duly recorded instrument or a [valid] lien claim" over the property.

Fifth, in order to support a notice of *lis pendens* on real property, "the pending lawsuit must reflect a 'fair nexus between the apparent legal or equitable ownership of the property and the dispute embodied in the lawsuit.'" *Rivera*, 2023 WL 4363544, at *2 (quoting *Chiusolo v. Kennedy*, 614 So. 2d 491, 492 (Fla. 1993)).

Sixth, the burden of proof to establish this fair nexus is borne by the party seeking to record the *lis pendens* notice.

Seventh, on the other hand, "[a] complaint which will not support a claim against the specific property at issue cannot provide a basis for tying it up by a filing of a notice of a *lis pendens*." *Id.* at *3.

Eighth, under Florida law, when the primary purpose of a lawsuit is to recover money damages and the action does not directly affect the title to or the right of possession of real property, the filing of a notice of *lis pendens* is not authorized." *Id.*

Ninth, neither the Supreme Court nor the Eleventh Circuit have directly addressed

the issue of whether section 853 authorizes the pre-trial filing of a notice of *lis pendens* on substitute assets property.

Tenth, several circuit courts which have evaluated the issue have concluded that the statute does not authorize the United States to impose a *lis pendens* restraint on innocent property (as opposed to tainted assets) before trial or conviction.

Eleventh, because a Government lawsuit like an indictment does not articulate a viable present claim or interest in a defendant's innocent substitute property, "the filing of *lis pendens* on [innocent properties] finds no basis under Florida law." *Id.* at *8.

Twelfth, the indictment did not embody an "apparent legal or equitable" interest in the defendants' innocent assets at the stage of the case when the motion was filed.

Thirteenth, "the United States does not have a ripened interest in § 853(p) substitute property until (1) after the defendant's conviction **and** (2) the court determines the defendant's § 853(a) forfeitable property is out of the [G]overnment's reach for a reason enumerated in § 853(p)(1)(A)-(E)." *Id.* at *8 (citing *United States v. Jarvis,* 499 F.3d 1196, 1204 (10th Cir. 2007) (emphasis supplied).

Fourteenth, the Court held that the United States does not have a colorable interest in the substitute real properties "until it obtains a conviction, and even then, substitute assets only come into play when needed to satisfy a shortfall." *Id.* at *9 (citing *United States v. Kramer,* No. 1:06-cr-200, 2006 WL 3545026, at *1 (Dec. 8, 2006)).

Fifteenth, the Court held, in effect, that the *lis pendens* was *premature* because the

Court had not yet issued an order of forfeiture naming the eight parcels as being forfeit to the United States.

Finally, the Court relied upon case law authority establishing that a lien which *might* arise after an order or judgment provides no basis for the filing of a *lis pendens* notice. *United States v. Boyer*, 58 F. Supp. 3d 173 (D. Mass. 2014) (even if property is likely to be forfeited as a substitute asset, it is not the "subject matter" of a criminal forfeiture case, which state *lis pendens* statute requires); *United States v. Queri*, 679 F. Supp. 2d 295, 297 (N.D.N.Y. 2010) (*lis pendens* not allowed where Government merely speculates it will "likely" be able to satisfy § 853(p)'s requirements after the defendant is convicted, as a "mere expectation" is insufficient to permit a pre-trial encroachment upon any substitute property) [10]; *United States v. Jewell*, 556 F. Supp. 2d 962 (E.D. Ark. 2008) (ordering Government to remove *lis pendens* from the defendant's residence; Arkansas law does not permit *lis pendens* in a civil suit for a money judgment to which court analogizes substitute asset forfeiture).

In its supplemental memorandum [ECF No. 436], the United States emphasizes that the "case" is post-judgment and post-sentencing and was recorded after the Court entered its preliminary Order of Forfeiture. But these so-called distinguishing factors are

---

[10]     The *Queri* Court held that the Government's filing of a notice of *lis pendens* on potential substitute assets was premature and unauthorized, and it therefore granted Defendant's motion for an order requiring the Government to cancel the initial notice of *lis pendens* and an amended notice of *lis pendens*.

not convincing, and they are not distinguishable in a meaningful, legal way.

Yes, the case is *now* in a posture where the Court has entered a Second Preliminary Order of Forfeiture, naming the Subject Property as being forfeit to the United States (subject to adjudicating third-party interests). But the Government filed the two notices of *lis pendens* before that Order was entered. In fact, they were filed in the public records before the United States even *asked* for an Order. For purposes of evaluating the Government's authority to file those notices, the procedural posture is akin to the one in *Rivera,* where the notion that the Subject Property would be forfeit as a substitute asset was only a possibility which might occur.

The United States also argues that this case is "post-conviction, where the Court has *already* **determined** the Subject Property **is** forfeitable." [ECF No. 436, p. 5 (emphasis added)]. But that description is incorrect. The Court had not yet made that determination at the time the notices of *lis pendens* were filed in the public records.

Let's remember, in order to obtain a forfeiture judgment on substitute assets (which are untainted), the United States must demonstrate, under Section 853(p), that, as a result of any act or omission of the defendant, the property fits into one of five categories:

> (A) [it] cannot be located upon the exercise of due diligence; (B) [it] has been transferred or sold to, or deposited with, a third[-]party; (C) [it] has been placed beyond the jurisdiction of the court; (D) [it] has been substantially diminished in value; or (E) [it] has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p).

Assuming that the United States can demonstrate that a property is covered by one or more of the five scenarios, the Court is authorized to order the forfeiture of the property as a substitute asset "up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable."

But, in order to demonstrate that one or more of the five circumstances justifying the forfeiture of substitute property is appropriate, the United States must demonstrate that reality to the Court. In the instant case, the United States did not make that presentation until it filed its Motion for Second Preliminary Order of Forfeiture [ECF No. 415], which was not filed until August 5, 2022. The Court granted that motion on August 8, 2022 [ECF No. 416].

The United States obtained that Second Preliminary Order of Forfeiture after it submitted a declaration from an FBI Special Agent, who explained that $1,687,988.09 of the forfeiture money judgment (of $1,728,508.00) remains unpaid. Significantly, the declaration also advised the directly forfeitable property is covered by one or more of the triggering circumstances.

Until the filing of the Government's motion and the submission of the declaration, the Court lacked an evidentiary foundation upon which to list the Subject Property as a substitute asset which was being forfeited to the United States.

Thus, the United States' ability to file a notice of *lis pendens* on the Subject Property

as a forfeitable substitute asset did not ripen until August 8, 2022. But *the lis pendens* was filed on September 13, 2018 and December 15, 2021 -- **long before the Government had the requisite authority to do so**. Before August 8, 2022, the United States did not have a viable present claim or interest in the Subject Property. Instead, all it had then was a *theory* that it might someday seek to forfeit the Subject Property as a substitute asset if it demonstrated the existence of an appropriate statutory ground. *See generally Dummond v. Alsaloussi,* No. 23-cv-21379, 2023 WL 3970958, at *6 (S.D. Fla. June 13, 2023) (granting motions to discharge the *lis pendens* on two properties and discharging the notices and explaining that the plaintiff had not established the necessary fair nexus because he did not allege an ownership interest in the properties "other than as a vehicle through which he will be able to satisfy the judgment he seeks against [the defendants]").

By way of summary, although the United States *now* has authority to file *lis pendens* notices in the public records concerning the Subject Property, it did not have that authority at the time it filed the two notices. Therefore, the United States may not rely on the *lis pendens* notices to support its motion to dismiss. It may, however, advance other arguments (in a summary judgment motion or at the evidentiary, ancillary hearing to adjudicate Petitioners' claims) concerning Plaintiff's notice (actual or constructive) of the Government's interest in the property.[11]

---

[11]   This comment does not indicate one way or the other whether the United States would be able to prevail on other notice-related arguments.

However, the Undersigned notes that Petitioners have not filed a motion to discharge the *lis pendens* notices, so the Undersigned will not provide unrequested relief. *See United States v US Stem Cell Clinic, LLC*, 987 F.3d 1021, 1025 (11th Cir. 2021) ("The district court cannot be faulted for failing to grant relief not requested."); *Fisk Elec. Co. v. Solo Const. Corp.*, 417 F. App'x 898, 902 (11th Cir. 2011) ("The District Court committed no reversible error by failing to grant relief not asked for: that is, amending the verdict to make Liberty Mutual jointly and severally liable for the same sum awarded against Solo."); *Fuller v. Burrows*, No. 10-61414-CV, 2011 WL 13217014, at *9 (S.D. Fla. Oct. 31, 2011) ("Although [the plaintiff] has not stated a claim for excessive force or brought suit against Deputy Davis, the Court will not strike his allegations or grant any other relief that [the] [d]efendants have not requested.").

In addition, the Undersigned will not make a legal prediction now about what impact, if any, the filing of a new notice of *lis pendens* would (or might) have on the Petitioners' claims (after Falcon acquired an ownership interest in the Entity and after he spent money on repairs).

## Conclusion

The Undersigned **respectfully recommends** that Judge Scola **grant in part and deny in part** the dismissal motion, **confirm** that the filing of the two prior *lis pendens* notices were unauthorized, **permit** Falcon to file an amended Petition within ten (10) days of the date of the Order approving this Report and Recommendations, and **authorize** the

Undersigned to hold a final evidentiary/ancillary hearing on the Petitioners' claims.

**Objections**

The parties shall have fourteen (14) days to file written objections, if any, with Judge Scola and fourteen (14) days to file a response to the other party's objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on September 20, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record