UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-20631-CR-SCOLA/GOODMAN

UNITED STATES OF AMERICA,

vs.

OSMANY RODRIGUEZ DIAZ,

    Defendant.
_____/

PROPERTY INVESTMENT 7722 LLC,

and

BRANDON FALCON,

    Claimants.
_____/

UNITED STATES' RESPONSE IN OPPOSITION TO AMENDED PETITION AND
INCORPORATED SUMMARY JUDGMENT MOTION

The United States of America responds to the Amended Petition for Third-Party
Interest in Forfeited Property, ECF No. 444, filed by Claimants Brandon Falcon ("Falcon")
and Property Investment 7722, LLC (the "LLC"), incorporating a summary judgment motion
under Fed. R. Civ. P. 56 and a Statement of Material Facts in Support of Summary Judgment
("SMF"), as follows:

INTRODUCTION

The United States is entitled to summary judgment on several grounds. First, the LLC
only nominally holds title to the real property located at 21105 SW 213 Avenue Road, Miami,
FL 33187 (the "Property") that was forfeited from Defendant Osmany Rodriguez Diaz
("Defendant"). The undisputed facts show that the LLC was and is a mere nominee or straw

owner of the Property, thus lacking constitutional standing to assert a superior interest in the Property under 21 U.S.C. § 853(n)(6)(A). Defendant created the LLC solely to hold title to the Property, a function it continues despite its nominal ownership change. The LLC has conducted no other business or followed corporate formalities apart from sporadic filings on *sunbiz.org*. Claimants cannot show otherwise; it and Falcon stated in discovery that they lack knowledge of the company's history and defer to the public corporate filings. Moreover, unlike a true property owner, the LLC has made no payments on the mortgage encumbering the Property or paid property taxes or stormwater costs—and neither has Falcon.

Second, even if the LLC has standing, it cannot establish that "at the time of the commission of the acts which gave rise to the forfeiture of the property," § 853(n)(6)(A), it had an interest in the Property superior to Defendant's interest. The criminal acts that gave rise to forfeiture occurred before the Property's purchase. The LLC did not acquire its interest in the Property prior to the commission of the crime that gave rise to the forfeiture of the Property. Thus, the LLC lacks a qualifying interest under § 853(n)(6)(A).

Third, the LLC is not a bona fide purchaser under 21 U.S.C. § 853(n)(6)(B). The undisputed facts show there was no "purchase" of the Property on April 5, 2022—by the LLC or Falcon. Instead, Falcon acquired the LLC after he gained actual knowledge of the Government's *lis pendens*, which informed him that the Property was subject to forfeiture. Acquiring the LLC did not result in a sale of the Property.

Even if the LLC could be classified as a purchaser under § 853(n)(6)(B), it would lack bona fide status because Defendant's and Falcon's knowledge of Defendant's wrongdoing would be attributed to it. Defendant certainly knew of his own wrongdoing. And so did Falcon, who admitted in discovery that before taking over the LLC he knew of Defendant's

indictment, conviction, and sentence, as well as the Government's *lis pendens*.

Fourth, Falcon has not alleged an individual claim under § 853(n)(6)(A) or (B), and any belated request to do so should be rejected. The Court granted Falcon leave to assert a possessory interest in the Property, which he did not do, thus abandoning such a claim. Moreover, the statutory 30-day claim-filing deadline has passed, precluding Falcon from amending the petition to assert an alternative claim. An amendment also would be futile because the undisputed facts show that Falcon has no individual interest in the Property. And even if Falcon could show that he acquired an individual interest in the Property, like with the LLC, he was not a bona fide purchaser given his actual knowledge of Defendant's indictment, conviction, and sentence, and the Government's *lis pendens*.

Fifth, Claimants lack standing to assert an unperfected construction or mechanics lien under Florida law. Claimants recognize that "general creditors lack standing to pursue ancillary claims" and admit they "have not perfected a construction lien." ECF No. 444 at 3. As such, black-letter law forecloses Claimants' alternative claim. Because Claimants never perfected a construction lien (which they cannot do at this point and which would have expired by now), they merely are unsecured creditors with no interest in the Property.

For these reasons, the Government requests that the Court grant summary judgment in its favor on Claimants' amended petition.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.     The LLC's Incorporation

On or about May 10, 2017, Defendant incorporated LLC. SMF ¶ 1. The LLC's Article of Organization identifies the LLC's "principal office" and the location of its registered agent and manager as the Property. SMF ¶ 2.

## II.      The Property Purchase

On or about May 25, 2017, the LLC acquired the Property. SMF ¶ 3. On or about May 25, 2017, the LLC entered into a Mortgage Deed and Interest Only Promissory Note (the "Mortgage") with a principal amount of $500,000. SMF ¶ 4. Falcon, answering on behalf of himself and the LLC, stated in Interrogatory Responses that he lacks "knowledge of the circumstances under which the property was acquired by Property Investment 7722 LLC" and is not "cognizant of the price paid by the LLC for the property or the specific circumstances of that acquisition." SMF ¶ 5(a)–(b).

## III.     Defendant's Indictment and Superseding Indictment

On September 5, 2017, a federal grand jury indicted Defendant and others with conspiracy to commit health care fraud and wire fraud, spanning from in or around July 2014 through in or around March 2017, in violation of 18 U.S.C. § 1349. ECF No. 1. On October 24, 2017, a federal grand jury returned a Superseding Indictment. ECF No. 79. The Indictment and Superseding Indictment alleged, among other things, that upon Defendant's conviction, the Government would forfeit his gross proceeds traceable to the offenses and his substitute property. ECF No. 1 at 12, 14; 79 at 12, 14.

## IV.     The Guilty Plea, Preliminary Order of Forfeiture, and Sentence

On February 2, 2018, Defendant pleaded guilty to conspiracy to commit healthcare fraud and wire fraud. ECF Nos. 119–21. As part of the guilty plea, Defendant agreed to the entry of a forfeiture money judgment in the amount of $1,728,508 and the forfeiture of directly forfeitable and substitute property. ECF No. 119 ¶ 8. On April 17, 2018, this Court entered a Preliminary Order of Forfeiture, imposing that forfeiture money judgment and forfeiting various assets. ECF No. 171; SMF ¶ 6. On April 24, 2018, Defendant was sentenced

to 42 months' imprisonment, later reduced to 24 months. ECF Nos. 192, 325, 326.

## V.     The *Lis Pendens* and Renewal of *Lis Pendens*

On September 13, 2018, the United States recorded a *lis pendens* on the Property. SMF ¶ 7(a). On December 15, 2021, the United States recorded a renewal of the *lis pendens*. SMF ¶ 7(b). The lis pendens and renewal both listed and identified this criminal case caption and number, date of the indictment, title owner of the Property, and charged offenses, and stated that the United States may forfeit the Property as a substitute property under 21 U.S.C. § 853(p). SMF ¶ 8.

## VI.    Defendant's Reinstatement of the LLC

Defendant was released from prison on or about September 3, 2021. SMF ¶ 9. On or about January 6, 2022, Defendant reinstated the LLC (which had become inactive) with the Florida Division of Corporations. SMF ¶ 10. Between the LLC's incorporation in 2017 and the January 2022 reinstatement, no other document had been filed in the Florida Division of Corporations relating to the LLC. SMF ¶ 11.

Before April 5, 2022, "the LLC was solely owned and controlled by Defendant" and "the LLC had no members, managers, or employees beside Defendant." SMF ¶ 12(a)–(b). Falcon, however, has "no personal knowledge of the company history" and "defer[s] to the record history indicated on the Sunbiz website of the Florida Secretary of State." SMF ¶ 13. The history of the LLC's assets and management is also not known to Falcon SMF ¶ 14.

## VII.   Falcon's Failed Property Purchase After Obtaining Actual Knowledge of the Government's *Lis Pendens*

On or about March 17, 2022, the LLC and Falcon entered into an "As Is" Residential Contract for Sale and Purchase for $825,000. SMF ¶ 15. The contract was not consummated, however, after Falcon conducted a title search and gained actual knowledge of the

Government's *lis pendens*. SMF ¶ 16.

In an email to Government counsel,[1] Falcon explained that he "met Mr. Diaz March 7, 2022 as i [*sic*] found the property on zillow for pre foreclosure." SMF ¶ 17. In discovery, Falcon confirmed that he "had no prior knowledge of or relationship to Osmany Rodriguez Diaz" before entering into the contract. SMF ¶ 18. Falcon explained in the email that he drove to the Property, which "was filled with trash and junk cars/trucks" and that, per Defendant, "there were squatters living in the house while he was in prison." SMF ¶ 19. Falcon continued that Defendant "told me he was losing the property and all he wanted was for his debts to be paid and for me to pay for him to get rented." SMF ¶ 20.

Falcon then admitted: "The first step I took was to have a title and lien search done and it came back clear. Almost a month later *the title company informs me there is a lis pending* [*sic*] *with the federal government*." SMF ¶ 21. Falcon claimed he became "overwhelmed" because he had "spent over sixty thousand in repairs and clean up because in order for me to finance it the property needed to pass inspection and fifteen thousand in renting Mr.Diaz [*sic*]." SMF ¶ 22. Thus, Falcon conceded, "[a]fter me not being able to finance it, I spoke with Mr. Diaz and I took over ownership of the LLC that owns the property." SMF ¶ 23.

In another email to mortgage counsel, Falcon repeated that he had acquired the LLC because he had been informed of the Government's *lis pendens*:

> Yes the first thing I did was have a title and lien search done before doing anything the title company didn't find anything nearly a month later is when they told me about the lis pending with the government. And thats when i decided an [*sic*] spoke with mr Rodriguez and took over the llc.

---

[1] Before speaking directly with Falcon, Government counsel confirmed with Falcon and his prior counsel that Falcon was no longer represented by an attorney. SMF at n.1. Falcon's former counsel stated: "Please feel free to speak directly with Mr. Falcon if that is his desire." *Id.*

SMF ¶ 24.

In discovery, Falcon further admitted that did not enter into a written agreement for the purchase of the Property. SMF ¶ 25. Claimants also admitted that as of April 5, 2022, the LLC still "owns the property, and any appurtenant rights," and no other asset. SMF ¶ 32. Indeed, when asked to identify the source of funds used to purchase the Property, Falcon answered, "Not Applicable," and referred to his acquisition of the LLC only. SMF ¶ 33.

## VIII.  Falcon's Acquisition of the LLC

On or about April 5, 2022, a *Statement of Change of Registered Office or Registered Agent or Both for Limited Liability Company* was filed with the Florida Division of Corporations, changing the LLC's registered agent from Defendant to Falcon. SMF ¶ 26. The "Registered Office Address" remained the Property's address. SMF ¶ 27. In response to interrogatories, Falcon confirmed that on April 5, 2022, he acquired and became the sole owner of the LLC that already owned the Property. SMF ¶ 28.

Falcon claims that the "terms for acquisition of the LLC met the demands of the prior owner of the LLC and included finding and paying the lease for a new residence for him for a period of one year." SMF ¶ 29. According to Falcon, "[t]he transaction was conducted on the basis of a verbal agreement with which I fully complied" and that the "Florida Secretary of State records (Sunbiz) reflect my ownership record as to the LLC." SMF ¶ 30.

Importantly, Falcon admitted in discovery that when he acquired the LLC, he (a) "knew that Defendant had been indicted on federal criminal charges," (b) "knew that Defendant had been convicted on federal criminal charges," (c) "knew that Defendant had been sentenced to prison on federal criminal charges," (d) had "authorized a title and lien search on the Subject Property," and (e) was "informed that the United States had filed a lis

pendens on the Subject Property." SMF ¶ 31(a)–(e).

As of April 5, 2022, the LLC has not maintained a corporate office or address other than the Property. SMF ¶ 34. The LLC's only business in Florida "is the ownership of the property." SMF ¶ 35.

On or about April 27, 2022, Falcon, as the LLC's Manager/Authorized Member, filed a *Florida Limited Liability Company Amended Annual Report*. SMF ¶ 36. The annual report listed the LLC's "Current Principal Place of Business" and "Current Mailing Address" as the Property's address. SMF ¶ 37. On or about September 29, 2023, Falcon, as the LLC's Manager/Authorized Member, also filed a *Florida Limited Liability Company Reinstatement* for the LLC. SMF ¶ 38. In the reinstatement, the "Current Principal Place of Business" and "Current Mailing Address" for the LLC remained the Property's address. SMF ¶ 39.

## IX.    The Second Preliminary Order of Forfeiture

On August 8, 2022, this Court entered a Second Preliminary Order of Forfeiture, forfeiting the Property under 21 U.S.C. § 853(p). ECF No. 416.

## X.    The Petition for Third-Party Interest in Forfeited Property

On November 2, 2022, Claimants filed a Petition for Third-Party Interest in Forfeited Property. Asserting claims under both 21 U.S.C. § 853(n)(6)(A) and (B). ECF No. 419 at 2. Alternatively, Claimants alleged that they are entitled to a constructive trust because "they have maintained and improved the property and made significant contributions to its maintenance and preservation." *Id.*

## XI.    The Motion to Dismiss and Report and Recommendations

The United States moved to dismiss the Petition, ECF No. 426, which this Court referred to Magistrate Judge Jonathan Goodman, ECF No. 427. Judge Goodman

recommended that the United States' motion to dismiss be granted and denied in part. ECF No. 438. To begin, Judge Goodman concluded that Falcon, as a member of the LLC, lacks standing to personally challenge the forfeiture of the property held in the LLC's name. *Id.* at 15. Judge Goodman, however, recommended that Falcon be granted leave to amend to assert a possessory right: the right to live on the property. *Id.*

Next, Judge Goodman determined that Claimants could plead alternative interests under 21 U.S.C. § 853(n)(6)(A) and (B). *Id.* at 18.

Judge Goodman then moved on to Claimants' constructive trust claim. *Id.* at 19. Judge Goodman "[a]ssum[ed], for the sake of discussion, that Claimants have alleged a constructive trust theory under Florida law" before discussing the effect of a constructive trust on the forfeiture order, *id.* at 27–28. Judge Goodman ultimately reasoned that the parties' dispute would better be addressed at summary judgment or after an evidentiary hearing. *Id.* at 29–31.

Lastly, Judge Goodman found that the United States was not authorized to record a *lis pendens* on the Property. *Id.* at 34–41. Judge Goodman concluded that "the United States may not rely on the *lis pendens* notices to support its motion to dismiss," but may "advance other arguments (in a summary judgment motion or at the evidentiary, ancillary hearing to adjudicate Petitioners' claims) concerning Plaintiff's notice (actual or constructive) of the Government's interest in the property." *Id.*

## XII.   The Order Adopting in Part the Report and Recommendation

The Court adopted in part the report and recommendation. ECF No. 443. The Court agreed with Judge Goodman that Claimants had alleged claims under § 853(n)(6) and that the *lis pendens* were unauthorized. *Id.* at 4–7. But the Court agreed with the Government that Claimants had not alleged all essential elements of a constructive claim. *Id.* at 7.

## XIII.   The Amended Petition for Third-Party Interest in Forfeited Property

In the amended petition, Claimants assert that "[t]he property is owned by Claimant Property Investment 7722 LLC." ECF No. 444 at 1. Claimants state that "[t]he LLC holds legal title to the property, and that title has not been challenged by the government." *Id.* But in a footnote, Claimants state that "to the extent the government contests the standing of the LLC entity, Claimant Falcon would seek to amend the petition to assert his rights as a real person in interest with valid legal claims to the residential property." *Id.* at 1 n.1.

The amended petition then alleges that "Claimant LLC asserts its interest in the property under 21 U.S.C. § 853(n)(6)(A)." *Id.* at 2. The only alleged basis for this claim is that the LLC has held legal title to the Property since May 2017. *See id.* at 1–3. Alternatively, Claimants allege that "[i]f any interest of the defendant existed, it was extinguished by April 5, 2022, and acquired by bona fide purchase for value, including financial transfers for the benefit of the previous LLC owner prior to the date of the substitute asset forfeiture order." *Id.* at 3. Thus, Claimants continue, "Claimant LLC also asserts its interest under 21 U.S.C. § 853(n)(6)(B), in that Claimant qualifies as a bona fide purchaser reasonably without cause to believe that the property was subject to forfeiture when the property and the legal interest was acquired by Claimant LLC." *Id.*

The amended petition does not assert a claim under § 853(n)(6)(A) or (B) on behalf of Falcon himself, or allege why Falcon holds a possessory interest in the Property. *See id.*

Claimants also abandoned their constructive-trust claim. *Id.* at 3–4. Claimants now allege, in the alternative, that they have "an equitable interest in, and specific to, the property in the nature of an *equitable construction or mechanics lien* in the dwelling . . . through their expenditures and labor. . . ." *Id.* at 3 (emphasis added). Claimants recognize that "general

10

creditors lack standing to pursue ancillary claims" and that they "have not perfected a construction lien." *Id.* Still, they argue that "where a creditor or lienor (a status that, under Florida law, includes both perfected lien holders and prospective lien holders who have performed) contributes to the work on real estate, a specific interest in the real estate is created." *Id.* (citing Fla. Stat. § 713.01). Claimants allege that Falcon, on behalf of himself and the LLC, has expended at least $71,660 to rehabilitate the Property's equity. *Id.* at 3–4.

## XIV. The Unpaid Mortgage

On October 12, 2021, the mortgagee filed a foreclosure action against the LLC in Florida state court, alleging alleged that the LLC owed the entire principal balance of $500,000, plus other costs. SMF ¶¶ 40–41.[2] In answer to interrogatories, The LLC and Falcon disclaimed responsibility for the mortgage: "Title records reflect a mortgage on the property, but I am not personally liable on such mortgage and I am unaware of the amount owed, whether it has actually been satisfied or waived, or whether it is otherwise subject to a claim for enforcement." SMF ¶¶ 42–43. The LLC and Falcon have also admitted that they have made no payments on any mortgage or lien encumbering the Property. SMF ¶ 44.

## XV. The Unpaid Property Taxes and Liens on the Property

To date, the Property is subject to $58,809.25 in unpaid property taxes. SMF ¶ 45. Claimants admit they "have not made any payments towards real estate taxes on the Subject Property." SMF ¶ 46. On July 26, 2022 and August 28, 2023, respectively, the Miami-Dade County Stormwater Utility Section recorded two *Notices of Lien for Stormwater Utility Maintenance* for $130.14 and $84.09, plus interest. SMF ¶¶ 47–48.

---

[2] The foreclosure action was stayed pending these forfeiture proceedings. SMF ¶ 44.

## LEGAL STANDARDS

### I. Summary Judgment Standard

A party to ancillary forfeiture proceedings may move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Crim. P. 32.2(c)(1)(B). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"An issue of fact is material if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004) (cleaned up). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up).

In requesting summary judgment, the movant bears the initial burden of informing the trial court of the basis for the motion, by either:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing . . . that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). Affidavits and statements that would normally constitute hearsay, if reducible to admissible evidence, may be properly considered in determining a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(4); *Saunders v. Emory Healthcare, Inc.*, 360 F.

App'x 110, 112-13 (11th Cir. 2010) (finding documents attached to summary judgment declaration to be either non-hearsay or reducible to admissible evidence); *Macuba v. Deboer*, 193 F.3d 1316, 1323-24 (11th Cir. 1999).

In response, the nonmovant must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting former Fed. R. Civ. P. 56(e)); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth procedures to support factual positions). If the nonmovant fails to produce "anything more than a repetition of his conclusional allegations," summary judgment for the movant is "not only proper but required." *Morris v. Ross,* 663 F.2d 1032, 1034 (11th Cir. 1981). The trial court is to construe the evidence and factual inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 159 (1970); *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Summary judgment may be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322. "In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. When the nonmovant bears the burden of proof at trial, the movant can prevail on summary judgment by pointing out that no evidence supports the nonmovant's case. *Doe v. Drummond Co., Inc.*, 782 F.3d 576, 603-04 (11th Cir. 2015).

## II.    Forfeiture Ancillary Proceedings

"[C]riminal forfeiture is split into two phases: the first phase concerns the defendant's ownership of the property to be forfeited, and the second phase concerns any third party's

ownership of that property." *United States v. Amodeo*, 916 F.3d 967, 972 (11th Cir. 2019). In phase two, following the entry of a preliminary order of forfeiture, a person, "other than the defendant, asserting a legal interest in property which has been ordered forfeited . . . may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2); *see* 18 U.S.C. § 982(b)(2) (incorporating the procedures of § 853 for criminal forfeiture). The petitioner bears the burden of proof in the forfeiture ancillary proceeding. *United States v. Gilbert*, 244 F.3d 888, 911 (11th Cir. 2001). Although conducted in a criminal case, such proceedings are civil in nature and are meant "to determine whether a third party has an interest in the property that the defendant has already forfeited—not to relitigate the preliminary order's finding of forfeitability." *Amodeo*, 916 F.3d at 972.

### A.    Constitutional Standing—Nominees and Straw Owners

As a threshold matter, "[t]o have a case or controversy, a litigant must establish that he has standing[.]" *Amodeo*, 916 F.3d at 971. "To establish standing, a litigant must show (1) that he has suffered a concrete injury (2) that is fairly traceable to the challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision." *United States v. Devlin*, 2022 WL 3921583, at *2 (11th Cir. Aug. 31, 2022) (cleaned up). "Standing in forfeiture cases has both 'constitutional and statutory aspects.'" *United States v. Tardon*, 493 F. Supp. 3d 1188, 1208 (S.D. Fla. 2020) (quoting *United States v. Timley*, 507 F.3d 1125, 1129 (8th Cir. 2007)).

For constitutional standing, courts determine "whether the litigant has an interest in the property subject to the forfeiture because, absent an interest in that property, there is no case or controversy." *Amodeo*, 916 F.3d at 971. "[P]ossession of bare legal title by one who does not exercise dominion and control over the property is insufficient even to establish standing to challenge a forfeiture." *United States v. A Single Fam. Residence & Real Prop. Located*

*at 900 Rio Vista Blvd., Fort Lauderdale*, 803 F.2d 625, 630 (11th Cir. 1986). Thus, "courts look behind the formal title to determine whether the record title owner is a 'strawman' set up to conceal the financial affairs of illegal dealings of someone else." *United States v. Carrell*, 252 F.3d 1193, 1204 (11th Cir. 2001). This is because "straw owners and persons who might have unknowingly been in possession of property that is seized do not necessarily suffer an injury that is sufficient to demonstrate standing." *United States v. Henry*, 621 F. App'x 968, 972 (11th Cir. 2015). "Likewise, a person found to be acting as a nominee for others whose property is subject to forfeiture cannot have a vested interest in the property." *Id.*; *see also United States v. Weiss*, 467 F.3d 1300, 1303 n.1 (11th Cir. 2006) (same).

> **B.    Superior Interests and Bona Fide Purchasers**

If a petitioner can establish standing, the petitioner must also prove by a preponderance of the evidence that they have a superior interest or is a bona fide purchaser reasonably without cause to believe that the property is subject to forfeiture. *See* 21 U.S.C. § 853(n)(6); *see also United States v. Kennedy*, 201 F.3d 1324, 1333 (11th Cir. 2000) (explaining that in ancillary proceedings, petitioner bears the "burden to come forward and demonstrate either that she had superior title to the property at the time of the act giving rise to the forfeiture, or that she is a bona fide purchaser for value").

Section 853(n) provides, in relevant part, as follows:

**(6)** If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

**(A)** the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

15

**(B)** the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

21 U.S.C. § 853(n)(6).

These are the only two grounds for relief. *United States v. Watkins*, 320 F.3d 1279, 1282 (11th Cir. 2003). If the petitioner fails to establish facts supporting their claim under one of these two limited theories, the petitioner is not entitled to relief in the ancillary forfeiture proceeding. *Id.*

## ARGUMENT

### I.   The LLC lacks constitutional standing to assert a superior interest in the Property because it is a mere nominee or straw owner.

The undisputed facts show that the LLC was and remains a mere nominee or strawman owner of the Property, following no formalities and serving no other function but to hold title to the Property. As such, the LLC lacks constitutional standing to assert a superior interest in the Property. *See, e.g.*, *Weiss*, 467 F.3d at 1303 n.1 (explaining that "[a] person cannot have a vested interest in property if he is found to be acting as a nominee for persons whose property is subject to the forfeiture.").

To begin, the LLC was incorporated solely to hold bare legal title to the Property, a role it plays to this day. Defendant formed the LLC approximately two weeks before he used it to take title to the Property. *See* SMF ¶¶ 1, 3. In the incorporation document, the LLC's "principal office" and the location of its registered agent and manager were the Property's address. SMF ¶ 2. And since its incorporation, Defendant filed no corporate documents for

the LLC until January 2022, shortly before Defendant tried to sell the Property. SMF ¶¶ 10–11, 15. In other words, the LLC remained dormant until Defendant tried to transfer the Property, further showing that the LLC's sole purpose was to act as a bare titleholder.

There is no evidence that the LLC served any other function, followed any corporate formalities, or maintained any corporate records. Falcon cannot show otherwise, as he has "no personal knowledge of the company history" and "defer[s] to the record history indicated on the Sunbiz website of the Florida Secretary of State." SMF ¶ 13; *see also* SMF ¶ 14 (admitting to not knowing the history of the LLC's assets and management). Moreover, Claimants admit that "the LLC was solely owned and controlled by Defendant" and "the LLC had no members, managers, or employees beside Defendant." SMF ¶ 12.

Although the LLC changed ownership on April 5, 2022, SMF ¶¶ 26, 28, it retained its nominal existence as titleholder of the Property. Falcon concedes that since acquiring the LLC, the company has not maintained a corporate office or address other than the Property, SMF ¶ 34, and its only business "is the ownership of the property," SMF ¶ 35. The sparse corporate filings confirm that fact. The April 5, 2022 Statement of Change of Registered Office listed the Property as the LLC's "Registered Office Address." SMF ¶¶ 26, 27. The April 27, 2022 Annual Report also listed the Property as the "Current Principal Place of Business" and "Current Mailing Address" of the LLC. SMF ¶¶ 36, 37. And the September 29, 2023 Reinstatement for the LLC continued to list the Property as its "Current Principal Place of Business" and "Current Mailing Address." SMF ¶¶ 38, 39.

Moreover, unlike a true property owner, the LLC (and Falcon for that matter) has shunned responsibility for paying the mortgage and taxes encumbering the Property. SMF ¶ 42. In answer to interrogatories, Falcon, answering for himself and the LLC, asserted: "I

am not personally liable on such mortgage and I am unaware of the amount owed, whether it has actually been satisfied or waived, or whether it is otherwise subject to a claim for enforcement." SMF ¶ 43.[3] Claimants also admitted that they have made no mortgage payments, SMF ¶ 44, or "made any payments towards real estate taxes on the Subject Property." SMF ¶ 46. As a result, the Property has been subjected to a foreclosure action, SMF ¶ 40, and $58,809.25 in unpaid property taxes. SMF ¶ 45. The Miami-Dade County Stormwater Utility Section has even recorded two Liens for Stormwater Utility Maintenance against the Property, SMF ¶¶ 47–48—so Claimants have even failed to pay those basic costs of home ownership.

Based on these facts alone, the LLC lacks standing to assert a superior interest in the Property. *See Tardon*, 493 F. Supp. 3d at 1208 (collecting cases showing that "[b]are legal title . . . is insufficient to confer standing to challenge a forfeiture"). For instance, in *Tardon*, Judge Goodman found that two LLCs had only nominal ownership of certain properties based on facts similar or analogous to those here, for instance: (1) the defendant had created the LLCs to hold properties that actually belonged to him, (2) the defendant controlled the LLCs, (3) title to a property was transferred without an actual sale; and (4) title owner had not made payments to satisfy and release a mortgage on property. *See Tardon*, 493 F. Supp. 3d at 1202–03; *see also United States v. One 1990 Beechcraft 1900 C Twin Engine Turbo-Prop Aircraft*, 659 F. Supp. 2d 1260, 1270 (S.D. Fla. 2009) (finding that company that had "not observed corporate formalities until recently" was mere nominee owner of aircraft).

---

[3] In any event, liability under a mortgage is not enough, by itself, to establish an ownership interest in real property. *See United States v. Barber*, 61 F. Supp. 3d 1273, 1276 (M.D. Fla. 2014) (holding that "Petitioner's liability on the mortgages does not vest her with a cognizable ownership interest in the real property).

18

In short, a "look behind the formal title," *Carrell*, 252 F.3d at 1204, reveals that the LLC is and remains a nominee owner of the Property. Thus, it has not suffered an injury "sufficient to demonstrate standing." *Henry*, 621 F. App'x at 972. To conclude otherwise would eviscerate the purpose of forfeiture, allowing defendants to circumvent a mandatory part of their punishment by just changing the ownership of a company holding title to assets.

Accordingly, the Court should grant summary judgment in the Government's favor on the LLC's § 853(n)(6)(A) claim due to lack of standing.

**II.    Even if it had standing, the LLC nonetheless cannot establish that it held a superior interest under § 853(n)(6)(A).**

Assuming *arguendo* that the LLC has standing under § 853(n)(6)(A), the LLC nonetheless cannot establish that it has an interest in the Property "superior to any right, title, or interest *of the defendant at the time of the commission of the acts* which gave rise to the forfeiture of the property[.]" § 853(n)(6)(A) (emphasis added). Breaking the statute into its constituent parts, "a qualifying interest pursuant to § 853(n)(6)(A)" requires not only "a legal interest in the forfeited property," but that the "legal interest in the forfeited property was superior to [Defendant's] interest" and that the "legal interest was superior to [Defendant's] interest *at the time* of [Defendant's crime]." *United States v. Ramunno*, 599 F.3d 1269, 1273 (11th Cir. 2010) (emphasis in original). "[T]o have a superior interest, then, the claimant must have had a legal right, title, or interest in the forfeitable properties that *preceded* the commission of the crime that gave rise to the forfeiture of that property." *United States v. Eldick*, 223 F. App'x 837, 840 (11th Cir. 2007) (emphasis in original).

Consequently, regardless of whether the relation-back doctrine under § 853(c) applies to substitute assets, "§ 853(n) (perhaps as a result of Congressional oversight) effectively imposes the temporal limitations of the relation-back doctrine even on third-party claims to

substitute assets." *United States v. Daugerdas*, 892 F.3d 545, 554 (2d Cir. 2018). As persuasively explained in *Daugerdas*:

> That provision does not distinguish between contested property initially forfeited as offense proceeds and property forfeited as substitute assets; instead, § 853(n)(6)(A) requires that the third party's interest in any forfeited property must have been superior to the defendant's "at the time of the commission of the acts which gave rise to the forfeiture."

*Id.*

Here, the criminal acts that gave rise to forfeiture occurred prior to the Property's purchase. *See* ECF Nos. 1 at 4; 79 at 4; 119–21. Thus, the LLC did not acquire an interest in the Property, superior or otherwise, prior to the commission of the crime that gave rise to the forfeiture of the Property. *See Eldick*, 223 F. App'x at 840. At best, at the time of the criminal acts, the LLC had an interest equal to Defendant's interest in the Property—which is to say, no interest at all. *See Ramunno*, 599 F.3d 1269, 1273.

In short, assuming the LLC has standing to assert a § 853(n)(6)(A) claim, the Government is still entitled to summary judgment in its favor on the merits.

## III. The LLC cannot establish that it is a bona fide purchaser under § 853(n)(6)(B).

While acknowledging that the LLC has always held title to the Property, Claimants nonetheless contend that the LLC may also be a bona fide purchaser because "[i]f any interest of the defendant existed, it was extinguished by April 5, 2022, and acquired by bona fide purchase for value[.]" ECF No. 444 at 3. That is incorrect for several reasons.

First, the undisputed facts show there was no "purchase" of the *Property* on April 5, 2022, by the LLC or Falcon. "An interest in real property cannot be conveyed other than by deed." *Barber*, 61 F. Supp. 3d at 1276 (citing Fla. Stat. § 689.01). Although the LLC and Falcon executed a contract for the sale of the home, SMF ¶ 15, the contract was not consummated

after Falcon was informed of the Government's *lis pendens* through a title search. *See* SMF ¶¶ 16; 21.[4] Instead, Falcon "took over ownership of the LLC that owns the property." SMF ¶ 23; *see also* SMF ¶¶ 24 (Falcon admitting that, after learning of the *lis pendens*, "i decided an spoke with mr Rodriguez and took over the llc" [*sic*]); 25 (Falcon admitting that "there was no contract for sale of the property itself"); 29–30 (Falcon stating in Interrogatory Response that he acquired the LLC under an oral agreement with Defendant); 32 (Falcon and the LLC admitting that the LLC still "owns the property, and any appurtenant rights"); 33 (Falcon's inability to identify the source of funds used to purchase the Property).

Moreover, as noted, neither the LLC nor Falcon have made any payments towards, or are even aware of, what is owed on the mortgage encumbering the Property. *See* SMF ¶¶ 42–43; *see also United States v. Suarez*, 2016 WL 10892323, at *5 (S.D. Fla. Dec. 7, 2016), *aff'd*, 716 F. App'x 937 (11th Cir. 2018) (granting summary judgment for Government on § 853(n)(6)(B) claim where petitioner "acknowledge[d] he took the Subject Property subject to a first mortgage of $600,000 or $650,000," but "failed to make any mortgage payments" and did not know who was the mortgagee). The same holds true for the Property taxes. SMF ¶ 46.

Second, assuming the LLC can somehow be classified as a *purchaser* of the Property, it would not be *bona fide* because the knowledge of Defendant's wrongdoing would be imputed to the LLC both from Defendant himself and Falcon. Under Florida law, the knowledge of an officer is generally imputed to the corporation. *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1095 (11th Cir. 2017) (citing *Beck v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir. 1998)). Defendant solely controlled the LLC before April 5, 2022, SMF ¶ 12, so his knowledge

---

[4] Of course, even if the contract had gone through, the LLC would have been the *seller*, not the purchaser, so its § 853(n)(6)(B) claim is nonsensical on its face.

of wrongdoing would have been imputed to the LLC. *See United States v. 101 Houseco, LLC*, 22 F.4th 843, 850 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 209 (2022) (holding that LLC was not a bona fide purchaser of property where an LLC officer had "knowledge of the fraud at the time it was perpetrated").

The change in LLC ownership did not affect the LLC's knowledge. That is because as of April 5, 2022, Falcon "knew that Defendant had been indicted on federal criminal charges," "knew that Defendant had been convicted on federal criminal charges," "knew that Defendant had been sentenced to prison on federal criminal charges," had "authorized a title and lien search on the Subject Property," and was "informed that the United States had filed a lis pendens on the Subject Property." SMF ¶ 31. Thus, the LLC could no more claim bona fide status than Falcon, who undisputedly cannot. *See United States v. Derochemont*, 2011 WL 6319293, at *3 (M.D. Fla. Dec. 15, 2011) (finding that petitioner could not "claim to have been without reason to know that [defendant] would be ordered to forfeit assets in the criminal case against him" where defendant had "confess[ed] his crime to Petitioner").

If Falcon contends that, even though he knew of Defendant's indictment, conviction, and sentence, and of the Government's *lis pendens*, he still lacked knowledge that the Property was subject to forfeiture, the Court should reject that argument. "Actual lack of knowledge of forfeitability is not enough." *United States v. Medina Cuartes*, 155 F. Supp. 2d 1338, 1342–43 (S.D. Fla. 2001). The test is "not merely whether the petitioner had knowledge of forfeitability of the asset but whether the petitioner *reasonably* held the belief that the property was not subject to forfeiture." *Id.* at 1343 (emphasis in original). "This is an objective, not subjective, test." *Id.* Consequently, "a genuinely held belief that property is not subject to forfeiture is unavailing unless the belief was objectively reasonable in the circumstances." *Id.*

22

In concrete terms, the objective test "precludes 'wilful blindness' on the part of a petitioner and imposes a duty of reasonable inquiry, where warranted, before 'objective reasonableness' can be established." *Id.*; *accord United States v. Sabatino*, 2018 WL 2074191, at *7 (S.D. Fla. Apr. 13, 2018), *report and recommendation adopted*, (S.D. Fla. Apr. 30, 2018).

Falcon cannot establish that his purported lack of knowledge would be objectively reasonable. The United States publicly alleged that Defendant's substitute property would be subject to forfeiture upon his conviction. ECF No. 1 at 14; 79 at 14. Defendant pleaded guilty, and his publicly available plea deal showed that Defendant had agreed to the entry of a forfeiture money judgment of $1,728,508 and the forfeiture of directly forfeitable and substitute property. ECF No. 119 ¶ 8. The United States then recorded and renewed a *lis pendens* on the Property, which informed the public of this criminal case caption and number, date of the indictment, title owner of the Property, and charged offenses, and stated that the United States may forfeit the Property as a substitute property. SMF ¶¶ 7–8.

Although this Court has found that the *lis pendens* were unauthorized, Falcon has since conceded that he gained actual knowledge of the *lis pendens* before acquiring the LLC. *See* SMF ¶¶ 15–24, 31. A bona fide purchaser is someone "who has purchased property for value without notice of any defects in the title of the seller." *United States v. Suarez*, 716 F. App'x 937, 938 (11th Cir. 2018). "Under Florida law, recorded defects that appear in the chain of title are sufficient to place a purchaser on notice of such defects." *Id*. Having gained actual notice that there was a defect in the LLC's title, Falcon cannot qualify as a bona fide purchaser.

Falcon has also admitted that he knew of Defendant's indictment, conviction, and sentence before acquiring the LLC. SMF ¶ 31. Therefore, even if Falcon subjectively did not believe that the Property was subject to forfeiture, his belief is unreasonable, the result of

willful blindness. *See Medina Cuartes*, 155 F. Supp. 2d at 1343; *see also United States v. Suarez*, 2016 WL 10892323, at *6 (S.D. Fla. Dec. 7, 2016), *aff'd*, 716 F. App'x 937 (11th Cir. 2018) (granting summary judgment on § 853(n)(6)(B) claim where "Petitioner should have known, with reasonable due diligence, that the Property was subject to forfeiture at the time he purchased it"); *United States v. Harrold*, 2017 WL 2543891, at *3 (D. Minn. June 12, 2017) (finding that claimant was not bona fide where aware of defendant's criminal activity, indictment, and guilty plea).

In short, the Court should grant summary judgment in the Government's favor on the LLC's § 853(n)(6)(B) claim.

**IV.    Falcon cannot assert an individual claim under § 853(n)(6)(A) or (B)**.

Recall that Falcon did not raise individual claims under § 853(n)(6)(A) or (B) in the amended petition. *See, generally*, ECF No. 444. Falcon, however, states that he may reassert an individual claim if the Court rules that the LLC lacks standing. *See id.* at n.2. Such a request should be denied for four reasons.

First, the Court already granted Falcon leave to allege a possessory interest in the Property. *See Diaz*, 2023 WL 7483299, at *7. He did not. Falcon thus abandoned any such claim. *Grayson v. No Labels, Inc.*, 2022 WL 12144181, at *3 (11th Cir. Oct. 21, 2022) (holding that claims not asserted in amended pleadings were abandoned). Indeed, the amended petition says *less* about Falcon's possession of the Property than the original petition. The original petition alleged that "Falcon resides with his family" on the Property and "would be personally obligated on the mortgage for the property and is otherwise responsible for the property." ECF No. 419 at 3. In the amended petition, Falcon does not mention residing on the Property. *See* ECF No. 444. Moreover, contrary to his previous under-oath statement,

Falcon states in discovery that he is not personally obligated on the mortgage. SMF ¶ 43.

Second, when the "thirty day period for filing claim expires, petitioner may not amend claim to assert alternative grounds of recovery." *United States v. Caro*, 2010 WL 680939, at *5 (S.D. Fla. Feb. 23, 2010) (citing *United States v. Soreide*, 461 F.3d 1351, 1355 (11th Cir. 2006) ("We will not vacate the summary judgment nor provide relief from the final order of forfeiture based upon a claim that was not asserted as required by the statute.")). Petitioner cannot assert claims piecemeal, using the Court's rulings as advisory guidance. An amendment would also be unfair at this stage, as the claims have been pending for some time, and the parties have engaged in discovery. *See Andrx Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1237 (11th Cir. 2005) (affirming denial of motion to amend complaint whether party unduly delayed in amending and attempted to inject a new theory of recovery).

Third, amendment would be futile because the undisputed facts show that Falcon has no individual interest in the Property. *See Caro*, 2010 WL 680939, at *4 (denying claim in ancillary proceedings where Petitioner had no "vested interest in the property, itself"). Falcon concedes that rather than purchasing the Property, he acquired the LLC that held title to the Property. As this Court has already concluded, "a member owns only his/her equitable share *in the LLC itself* and does not own the LLC property." *United States v. Diaz*, 2023 WL 7483299, at *7 (S.D. Fla. Sept. 20, 2023) (emphasis in original), *report and recommendation adopted in part, rejected in part*, 2023 WL 7036721 (S.D. Fla. Oct. 26, 2023); *see also United States v. ADT Sec. Servs., Inc.*, 522 F. App'x 480, 490 (11th Cir. 2013) (holding that petitioner whose "claimed interest in the properties arises only out of its membership in the LLCs owning those properties" lacks standing to assert an individual claim). Thus, Falcon can neither establish a superior interest to the Property nor a subsequent interest as a bona fide purchaser.

Fourth, assuming Falcon acquired an interest in the Property on April 5, 2022, an amendment still would be futile because, as already noted, he was not a bona fide purchaser. Falcon had actual knowledge of Defendant's indictment, conviction, and sentence, and of the Government's *lis pendens*. *See* SMF ¶¶ 15–24, 31.

For these reasons, the Court should reject any request from Falcon to assert an individual claim to the Property under § 853(n)(6)(A) or (B).

## V.    Claimants lack standing to assert an unperfected construction or mechanics lien.

While recognizing that "general creditors lack standing to pursue ancillary claims" and admitting they "have not perfected a construction lien," Claimants nonetheless assert an "equitable construction or mechanics lien" on the Property based on alleged work to "rehabilitate" and maintain it. ECF No. 444 at 3. Black-letter law forecloses this alternative claim.

A fundamental tenet of criminal forfeiture law is that "unsecured or general creditors cannot be considered bona fide purchasers for value within the meaning of § 853(n)(6)(B)." *Watkins*, 320 F.3d at 1283. "Until a person perfects a lien, he is merely an unsecured creditor with no interest in a particular asset." *Caro*, 2010 WL 680939, at *6; *see United States v. Mendez*, 2021 WL 5898185, at *6 (S.D. Fla. Dec. 3, 2021) (dismissing claim by law firm that did not have a secured interest in forfeited property), *report and recommendation adopted*, 2022 WL 204742 (S.D. Fla. Jan. 24, 2022); *Barber*, 61 F. Supp. 3d at 1276 (explaining that "helping pay for a piece of property confers on the payor, at best, the status of an unsecured creditor and thus, the payor has no ownership interest in the property"); *United States v. Gutierrez*, 2012 WL 3291976, at *3 (S.D. Fla. Aug. 13, 2012) (dismissing claim of petitioner who lacked money judgment or judgment lien and was thus just a general creditor of defendant, without an

interest in the specific real property); *United States v. Battle*, 2008 WL 5056875, at *3 (S.D. Fla. Mar. 3, 2008), *report and recommendation adopted as modified* 2008 WL 5056840 (S.D. Fla. Nov. 21, 2008) (striking claims, explaining: "As petitioners do not, and cannot, claim an interest in specific, forfeited assets or property, they are properly considered only general unsecured creditors attempting to collect on outstanding debts"); *see also United States v. Patel*, 2024 WL 1468490, at *5 (S.D. Fla. Mar. 18, 2024) (finding that default judgment did not create a lien or property interest until additional steps were taken "to perfect that lien interest"), *report and recommendation adopted*, 2024 WL 1462421 (S.D. Fla. Apr. 4, 2024).

Florida's Construction Lien Law, Fla. Stat. § 713.001, *et seq.*, is strictly construed because it is in derogation of the common law. *WB's Septic & Sitework, Inc. v. Tucker*, 365 So. 3d 1242, 1245 (Fla. 1st DCA 2023). To perfect a construction lien, "every lienor, including laborers and persons in privity, shall record a claim of lien" containing several categories of information. Fla. Stat. § 713.08(a). A recorded claim of lien is required regardless of whether the work is done under a contract, *see* Fla. Stat. § 713.05 ("No lien under this section shall be acquired until a claim of lien is recorded."), or without a contract (if additional notices are given), *see* Fla. Stat. § 713.06(2)(a) ("All lienors under this section, except laborers, as a prerequisite to perfecting a lien under this chapter and recording a claim of lien, must serve a notice on the owner setting forth the lienor's name and address, a description sufficient for identification of the real property, and the nature of the services or materials furnished or to be furnished."); *see Calixte v. Coastal Bldg. Contractors, LLC*, 2024 WL 1896114, at *2 (Fla. 4th DCA May 1, 2024) (explaining that "[a] prerequisite to perfecting a lien under Chapter 713 when the lienor is not in privity with the property owner, as is the case here, includes service of a written notice to the property owner.).

Claimants admit that they "have not perfected a construction lien." ECF No. 444 at 3. Indeed, there is no evidence that Claimants recorded a claim of lien for work on the Property or followed any other statutory prerequisite. In any event, Claimants are out of time to perfect such as a lien, which may not be recorded "later than 90 days after the final furnishing of the labor or services or materials by the lienor." Fla. Stat. § 713.08(5); *see Outsource Servs. Mgmt., LLC v. Lake Austin Properties I, Ltd.*, 2014 WL 12640959, at *3 (M.D. Fla. Apr. 2, 2014) (explaining that "[t]o be valid, a claim of lien must be recorded no later than ninety (90) days after the 'final furnishing of the labor or services or materials by the lienor.'"). Moreover, even if Claimants had perfected a construction lien for work performed around April 5, 2022 (which they did not), the lien would have expired by now. *See* Fla. Stat. § 713.22 ("A lien provided by this part does not continue for a longer period than 1 year after the claim of lien has been recorded or 1 year after the recording of an amended claim of lien that shows a later date of final furnishing of labor, services, or materials, unless within that time an action to enforce the lien is commenced in a court of competent jurisdiction.").

Without a perfected construction lien, Claimants have no standing to assert a claim based on work done on the Property. *See Caro*, 2010 WL 680939, at *6; *see also United States v. Portillo*, 2013 WL 3466854, at *1 (N.D. Tex. July 9, 2013) (holding that petitioners who had worked on property, "painting walls, replacing flooring, hanging lights, and mowing the yard," and lived on the property for years lacked standing to assert claim); *United States v. Baker*, 2011 WL 3860500, at *4 (D. Or. Aug. 31, 2011) (holding the petitioner who provided materials for rehabilitation of property and made seven mortgage payments for defendant lacked standing to assert claim because he did not obtain a lien); *United States v. Wheaton*, No. 05–33–P–S, 2005 WL 2429792, *7 (D. Me. Sept. 28, 2005) (finding that petitioner who

provided building materials for construction of residence but did not record a lien was unsecured creditor without standing).

Claimants' contention that Florida's Construction Lien Law grants "both perfected lien holders and prospective lien holders who have performed" "a specific interest in the real estate" is baseless. ECF No. 444 at 3. Claimants cite no authority for that proposition, and the Government has uncovered none. Moreover, Florida's Construction Lien Law states that liens under § 713.05 and 713.06 "attach and take priority" either "as of the time of recordation of the notice of commencement" or "as of the time the claim of lien is recorded." Fla. Stat. § 713.07(2). Thus, absent recordation, no lien interest attached to the Property.

In short, Claimants lack standing to assert an unperfected construction or mechanics lien.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court grant summary judgment in the United States' favor on Claimants' Amended Petition for Third-Party Interest in Forfeited Property, ECF No. 444, and order such other relief as the Court deems just..

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:     *s/ Jorge R. Delgado*
Jorge R. Delgado
Assistant United States Attorney
Florida Bar No. 084118
U.S. Attorney's Office
500 E. Broward Blvd., Suite 700
Fort Lauderdale, FL 33394
Telephone: (954) 660-5954
E-mail: Jorge.Delgado2@usdoj.gov