## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 17-20631-CR-BECERRA/REINHART

UNITED STATES OF AMERICA,

vs.

OSMANY RODRIGUEZ DIAZ,

      Defendant.

_____/

PROPERTY INVESTMENT 7722 LLC,

and

BRANDON FALCON,

      Claimants.

_____/

### UNITED STATES' SUPPLEMENTAL MEMORANDUM FOR EVIDENTIARY HEARING ON AMENDED PETITION FOR THIRD-PARTY INTEREST IN FORFEITED PROPERTY

In accordance with the Court's order setting an evidentiary hearing, ECF No. 486, on the Amended Petition for Third-Party Interest in Forfeited Property, ECF No. 444, filed by Claimants Brandon Falcon and Property Investment 7722, LLC (the "LLC"), the United States of America submits this memorandum, which addresses the questions the Court raised during the September 5, 2025 status conference, ECF No. 485, and other relevant issues.

### INTRODUCTION

The facts of this forfeiture case are straightforward. Defendant, Osmany Rodriguez Diaz, bought a home located at 21105 SW 213 Avenue Road, Miami, FL 33187 (the "Property"), and placed it in the name of the LLC. The LLC's sole purpose was to hold title to the Property—a purpose it continues to this day. Defendant was later convicted of federal

crimes that predated the Property purchase, resulting in federal prison time, a forfeiture money judgment of more than $1.7 million, and the forfeiture of directly forfeitable and substitute property. To protect its interest in the Property, the Government recorded two *lis pendens*, notifying the world of its intent to forfeit it as a substitute asset.

After serving his prison sentence, Defendant met Brandon Falcon, who wanted to buy the Property. Defendant, through the LLC, and Falcon signed a standard real estate contract for $825,000. As part of the transaction, Falcon ordered a title search. He also, allegedly, did some work on the Property, but he did not perfect a lien to be compensated for that effort.

About a month after the contract was signed, the title company informed Falcon about the Government's *lis pendens* on the Property. Now aware that the Property was subject to forfeiture, Falcon did not consummate the purchase contract. Instead, on April 5, 2022, he allegedly purchased the LLC by paying Defendant's rent elsewhere for a year.

Why Falcon took over the LLC is no mystery. He later emailed Government counsel, explaining that he did so because the *lis pendens* prevented him from buying the Property. Thus, Falcon admitted to the Government that he knew the Property was subject to forfeiture and bought the LLC with the belief that it would give him, directly or through the company, a claim to the Property.

It did not. Preliminarily, Falcon has not asserted an individual claim to the Property under 21 U.S.C. § 853(n)(6)(A) or (B), which are the sole grounds for third parties to challenge criminal forfeitures. Falcon had once asserted individual claims premised on his status as an LLC member, but this Court dismissed them because LLC members do not have an interest in a company's property. Nonetheless, the Court granted Falcon leave to assert a possessory interest in the Property, if he could. But Falcon did not allege such an interest, and the

statutory 30-day claim-filing deadline precludes any further amendment. Consequently, the only party with live claims under § 853(n)(6)(A) or (B) is the LLC.

The LLC's claims, however, fare no better. First, as a mere nominee or straw owner of the Property, the LLC cannot prove that it has constitutional standing to assert a superior interest under § 853(n)(6)(A) in the first place. The LLC exists solely to be a bare title holder of the Property. It conducts no other business and follows no corporate formalities other than making sporadic filings on *sunbiz.org*. Even now, the LLC is inactive. Moreover, unlike a true property owner, the LLC has made no payments on the mortgage encumbering the Property, nor has it paid property taxes or stormwater costs—and neither has Falcon.

Second, even if the LLC has standing, it cannot establish that "at the time of the commission of the acts which gave rise to the forfeiture of the property," § 853(n)(6)(A), it had an interest in the Property superior to Defendant's interest. Section 853(n)(6)(A) contains a temporal requirement that is separate from, but functions like, the relation-back provision under 21 U.S.C. § 853(c). Specifically, qualifying interests under § 853(n)(6)(A) must show that their interests arose *before* a defendant's crime, even for substitute assets. And here, the LLC acquired its interest in the Property after Defendant's crime.

Third, the LLC cannot prove that it was a bona fide purchaser under § 853(n)(6)(B), either. To begin, there was no "purchase" of the Property on April 5, 2022. Falcon merely acquired the LLC on that day, which did not result in a sale of the Property. But even if there were a sale of the Property on that date, the LLC would not have been bona fide. Defendant's knowledge would have been imputed to the company, as would Falcon's, which would show that he is also not a bona fide purchaser. Falcon not only admitted that he knew that the Government intended to forfeit the Property, but he also stated in discovery that, before he

took over the LLC, he knew of Defendant's indictment, conviction, and sentence.

Finally, regarding Claimants' alternative claims premised on an unperfected construction or mechanics lien, black-letter law forecloses them. In their own amended petition, Claimants recognize that "general creditors lack standing to pursue ancillary claims," and they admit they "have not perfected a construction lien." As such, assuming any work was done on the Property, Claimants would be, at best, unsecured creditors without standing to be compensated in these ancillary proceedings.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    The LLC's Incorporation

On or about May 10, 2017, Defendant incorporated the LLC. Article of Organization for Florida Liability Company, ECF No 454-1. The LLC's Article of Organization identified the LLC's "principal office" and the location of its registered agent and manager as the Property. *Id.*

### B.    The Property Purchase and Mortgage

On or about May 25, 2017, the LLC acquired the Property. Warranty Deed, ECF No 454-2. The same day, the LLC entered into a Mortgage Deed and Interest Only Promissory Note with a principal amount of $500,000. Mortgage, ECF No 454-3. Falcon, answering on behalf of himself and the LLC, stated in Interrogatory Responses that he lacks "knowledge of the circumstances under which the property was acquired by [the] LLC" and is not "cognizant of the price paid by the LLC for the property or the specific circumstances of that acquisition." Response to United States' First Set of Interrogatories to Claimant Property Investment 7722 LLC ("LLC Interrogatory Response") ¶ 3, ECF No 454-4; Response to United States' First Set of Interrogatories to Claimant Brandon Falcon ("Falcon

Interrogatory Response") ¶ 5, ECF No 454-5.

**C.    Defendant's Indictment and Superseding Indictment**

On September 5, 2017, a federal grand jury indicted Defendant and others with conspiracy to commit health care fraud and wire fraud, spanning from in or around July 2014 through in or around March 2017, in violation of 18 U.S.C. § 1349. ECF No. 1. On October 24, 2017, a federal grand jury returned a Superseding Indictment. ECF No. 79. The Indictment and Superseding Indictment alleged, among other things, that upon Defendant's conviction, the Government would forfeit his gross proceeds traceable to the offenses and his substitute property. ECF No. 1 at 12, 14; 79 at 12, 14.

**D.    The Guilty Plea, Preliminary Order of Forfeiture, and Sentence**

On February 2, 2018, Defendant pleaded guilty to conspiracy to commit healthcare fraud and wire fraud. ECF Nos. 119–21. As part of the guilty plea, Defendant agreed to the entry of a forfeiture money judgment of $1,728,508 and the forfeiture of directly forfeitable and substitute property. ECF No. 119 ¶ 8. On April 17, 2018, this Court entered a Preliminary Order of Forfeiture, imposing the money judgment and forfeiting various assets. ECF No. 171. On April 24, 2018, Defendant was sentenced to 42 months' imprisonment, which was later reduced to 24 months. ECF Nos. 192, 325, 326.

**E.    The *Lis Pendens* and Renewal of *Lis Pendens***

On September 13, 2018, the United States recorded a *lis pendens* on the Property. Original *Lis Pendens*, ECF No. 454-6. On December 15, 2021, the United States recorded a renewal of the *lis pendens*. Renewal of *Lis Pendens*, ECF No. 454-7. The *lis pendens* and renewal both listed and identified the criminal case caption and number, the date of the indictment, the title owner of the Property, and the charged offenses, and stated that the United States

may forfeit the Property as substitute property under 21 U.S.C. § 853(p). ECF Nos. 454-6; 454-7.

## F.    Defendant's Reinstatement of the LLC

Defendant was released from prison on or about September 3, 2021.[1] On or about January 6, 2022, Defendant reinstated the LLC (which had become inactive) with the Florida Division of Corporations. 2022 Florida Limited Liability Company Reinstatement, ECF No. 454-8. Between the LLC's incorporation in 2017 and the January 2022 reinstatement, no other document had been filed in the Florida Division of Corporations relating to the LLC. *See* Detail by Entity Name for Property Investment 7722 LLC, ECF No. 454-9.

Before April 5, 2022, "the LLC was solely owned and controlled by Defendant" and "the LLC had no members, managers, or employees beside Defendant." Response to United States' First Requests for Admissions to Petitioner Brandon Falcon ("Falcon Admissions") ¶¶ 9, 11, ECF No. 454-10; Response to United States' First Requests for Admissions to Petitioner Property Investment 7722 LLC ("LLC Admissions") ¶¶ 2, 4, ECF No. 454-11. Falcon has "no personal knowledge of the company history" and "defer[s] to the record history indicated on the Sunbiz website of the Florida Secretary of State." LLC Interrogatory Response ¶ 1. The history of the LLC's assets and management is also not known to Falcon. Falcon Admissions ¶¶ 13, 15, 17, 19, 21, 22.

## G.    Falcon's Failed Property Purchase After Obtaining Actual Knowledge of the Government's *Lis Pendens*

On or about March 17, 2022, the LLC and Falcon entered into an "As Is" Residential Contract for Sale and Purchase for the Property, with a purchase price of $825,000. Contract,

---

[1] *See* Federal Bureau of Prisons' website's inmate locator database, available at https://www.bop.gov/inmateloc/.

ECF No. 454-12. The contract was not consummated, however, after Falcon conducted a title search and gained actual knowledge of the Government's *lis pendens*. *See* October 2022 email thread, p. 13, ECF No. 454-13.

In an email to Government counsel,[2] Falcon explained that he "met Mr. Diaz March 7, 2022 as i [*sic*] found the property on zillow for pre foreclosure." *Id.* Falcon "had no prior knowledge of or relationship to Osmany Rodriguez Diaz." Falcon Interrogatory Response ¶ 7. Falcon explained in the email that he drove to the Property, which "was filled with trash and junk cars/trucks" and that, according to Defendant, "there were squatters living in the house while he was in prison." October 2022 email thread, pp. 13–14. Falcon continued that Defendant "told me he was losing the property and all he wanted was for his debts to be paid and for me to pay for him to get rented." *Id.* at 14.

Falcon then admitted: "The first step I took was to have a title and lien search done and it came back clear. Almost a month later the title company informs me there is a lis pending [*sic*] with the federal government." *Id.* Falcon claimed he became "overwhelmed" because he had "spent over sixty thousand in repairs and clean up because in order for me to finance it the property needed to pass inspection and fifteen thousand in renting Mr.Diaz [*sic*]." *Id.* Thus, Falcon conceded, "[a]fter me not being able to finance it, I spoke with Mr. Diaz and I took over ownership of the LLC that owns the property." *Id.* at 15.

In another email to mortgage counsel, Falcon repeated that he had acquired the LLC because he had been informed of the Government's *lis pendens*:

> Yes the first thing I did was have a title and lien search done before doing anything the title company didn't find anything nearly a month later is when

---

[2] Before speaking directly with Falcon, Government counsel confirmed with Falcon and his prior counsel that Falcon was no longer represented. *Id.* at 8–11. Falcon's former counsel stated: "Please feel free to speak directly with Mr. Falcon if that is his desire." *Id.* at 8.

they told me about the lis pending with the government. And thats when i
decided an [*sic*] spoke with mr [*sic*] Rodriguez and took over the llc [*sic*].

*Id.* at 2.

In discovery, Falcon further admitted that he did not enter into a written agreement to
purchase the Property. Falcon Admissions ¶ 25 (Falcon admitting: "True (there was no
contract for sale of the property itself)."). Claimants also admitted that as of April 5, 2022,
the LLC still "owns the property, and any appurtenant rights," and no other assets. Falcon
Admissions ¶ 12; LLC Admissions ¶ 5. Indeed, when asked to identify the source of funds
used to purchase the Property, Falcon answered "Not Applicable" and referred only to his
acquisition of the LLC. Falcon Interrogatory Response ¶¶ 9–10.

## H.     Falcon's Acquisition of the LLC

On or about April 5, 2022, a Statement of Change of Registered Office or Registered
Agent or Both for Limited Liability Company was filed with the Florida Division of
Corporations, changing the LLC's registered agent from Defendant to Falcon. ECF No. 454-
14. The "Registered Office Address" remained the Property's address. *Id.* In discovery, Falcon
confirmed that on April 5, 2022, he acquired and became the sole owner of the LLC that
already owned the Property. Falcon Interrogatory Response ¶ 5.

Falcon claimed in discovery that the "terms for acquisition of the LLC met the
demands of the prior owner of the LLC and included finding and paying the lease for a new
residence for him for a period of one year." *Id.* According to Falcon, "[t]he transaction was
conducted on the basis of a verbal agreement with which I fully complied" and that the
"Florida Secretary of State records (Sunbiz) reflect my ownership record as to the LLC." *Id.*

Importantly, Falcon admitted in discovery that when he acquired the LLC, he (a)

"knew that Defendant had been indicted on federal criminal charges," (b) "knew that Defendant had been convicted on federal criminal charges," (c) "knew that Defendant had been sentenced to prison on federal criminal charges," (d) had "authorized a title and lien search on the Subject Property," and (e) was "informed that the United States had filed a lis pendens on the Subject Property." Falcon Admissions ¶¶ 2–6.

As of April 5, 2022, the LLC has not maintained a corporate office or address other than the Property. Falcon Admissions ¶ 16; LLC Admissions ¶ 9. The LLC's only business in Florida "is the ownership of the property." Falcon Admissions ¶ 20; LLC Admissions ¶ 13.

On or about April 27, 2022, Falcon, as the LLC's Manager/Authorized Member, filed a Florida Limited Liability Company Amended Annual Report. ECF No. 454-15. The annual report listed the LLC's "Current Principal Place of Business" and "Current Mailing Address" as the Property's address. *Id.* On or about September 29, 2023, Falcon, as the LLC's Manager/Authorized Member, also filed a Florida Limited Liability Company Reinstatement for the LLC. ECF No. 454-16. The "Current Principal Place of Business" and "Current Mailing Address" for the LLC remained the Property's address. *Id.* Finally, on or about November 11, 2024, Falcon, as the LLC's Manager/Authorized Member, filed another Florida Limited Liability Company Reinstatement for the LLC, attached here as **Ex. A**. The "Current Principal Place of Business" and "Current Mailing Address" for the LLC remained the Property's address. *Id.*

The LLC, however, was administratively dissolved on September 26, 2025. *See* Detail by Entity Name attached here as **Ex. B**.

I.     **The Second Preliminary Order of Forfeiture**

On August 8, 2022, this Court entered a Second Preliminary Order of Forfeiture,

forfeiting the Property under 21 U.S.C. § 853(p). ECF No. 416.

**J.      The Petition for Third-Party Interest in Forfeited Property**

On November 2, 2022, Claimants filed a Petition for Third-Party Interest in Forfeited Property, asserting claims under both 21 U.S.C. § 853(n)(6)(A) and (B). ECF No. 419 at 2. Alternatively, Claimants alleged that they are entitled to a constructive trust because "they have maintained and improved the property and made significant contributions to its maintenance and preservation." *Id.*

**K.      The Motion to Dismiss and Report and Recommendations**

The United States moved to dismiss the Petition, ECF No. 426, which this Court referred to Magistrate Judge Jonathan Goodman, ECF No. 427. Judge Goodman recommended that the United States' motion to dismiss be granted and denied in part. ECF No. 438. To begin, Judge Goodman concluded that Falcon, as a member of the LLC, lacked standing to personally challenge the forfeiture of the property held in the LLC's name. *Id.* at 15. Judge Goodman, however, recommended that Falcon be granted leave to amend to assert a possessory right: the right to live on the property. *Id.*

Next, Judge Goodman determined that Claimants could plead alternative interests under 21 U.S.C. § 853(n)(6)(A) and (B). *Id.* at 18.

Judge Goodman then addressed Claimants' constructive trust claim. *Id.* at 19. Judge Goodman "[a]ssum[ed], for the sake of discussion, that Claimants have alleged a constructive trust theory under Florida law" before discussing the effect of a constructive trust on the forfeiture order, *id.* at 27–28. Judge Goodman ultimately concluded that the parties' dispute would be better addressed at summary judgment or after an evidentiary hearing. *Id.* at 29–31.

Lastly, Judge Goodman found that the United States was not authorized to record a

*lis pendens* on the Property. *Id.* at 34–41. Judge Goodman concluded that "the United States may not rely on the *lis pendens* notices to support its motion to dismiss," but may "advance other arguments (in a summary judgment motion or at the evidentiary, ancillary hearing to adjudicate Petitioners' claims) concerning Plaintiff's notice (actual or constructive) of the Government's interest in the property." *Id.*

**L.      The Order Adopting in Part the Report and Recommendation**

The Court adopted the report and recommendation in part. ECF No. 443. The Court agreed with Judge Goodman that Claimants had alleged claims under § 853(n)(6) and that the *lis pendens* were unauthorized. *Id.* at 4–7. But the Court agreed with the Government that Claimants had not alleged all essential elements of a constructive claim. *Id.* at 7.

**M.      The Amended Petition for Third-Party Interest in Forfeited Property**

In the amended petition, Claimants assert that "[t]he property is owned by Claimant Property Investment 7722 LLC." ECF No. 444 at 1. Claimants state that "[t]he LLC holds legal title to the property, and that title has not been challenged by the government." *Id.* But in a footnote, Claimants state that "to the extent the government contests the standing of the LLC entity, Claimant Falcon would seek to amend the petition to assert his rights as a real person in interest with valid legal claims to the residential property." *Id.* at 1 n.1.

The amended petition then alleges that "Claimant LLC asserts its interest in the property under 21 U.S.C. § 853(n)(6)(A)." *Id.* at 2. The only alleged basis for this claim is that the LLC has held legal title to the Property since May 2017. *See id.* at 1–3. Alternatively, Claimants allege that "[i]f any interest of the defendant existed, it was extinguished by April 5, 2022, and acquired by bona fide purchase for value, including financial transfers for the benefit of the previous LLC owner prior to the date of the substitute asset forfeiture order."

*Id.* at 3. Thus, Claimants continue, "Claimant LLC also asserts its interest under 21 U.S.C. § 853(n)(6)(B), in that Claimant qualifies as a bona fide purchaser reasonably without cause to believe that the property was subject to forfeiture when the property and the legal interest was acquired by Claimant LLC." *Id.*

The amended petition does not assert a claim under § 853(n)(6)(A) or (B) on behalf of Falcon himself or allege that he holds a possessory interest in the Property. *See id.*

Claimants also abandoned their constructive-trust claim. *Id.* at 3–4. Claimants now allege, in the alternative, that they have "an equitable interest in, and specific to, the property in the nature of an equitable construction or mechanics lien in the dwelling . . . through their expenditures and labor. . . ." *Id.* at 3. Claimants recognize that "general creditors lack standing to pursue ancillary claims" and that they "have not perfected a construction lien." *Id.* Still, they argue that "where a creditor or lienor (a status that, under Florida law, includes both perfected lien holders and prospective lien holders who have performed) contributes to the work on real estate, a specific interest in the real estate is created." *Id.* (citing Fla. Stat. § 713.01). Claimants argue that Falcon, on behalf of himself and the LLC, has expended at least $71,660 to rehabilitate the Property's equity. *Id.* at 3–4.

## N.    The Unpaid Mortgage

On October 12, 2021, the mortgagee filed a foreclosure action against the LLC in Florida state court, alleging that the LLC owed the entire principal balance of $500,000, plus other costs. *See* Foreclosure Complaint, ECF No. 454-17.[3] In answer to interrogatories, the LLC and Falcon disclaimed responsibility for the mortgage: "Title records reflect a mortgage

---

[3] The foreclosure action was stayed pending these forfeiture proceedings. *See* Order Placing Case Inactive Status: Motion Stay or Abate, ECF No. 454-18.

on the property, but I am not personally liable on such mortgage and I am unaware of the amount owed, whether it has actually been satisfied or waived, or whether it is otherwise subject to a claim for enforcement." LLC Interrogatory Answer ¶ 11; Falcon Interrogatory Answer ¶ 13. Claimants also admitted that they have made no payments on any mortgage or lien encumbering the Property. Falcon Admission ¶ 23; LLC Admissions ¶ 16.

As of September 2025, the amount due on the Mortgage is $817,988.81. *See* September 2025 Payoff attached here as **Ex. C**.

## O.    The Unpaid Property Taxes and Liens on the Property

Claimants have also admitted they "have not made any payments towards real estate taxes on the Subject Property." Falcon Admissions ¶ 24; LLC Admissions ¶ 17. To date, the Property is subject to $80,539.26 in unpaid property taxes. *See* Notice of Ad Valorem Tax and Non-Ad Valorem Assessments attached here as **Ex. D**. Also, on July 26, 2022, and August 28, 2023, respectively, the Miami-Dade County Stormwater Utility Section recorded two Notices of Lien for Stormwater Utility Maintenance for $130.14 and $84.09, plus interest. July 2022 Notice of Lien for Stormwater, ECF No. 454-20; August 2023 Notice of Lien for Stormwater, ECF No. 454-21.

MEMORANDUM OF LAW

## I.    Claimants bear the burden of proof in forfeiture ancillary proceedings to prove standing and an interest under 21 U.S.C. § 853(n)(6).

"[C]riminal forfeiture is split into two phases: the first phase concerns the defendant's ownership of the property to be forfeited, and the second phase concerns any third party's ownership of that property." *United States v. Amodeo*, 916 F.3d 967, 972 (11th Cir. 2019). In phase two, following the entry of a preliminary order of forfeiture, a person, "other than the defendant, asserting a legal interest in property which has been ordered forfeited . . . may . . .

13

petition the court for a hearing to adjudicate the validity of his alleged interest in the property."
21 U.S.C. § 853(n)(2); *see* 18 U.S.C. § 982(b)(2) (incorporating the procedures of § 853 for
criminal forfeiture). The petitioner bears the burden of proof throughout the forfeiture
ancillary proceeding. *United States v. Gilbert*, 244 F.3d 888, 911 (11th Cir. 2001).

The burden includes proving standing and the merits of an interest under § 853(n)(6).
First, as a threshold matter, "a litigant must establish that he has standing. . . ." *Amodeo*, 916
F.3d at 971. "To establish standing, a litigant must show (1) that he has suffered a concrete
injury (2) that is fairly traceable to the challenged conduct, and (3) that is likely to be redressed
by a favorable judicial decision." *United States v. Devlin*, 2022 WL 3921583, at *2 (11th Cir.
Aug. 31, 2022) (cleaned up). "Standing in forfeiture cases has both constitutional and
statutory aspects." *United States v. Tardon*, 493 F. Supp. 3d 1188, 1208 (S.D. Fla. 2020) (citation
modified). Constitutional standing is at issue here, and it is discussed in Section III.

Second, if a petitioner can establish standing, the petitioner must also prove by a
preponderance of the evidence that they have a superior interest or are a bona fide purchaser
reasonably without cause to believe that the property is subject to forfeiture. *See* 21 U.S.C.
§ 853(n)(6); *see also United States v. Kennedy*, 201 F.3d 1324, 1333 (11th Cir. 2000) (explaining
that in ancillary proceedings, petitioner bears the "burden to come forward and demonstrate
either that she had superior title to the property at the time of the act giving rise to the
forfeiture, or that she is a bona fide purchaser for value").

Section 853(n) provides, in relevant part, as follows:

**(6)** If, after the hearing, the court determines that the petitioner has established
by a preponderance of the evidence that—

**(A)** the petitioner has a legal right, title, or interest in the property, and such
right, title, or interest renders the order of forfeiture invalid in whole or in part

because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

**(B)** the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

21 U.S.C. § 853(n)(6).

These are the only two grounds for relief. *United States v. Watkins*, 320 F.3d 1279, 1282 (11th Cir. 2003). If the petitioner fails to establish facts supporting their claim under one of these two limited theories, the petitioner is not entitled to relief in the ancillary forfeiture proceeding. *Id.*

## II.     Falcon has not and cannot now allege individual claims under § 853(n)(6)(A) or (B).

To begin, Falcon abandoned any individual claims under § 853(n)(6)(A) or (B) by not raising them in the amended petition, and any attempt to do so now would be untimely and futile. In their initial petition, both Falcon and the LLC asserted claims under § 853(n)(6)(A) and (B). *See* ECF No. 419 at 2. The Court, however, dismissed Falcon's individual claims, finding he lacked standing to personally challenge the forfeiture based solely on his status as an LLC member. ECF No. 438 at 15; *see United States v. ADT Sec. Servs., Inc.*, 522 F. App'x 480, 490 (11th Cir. 2013) (holding that petitioner whose "claimed interest in the properties arises only out of its membership in the LLCs owning those properties" lacked standing to assert an individual claim). But it also granted Falcon leave to amend to allege facts supporting a possessory right in the property, such as the right to live in it. *Id.*

Falcon declined that opportunity, thus abandoning those claims. *See Grayson v. No Labels, Inc.*, 2022 WL 12144181, at *3 (11th Cir. Oct. 21, 2022) (holding that claims not asserted in amended pleadings were abandoned). The amended petition does not assert a claim under § 853(n)(6)(A) or (B) on behalf of Falcon or allege that Falcon holds a possessory interest in the Property. Instead, the amended petition alleges that *the LLC* owns the Property, either through a superior interest or as a bona fide purchaser:

- "The property is owned by Claimant Property Investment 7722 LLC. . . ." ECF No. 444 at 1.

- "The LLC holds legal title to the property, and that title has not been challenged by the government." *Id.*

- "[T]he property is titled in the name of Claimant record owner, the LLC, of which Claimant Falcon is managing member and owner, having acquired his controlling ownership interest on April 5, 2022, prior to the substitute asset forfeiture order." *Id.* at 2.

- "Claimant LLC asserts its interest in the property under 21 U.S.C. § 853(n)(6)(A). . . ." *Id.*

- "Because the relevant interest in the property is vested in the Claimant LLC, not the defendant, and because Claimant LLC's interest is superior to any interest that may be attributed to the defendant by the government in this proceeding, the instant claim should be sustained." *Id.* at 2–3.

- "Claimant LLC also asserts its interest under 21 U.S.C. § 853(n)(6)(B), in that Claimant qualifies as a bona fide purchaser reasonably without cause to believe that the property was subject to forfeiture when the property and the legal interest was acquired by Claimant LLC." *Id.* at 3.

- "Any claim of interest by the government in the property as a substitute asset is inferior to that of Claimant LLC." *Id.*

The focus on the LLC's interest was not inadvertent, but strategic. In a footnote in the amended petition, Claimants say that "to the extent the Government contests the standing of the LLC entity, Claimant Falcon would seek to amend the petition to assert his rights as a real person in interest with valid legal claims to the residential property." ECF No 444 at 1 n.1.

16

But this wait-and-see pleading strategy is improper for several reasons.

First, this Court already ruled that Claimants could plead alternative interests under § 853(n)(6). ECF No. 438 at 18–19. If Falcon had a basis for asserting an alternative individual interest distinct from the LLC's, he should have alleged it. By not asserting the claim, he abandoned it. *See Grayson*, 2022 WL 12144181 at *3.

Second, it is too late to amend now. When the "thirty day period for filing claim expires, [a] petitioner may not amend claim to assert alternative grounds of recovery." *United States v. Caro*, 2010 WL 680939, at *5 (S.D. Fla. Feb. 23, 2010) (citing *United States v. Soreide*, 461 F.3d 1351, 1355 (11th Cir. 2006) ("We will not vacate the summary judgment nor provide relief from the final order of forfeiture based upon a claim that was not asserted as required by the statute.")). Falcon cannot assert claims piecemeal, using the Court's rulings as advisory guidance. An amendment would also be unfair at this stage, as the claims have been pending for some time, and the parties have engaged in discovery. *See Andrx Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1237 (11th Cir. 2005) (affirming denial of motion to amend complaint whether party unduly delayed in amending and attempted to inject a new theory of recovery). Moreover, the longer this case goes on unresolved, and the Mortgage and taxes remain unpaid, the more equity is lost in the Property, prejudicing the Government.

Third, the amendment would be futile because Falcon has no individual interest in the Property. *See Caro*, 2010 WL 680939, at *4 (denying claim in ancillary proceedings where Petitioner had no "vested interest in the property, itself"). Falcon conceded in discovery that, rather than purchasing the Property, he acquired the LLC that held title to it. Falcon Interrogatory Response ¶ 5. And even if he had purchased the Property, he would not have been bona fide, as discussed in Section V below.

In sum, Falcon did not allege, and cannot now allege, an individual interest under § 853(n)(6)(A) or (B).

## III. The LLC lacks constitutional standing to assert a superior interest in the Property because it is a mere nominee or straw owner.

For constitutional standing, courts determine "whether the litigant has an interest in the property subject to the forfeiture because, absent an interest in that property, there is no case or controversy." *Amodeo*, 916 F.3d at 971. "[P]ossession of bare legal title by one who does not exercise dominion and control over the property is insufficient even to establish standing to challenge a forfeiture." *United States v. A Single Fam. Residence & Real Prop. Located at 900 Rio Vista Blvd., Fort Lauderdale*, 803 F.2d 625, 630 (11th Cir. 1986). Thus, "courts look behind the formal title to determine whether the record title owner is a 'strawman' set up to conceal the financial affairs of illegal dealings of someone else." *United States v. Carrell*, 252 F.3d 1193, 1204 (11th Cir. 2001). This is because "straw owners and persons who might have unknowingly been in possession of property that is seized do not necessarily suffer an injury that is sufficient to demonstrate standing." *United States v. Henry*, 621 F. App'x 968, 972 (11th Cir. 2015). "Likewise, a person found to be acting as a nominee for others whose property is subject to forfeiture cannot have a vested interest in the property." *Id.*; *see also United States v. Weiss*, 467 F.3d 1300, 1303 n.1 (11th Cir. 2006) (same).

Here, discovery has shown that the LLC's sole purpose was, and remains, to hold bare legal title to the Property. Defendant incorporated the LLC shortly before he used it to acquire the Property. ECF Nos. 454-1; 454-2. After it took title, the LLC remained dormant for years—following no corporate formalities—until shortly before Defendant tried to sell the Property. ECF Nos. 454-8; 454-9. And since then, the LLC corporate filings have been sparse at best. *See* Ex. B. Thus, as Claimants have admitted, the LLC's only "business" is owning the

18

Property. Falcon Admissions ¶ 20; LLC Admissions ¶ 13.

Although the LLC changed ownership on April 5, 2022, it retained its nominal existence as titleholder of the Property. Falcon conceded in discovery that since he acquired the LLC, the company has not maintained a corporate office or address other than the Property. Falcon Admissions ¶ 16; LLC Admissions ¶ 9. What is more, the LLC was administratively dissolved in September 2025, Ex. B—so it has not even kept up the appearance of being an active company.

In addition, unlike a true property owner, the LLC (and Falcon for that matter) has shunned responsibility for paying the mortgage and taxes encumbering the Property. LLC Interrogatory Answer ¶ 11; Falcon Interrogatory Answer ¶ 13. In answer to interrogatories, Falcon, answering for himself and the LLC, asserted: "I am not personally liable on such mortgage and I am unaware of the amount owed, whether it has actually been satisfied or waived, or whether it is otherwise subject to a claim for enforcement." LLC Interrogatory Answer ¶ 11; Falcon Interrogatory Answer ¶ 13.[4] Claimants also admitted that they have made no mortgage payments, Falcon Admission ¶ 23; LLC Admissions ¶ 16, or "made any payments towards real estate taxes on the Subject Property," Falcon Admissions ¶ 24; LLC Admissions ¶ 17.

As a result, the Property has been subjected to a foreclosure action, ECF No. 454-17; a mortgage liability of $817,988.81 and counting, Ex. C; and $80,539.26 in unpaid property taxes, Ex. D. The Miami-Dade County Stormwater Utility Section has also recorded two liens

---

[4] In any event, liability under a mortgage is not enough, by itself, to establish an ownership interest in real property. *See United States v. Barber*, 61 F. Supp. 3d 1273, 1276 (M.D. Fla. 2014) (holding that "Petitioner's liability on the mortgages does not vest her with a cognizable ownership interest in the real property).

against the Property. ECF Nos. 454-20; 454-21. So Claimants have failed to pay even basic costs of home ownership.

On this record, the LLC cannot meet its burden of showing standing to assert a superior interest in the Property. *See 900 Rio Vista Blvd.*, 803 F.2d at 630 (holding that corporation that took title to property the day after its incorporation and did nothing else was a strawman purchaser without standing to challenge forfeiture); *United States v. Suarez*, 2016 WL 10892323, at *5 (S.D. Fla. Dec. 7, 2016), *aff'd*, 716 F. App'x 937 (11th Cir. 2018) (granting summary judgment for Government where petitioner "acknowledge[d] he took the Subject Property subject to a first mortgage of $600,000 or $650,000," but "failed to make any mortgage payments" and did not know who was the mortgagee); *Tardon*, 493 F. Supp. 3d at 1202–03 (finding that two LLCs were nominee owners of properties where defendant had created the LLCs to hold the properties, defendant controlled the LLCs, title was transferred without an actual sale, and title owner had not made mortgage payments); *United States v. One 1990 Beechcraft 1900 C Twin Engine Turbo-Prop Aircraft*, 659 F. Supp. 2d 1260, 1270 (S.D. Fla. 2009) (finding that company that had "not observed corporate formalities until recently" was mere nominee owner of aircraft).

In short, a "look behind the formal title," *Carrell*, 252 F.3d at 1204, reveals that the LLC was and remains a nominee owner of the Property. It has therefore not suffered an injury "sufficient to demonstrate standing." *Henry*, 621 F. App'x at 972. To conclude otherwise would eviscerate the purpose of forfeiture, allowing defendants to circumvent a mandatory part of their punishment by just changing the ownership of a company holding title to assets.

Accordingly, the Court should dismiss the LLC's § 853(n)(6)(A) claim due to lack of standing.

IV.    **Even if it had standing, the LLC nonetheless cannot establish that it held a superior interest under § 853(n)(6)(A).**

During the September 5, 2025 status conference, the Court asked the parties to brief when, under § 853(n)(6)(A), "the acts which gave rise to the forfeiture of the property" arise when a claimant asserts an alleged superior interest in substitute property. The answer is that § 853(n)(6)(A) contains an internal "temporal requirement," requiring that claimants prove that their interest in property is superior to that of the defendant at the time the offense was committed. The requirement applies to both directly forfeitable and substitute assets.

The Eleventh Circuit has held that to have a "qualifying interest" under § 853(n)(6)(A), a claimant must satisfy three elements: "(1) he had a legal interest in the forfeited property; (2) his legal interest in the forfeited property was superior to [the defendant's] interest; and (3) his legal interest was superior to [the defendant's] *at the time of* [the crime]." *United States v. Ramunno*, 599 F.3d 1269, 1273 (11th Cir. 2010) (emphasis added) (citing *United States v. Shefton*, 548 F.3d 1360, 1364 (11th Cir. 2008) (setting forth the same elements)). Thus, a superior interest under § 853(n)(6)(A) requires "a legal right, title, or interest in the forfeitable properties that *preceded the commission of the crime* that gave rise to the forfeiture of that property," *United States v. Eldick*, 223 F. App'x 837, 840 (11th Cir. 2007) (emphasis added).

Additionally, "§ 853(n) (perhaps as a result of Congressional oversight) effectively imposes the temporal limitations of the relation-back doctrine even on third-party claims to substitute assets." *United States v. Daugerdas*, 892 F.3d 545, 554 (2d Cir. 2018). As persuasively explained in *Daugerdas*:

> That provision does not distinguish between contested property initially forfeited as offense proceeds and property forfeited as substitute assets; instead, § 853(n)(6)(A) requires that the third party's interest in any forfeited property must have been superior to the defendant's "at the time of the commission of the acts which gave rise to the forfeiture."

21

*Id.*; *see also United States v. Soreide*, 2005 WL 8137780, at *4 (S.D. Fla. Mar. 23, 2005) ("[t]o make sense of [§ 853(n)(6)(A)], it is necessary to read the temporal requirement").

Here, the criminal acts that gave rise to forfeiture occurred before the Property's purchase. *See* ECF Nos. 1 at 4; 79 at 4; 119–21. Thus, the LLC did not acquire an interest in the Property, superior or otherwise, before the commission of the crime that gave rise to the forfeiture of the Property. *See Ramunno*, 599 F.3d at 1273. At best, at the time of the criminal acts, the LLC had an interest equal to Defendant's interest in the Property—which is to say, no interest at all. *See id.*

On this issue, Claimants will likely raise a strawman argument: that 21 U.S.C. § 853(c) does not apply to substitute assets. But that is neither here nor there. The Government's position is that, regardless of § 853(c), § 853(n) has its own temporal limitation. *See Ramunno*, 599 F.3d at 1273; *see also Daugerdas*, 892 F.3d at 554.

For these reasons, the Court should deny the LLC's § 853(n)(6)(A) claim.

**V.    The LLC cannot establish that it is a bona fide purchaser under § 853(n)(6)(B).**

While acknowledging that the LLC has always held title to the Property, Claimants nonetheless contend that the LLC may also be a bona fide purchaser because "[i]f any interest of the defendant existed, it was extinguished by April 5, 2022, and acquired by bona fide purchase for value[.]" ECF No. 444 at 3. That is incorrect for several reasons.

First, there was no "purchase" of the *Property* on April 5, 2022, in the first place. "An interest in real property cannot be conveyed other than by deed." *Barber*, 61 F. Supp. 3d at 1276 (citing Fla. Stat. § 689.01). Although Defendant, through the LLC, and Falcon signed a contract for the sale of the home, ECF No. 454-12, the contract was not consummated after Falcon was informed of the Government's *lis pendens* through a title search. *See* ECF No. 454-

13.[5] Instead, Falcon "took over ownership of the LLC that owns the property." *Id.* at 15; *see also id.* at 2 (Falcon stating in email that, after learning of the *lis pendens*, "i decided an spoke with mr Rodriguez and took over the llc" [*sic*]); Falcon Admissions ¶ 25 (Falcon admitting that "there was no contract for sale of the property itself"); Falcon Interrogatory Response ¶ 5 (Falcon stating that he acquired the LLC under an oral agreement with Defendant); Falcon Admissions ¶ 12; LLC Admissions ¶ 5 (Falcon and the LLC admitting that the LLC still "owns the property, and any appurtenant rights"); Falcon Interrogatory Response ¶¶ 9–10 (Falcon's inability to identify the source of funds used to purchase the Property).

Moreover, as noted, neither the LLC nor Falcon has made any payments towards, or is even aware of, what is owed on the mortgage encumbering the Property. *See* LLC Interrogatory Answer ¶ 11; Falcon Interrogatory Answer ¶ 13; *see also Suarez*, 2016 WL 10892323, at *5 (granting summary judgment for Government on § 853(n)(6)(B) claim where petitioner "acknowledge[d] he took the Subject Property subject to a first mortgage of $600,000 or $650,000," but "failed to make any mortgage payments" and did not know who was the mortgagee). The same holds true for the Property taxes. Falcon Admissions ¶ 24; LLC Admissions ¶ 17. Had there been a purchase of the Property, the Mortgage and property taxes would not still be owing.

Second, assuming the LLC can somehow be classified as a purchaser of the Property, it would not be bona fide because the knowledge of Defendant's wrongdoing would be imputed to the LLC both from Defendant and Falcon. Under Florida law, the knowledge of an officer is generally imputed to the corporation. *Chang v. JPMorgan Chase Bank, N.A.*, 845

---

[5] Of course, even if the contract had gone through, the LLC would have been the *seller*, not the purchaser, so its § 853(n)(6)(B) claim is nonsensical on its face.

F.3d 1087, 1095 (11th Cir. 2017) (citing *Beck v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir. 1998)). Defendant solely controlled the LLC before April 5, 2022, Falcon Admissions ¶¶ 9, 11; LLC Admissions ¶¶ 2, 4, so his knowledge of wrongdoing would have been imputed to the LLC. *See United States v. 101 Houseco, LLC*, 22 F.4th 843, 850 (9th Cir. 2022) (holding that LLC was not a bona fide purchaser of property where an LLC officer had "knowledge of the fraud at the time it was perpetrated").

The change in LLC ownership did not affect that knowledge. The new owner, Falcon, also "knew that Defendant had been indicted on federal criminal charges," "knew that Defendant had been convicted on federal criminal charges," and "knew that Defendant had been sentenced to prison on federal criminal charges." Falcon Admissions ¶¶ 2–4. Moreover, he had "authorized a title and lien search on the Subject Property" and had been "informed that the United States had filed a lis pendens on the Subject Property." Falcon Admissions ¶¶ 5–6. Thus, the LLC could no more claim bona fide status than Falcon, who undisputably cannot. *See United States v. Derochemont*, 2011 WL 6319293, at *3 (M.D. Fla. Dec. 15, 2011) (finding that petitioner could not "claim to have been without reason to know that [defendant] would be ordered to forfeit assets in the criminal case against him" where defendant had "confess[ed] his crime to Petitioner").

If Falcon argues that, even though he knew of Defendant's indictment, conviction, and sentence, and of the Government's *lis pendens*, he still lacked knowledge that the Property was subject to forfeiture, the Court should reject that argument. Even if Falcon's lack of knowledge is genuine, "[a]ctual lack of knowledge of forfeitability is not enough" to gain bona fide status. *United States v. Medina Cuartes*, 155 F. Supp. 2d 1338, 1342–43 (S.D. Fla. 2001). The test is "not merely whether the petitioner had knowledge of forfeitability of the

asset but whether the petitioner *reasonably* held the belief that the property was not subject to forfeiture." *Id.* at 1343 (emphasis in original). "This is an objective, not subjective, test." *Id.* Consequently, "a genuinely held belief that property is not subject to forfeiture is unavailing unless the belief was objectively reasonable in the circumstances." *Id.* In concrete terms, the objective test "precludes willful blindness on the part of a petitioner and imposes a duty of reasonable inquiry, where warranted, before objective reasonableness can be established." *Id.* (cleaned up); *accord United States v. Sabatino*, 2018 WL 2074191, at *7 (S.D. Fla. Apr. 13, 2018), *report and recommendation adopted*, (S.D. Fla. Apr. 30, 2018).

Falcon cannot establish that his purported lack of knowledge, if true, would be objectively reasonable. Falcon gained actual knowledge that the Property was subject to forfeiture when he was informed of the Government's *lis pendens*. *See* ECF No. 454-13. A bona fide purchaser is someone "who has purchased property for value without notice of any defects in the title of the seller." *United States v. Suarez*, 716 F. App'x 937, 938 (11th Cir. 2018). "Under Florida law, recorded defects that appear in the chain of title are sufficient to place a purchaser on notice of such defects." *Id*. Having gained actual notice that there was a defect in the LLC's title, Falcon cannot qualify as a bona fide purchaser.

Moreover, the *lis pendens* listed and identified the criminal case caption and number, the date of the indictment, the title owner of the Property, and the charged offenses, and stated that the United States may forfeit the Property as substitute property under 21 U.S.C. § 853(p). ECF Nos. 454-6; 454-7. Had Falcon exercised his duty of inquiry, *Sabatino*, 2018 WL 2074191, at *7, he would have been well informed about this case.

Even setting the *lis pendens* aside, Falcon also admitted that he knew of Defendant's indictment, conviction, and sentence before acquiring the LLC. Falcon Admissions ¶¶ 2–4.

Moreover, the Government publicly alleged long ago that Defendant's substitute property would be subject to forfeiture upon his conviction. ECF No. 1 at 14; 79 at 14. Defendant also publicly pleaded guilty, and his publicly available plea deal showed that Defendant had agreed to the entry of a forfeiture money judgment of $1,728,508 and the forfeiture of directly forfeitable and substitute property. ECF No. 119 ¶ 8.

Under this record, even if Falcon subjectively did not believe that the Property was subject to forfeiture, his belief was unreasonable, the result of willful blindness. *See Medina Cuartes*, 155 F. Supp. 2d at 1343; *see also Suarez*, 2016 WL 10892323, at *6 (granting summary judgment on § 853(n)(6)(B) claim where "Petitioner should have known, with reasonable due diligence, that the Property was subject to forfeiture at the time he purchased it"); *United States v. Harrold*, 2017 WL 2543891, at *3 (D. Minn. June 12, 2017) (finding that claimant was not bona fide where aware of defendant's criminal activity, indictment, and guilty plea).

In short, the Court should deny the LLC's § 853(n)(6)(B) claim.

## VI. Claimants lack standing to assert an unperfected construction or mechanics lien.

While recognizing that "general creditors lack standing to pursue ancillary claims" and admitting they "have not perfected a construction lien," Claimants nonetheless assert an "equitable construction or mechanics lien" on the Property based on alleged work to "rehabilitate" and maintain it. ECF No. 444 at 3. Black-letter law forecloses this alternative claim.

A fundamental tenet of criminal forfeiture law is that "unsecured or general creditors cannot be considered bona fide purchasers for value within the meaning of § 853(n)(6)(B)." *Watkins*, 320 F.3d at 1283. "Until a person perfects a lien, he is merely an unsecured creditor with no interest in a particular asset." *Caro*, 2010 WL 680939, at *6; *see United States v. Mendez*,

2021 WL 5898185, at *6 (S.D. Fla. Dec. 3, 2021) (dismissing claim by law firm that did not have a secured interest in forfeited property), *report and recommendation adopted*, 2022 WL 204742 (S.D. Fla. Jan. 24, 2022); *Barber*, 61 F. Supp. 3d at 1276 (explaining that "helping pay for a piece of property confers on the payor, at best, the status of an unsecured creditor and thus, the payor has no ownership interest in the property"); *United States v. Gutierrez*, 2012 WL 3291976, at *3 (S.D. Fla. Aug. 13, 2012) (dismissing claim of petitioner who lacked money judgment or judgment lien and was thus just a general creditor of defendant, without an interest in the specific real property); *United States v. Battle*, 2008 WL 5056875, at *3 (S.D. Fla. Mar. 3, 2008), *report and recommendation adopted as modified* 2008 WL 5056840 (S.D. Fla. Nov. 21, 2008) (striking claims, explaining: "As petitioners do not, and cannot, claim an interest in specific, forfeited assets or property, they are properly considered only general unsecured creditors attempting to collect on outstanding debts"); *see also United States v. Patel*, 2024 WL 1468490, at *5 (S.D. Fla. Mar. 18, 2024) (finding that default judgment did not create a lien or property interest until additional steps were taken "to perfect that lien interest"), *report and recommendation adopted*, 2024 WL 1462421 (S.D. Fla. Apr. 4, 2024).

Florida's Construction Lien Law, Fla. Stat. § 713.001, *et seq.*, is strictly construed because it is in derogation of the common law. *WB's Septic & Sitework, Inc. v. Tucker*, 365 So. 3d 1242, 1245 (Fla. 1st DCA 2023). To perfect a construction lien, "every lienor, including laborers and persons in privity, shall record a claim of lien" containing several categories of information. Fla. Stat. § 713.08(a). A recorded claim of lien is required regardless of whether the work is done under a contract, *see* Fla. Stat. § 713.05 ("No lien under this section shall be acquired until a claim of lien is recorded."), or without a contract (if additional notices are given), *see* Fla. Stat. § 713.06(2)(a) ("All lienors under this section, except laborers, as a

prerequisite to perfecting a lien under this chapter and recording a claim of lien, must serve a notice on the owner setting forth the lienor's name and address, a description sufficient for identification of the real property, and the nature of the services or materials furnished or to be furnished."); *see Calixte v. Coastal Bldg. Contractors, LLC*, 2024 WL 1896114, at *2 (Fla. 4th DCA May 1, 2024) (explaining that "[a] prerequisite to perfecting a lien under Chapter 713 when the lienor is not in privity with the property owner, as is the case here, includes service of a written notice to the property owner.).

Claimants admit that they "have not perfected a construction lien." ECF No. 444 at 3. Indeed, there is no evidence that Claimants recorded a claim of lien for work on the Property or followed any other statutory prerequisite. In any event, Claimants are out of time to perfect a lien, which may not be recorded "later than 90 days after the final furnishing of the labor or services or materials by the lienor." Fla. Stat. § 713.08(5); *see Outsource Servs. Mgmt., LLC v. Lake Austin Properties I, Ltd.*, 2014 WL 12640959, at *3 (M.D. Fla. Apr. 2, 2014) (explaining that "[t]o be valid, a claim of lien must be recorded no later than ninety (90) days after the 'final furnishing of the labor or services or materials by the lienor.'").[6]

Without a perfected construction lien, Claimants have no standing to assert a claim based on work done on the Property. *See Caro*, 2010 WL 680939, at *6; *see also United States v. Portillo*, 2013 WL 3466854, at *1 (N.D. Tex. July 9, 2013) (holding that petitioners who had worked on property, "painting walls, replacing flooring, hanging lights, and mowing the

---

[6] Moreover, even if Claimants had perfected a construction lien for work performed around April 5, 2022 (which they did not), the lien would have expired by now. *See* Fla. Stat. § 713.22 ("A lien provided by this part does not continue for a longer period than 1 year after the claim of lien has been recorded or 1 year after the recording of an amended claim of lien that shows a later date of final furnishing of labor, services, or materials, unless within that time an action to enforce the lien is commenced in a court of competent jurisdiction."). Plus, for the reasons set forth above, Claimants wouldn't be bona fide.

yard," and lived on the property for years lacked standing to assert claim); *United States v. Baker*, 2011 WL 3860500, at *4 (D. Or. Aug. 31, 2011) (holding the petitioner who provided materials for rehabilitation of property and made seven mortgage payments for defendant lacked standing to assert claim because he did not obtain a lien); *United States v. Wheaton*, No. 05–33–P–S, 2005 WL 2429792, *7 (D. Me. Sept. 28, 2005) (finding that petitioner who provided building materials for construction of residence but did not record a lien was unsecured creditor without standing).

Claimants' contention that Florida's Construction Lien Law grants "both perfected lien holders and prospective lien holders who have performed" an interest in property, ECF No. 444 at 3, is baseless. Claimants cite no authority for that proposition, and the Government has uncovered none. Moreover, Florida's Construction Lien Law states that liens under § 713.05 and 713.06 "attach and take priority" either "as of the time of recordation of the notice of commencement" or "as of the time the claim of lien is recorded." Fla. Stat. § 713.07(2). Thus, absent recordation, no lien interest attached to the Property.

In sum, the Court should deny Claimants' alternative equitable claims.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court deny Claimants' Amended Petition for Third-Party Interest in Forfeited Property, ECF No. 444, and enter a Final Order of Forfeiture in the Government's favor.

Respectfully submitted,

**JASON A. REDING QUIÑONES**
**UNITED STATES ATTORNEY**

By:      *s/ Jorge R. Delgado*
         Jorge R. Delgado
         Assistant United States Attorney
         Florida Bar No. 084118
         U.S. Attorney's Office
         500 E. Broward Blvd., Suite 700
         Fort Lauderdale, FL 33394
         Telephone: (954) 660-5954
         E-mail: Jorge.Delgado2@usdoj.gov