UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-20631-CR-SCOLA

UNITED STATES of AMERICA

v.

OSMANY RODRIGUEZ DIAZ,
Ex Rel

PROPERTY INVESTMENT 7722 LLC and
BRANDON FALCON,

    CLAIMANTS.
_____/

**CLAIMANTS' SUPPLEMENTAL MEMORANDUM**

Claimants Property Investment 7722 LLC and Brandon Falcon,[1] by and through undersigned counsel, respectfully file their supplemental prehearing memorandum, including to address the issue of whether acquisition of innocent (untainted) property for which no forfeiture order has issued and for which no valid lis pendens notice exists or could be filed creates an ownership interest that the federal courts may disregard under the government's theory that doing so punishes a criminal defendant, even though such defendant suffers nothing from the forfeiture of the innocent transferee owner's property.

---

[1] This memorandum is filed on behalf of both the LLC and its owner in order to preserve Brandon Falcon's claim that, in the event that the Court were to reach the conclusion the LLC lacks standing, such as under a veil-piercing theory, he would then be the appropriate claimant party.

1. **<u>The government's inexplicable five-year delay in seeking forfeiture, combined with its invalid lis pendens notice, undermine its attacks on the LLC that owns the property and which restored and created the property's value.</u>**

In the present case, the government does not contest that the criminal defendant (Mr. Diaz) has *no continuing interest* in the property and that the Claimants have manifestly exercised *dominion and control* over the property; in fact, the government has not disputed any of the extensive dominion-and-control allegations of the petition, DE:444:2–4, including that the Claimant LLC and its owner turned the unlivable property into a valuable residence **before** entry of any order forfeiting any remaining interest that the defendant could have had at the time it became subject to forfeiture. The government cannot dispute the significant level of Claimants' expense incurred in rehabilitation of the deteriorated property or that it then became the residence for the LLC owner, fully reflecting dominion and control and refuting the claim of mere nominee status.[2]

This Court, in rejecting the government's standing-based dismissal arguments and adopting Magistrate Goodman's R&R on those points, found that the ownership allegations pled in the petition are sufficient to establish standing, with only the question of "superiority" of Claimants' interest to that of the criminal defendant left

---

[2] The parties have conferred prior to this filing. There are no additional stipulations of fact, beyond those set forth in docket entry 460, listing the Claimants' responses to the government's statement of material facts, docket entry 454.

to be resolved. DE:443:4 (explaining that "[t]he petition here satisfies these requirements by, for example, alleging that Petitioner Property Investment 7722 LLC has held title to the Real Property since May 25, 2017, that Petitioner Falcon became the managing member and owner of Property Investment 7722 LLC on April 5, 2022, and by attaching the deed evidencing ownership of the Real Property and corporate filings evidencing Falcon's status as Property Investment 7722 LLC's managing member and owner").

This case illustrates a fundamental defect in the government's disregard of corporate entities in criminal cases. The government was aware at all times that the lawful record owner of the untainted property at issue was a limited liability company, an LLC. Yet the government never took any steps to obtain or forfeit the LLC's 100% ownership interest in the property. The government filed an invalid, *see* DE:438, 443, lis pendens notice, but even in that invalid document referenced only an action against an individual, not the LLC. The government made its choice to forego seeking forfeiture of the LLC's interest and should be held to that decision.

The government has cited nothing from the criminal case against the defendant (Mr. Diaz) that would resolve any issue in its favor in this case, and specifically nothing to show that the LLC was unlawful or that its rights as a property owner were ever impaired as a consequence of the prosecution. Instead, the government admits that it obtained an order forfeiting the individual defendant's property ownership

interest, which amounted to 0%, because he was never the owner of the property.

2. **The government's superior-interest argument is unsupported as to unrestrained, untainted property and rests on disregarding the LLC in order to deem the defendant the owner of the property and to thereby employ a relation-back theory that has no application here.** The government's relation-back theory fails because Mr. Diaz was never the owner of the property. It also fails because the notion of forfeitability of the property is distinct from forfeitability of the defendant's interest in the property under Fed. R. Crim. P. 32.2. There is no question that at the time of the forfeitability of the defendant's interest in the property—i.e., at the time the government sought to establish that the defendant had dissipated his criminal proceeds such that the government could seek forfeiture of substitute untainted property interests that might be held by the defendant—the LLC already had ownership of the property. The government's argument that the relation-back date should go farther back in time, even though doing so never reaches a point in time in which the *property* was forfeitable is inconsistent with forfeiture law and due process.

Congress excluded substitute-asset forfeitures under 21 U.S.C. § 853(p) from the ambit of § 853(c)'s relation-back provision. This makes sense because the relation-back doctrine is based on the "taint" theory which lies at the root of traditional forfeiture law. *See* S.Rep. No. 98-225, 98th Cong., 1st Sess. 200-01 (1983) (explaining that relation-back provisions of 18 U.S.C. § 1963(c) and 21 U.S.C. §

4

853(c) are "a codification of the 'taint' theory that has long been recognized in forfeiture cases. Under this theory, forfeiture relates back to the time of the acts which give rise to the forfeiture."). Since substitute assets are untainted by definition, the relation-back doctrine does not apply to them, because the government's ownership interest does not relate back to untainted property. The same reasoning that led this Court to conclude that a lis pendens notice could not be filed as to the property in this case (as the government wrongly did in this case) shows why the relation-back doctrine does not apply to the unrestrained, untainted property that the government waited five years to try to forfeit.

Even more than simple case-by-case analysis of varying forfeitabiliity scenarios, common sense explains why the relation-back doctrine does not apply to untainted property that was never owned by the defendant. First, in a case such as this, where the LLC was owner whose interest in the property was at all times superior to the defendant's, engaging in the pretense that there was a time before either of them had an interest in the property that could be part of the analysis would lead to absurd results, because no property owned by anyone in the world would satisfy the government's relation-back test if it was acquired after a defendant committed crimes, whether or not the defendant was an owner. Thus, the purchaser of the Boston Celtics basketball team could claim no superior interest to the defendant in this case, where

5

ownership changed hands after the defendant's crimes. The mere fact that the defendant committed crimes means nothing in any relation-back analysis unless the defendant was the owner of the property before the claimant was the owner, and that is simply not the case here.

Thus, under any reading of the relation-back doctrine, its use here is a red herring. The question instead is who owned the property: the LLC or the defendant. The answer is that the LLC did, at all relevant times.

As a largely academic matter, however, it is clear that relation back as to untainted property is not meant to dispossess transferees of untainted property as to which forfeiture requirements have not been satisfied at the time of transfer. *See Honeycutt v. United States*, 137 S.Ct. 1626, 1633 (2017) ("Consistent with its text, the Court has previously acknowledged that § 853(c) applies to tainted property only."); *see also Luis v. United States*, 136 S.Ct. 1083, 1090 (2016); *United States v. Saccoccia*, 354 F.3d 9, 13 (1st Cir. 2003) (the plain language of the substitute-property provision of the statute does not allow the government to reach a third party's untainted assets as a substitute for tainted assets and for which the third party had already transferred prior to the date of forfeiture).

Any interest the government attributes to Mr. Diaz arises only through the corporate records of LLC but this Court has already ruled that an LLC member is *not*

6

the owner of LLC property and lacks standing to assert such an interest. DE:455:25 ("As this Court has already concluded, 'a member owns only his/her equitable share in the LLC itself and does not own the LLC property.' *United States v. Diaz*, 2023 WL 7483299, at *7 (S.D. Fla. Sept. 20, 2023) (emphasis in original), *report and recommendation adopted in part, rejected in part*, 2023 WL 7036721 (S.D. Fla. Oct. 26, 2023)."). Nor has the government sought to pierce the corporate veil as to the Claimant LLC.

3. **The government's argument that Falcon knew that the government had (wrongly) lodged a lis pendens notice precluded the his bona fide acquisition of an interest in the LLC lacks precedent or persuasive authority.** The government cannot gain rights from the improper filing of a notice of lis pendens that was invalid under Florida law. The Court should not permit the government to use its own *improper* lis pendens action to void the bona fides of a purchaser who lacked knowledge that the government was ever going to raise a claim to the non-defendant LLC's property. DE:443:5–6; *id.* at 6 (ruling that "the lis pendens and renewal of lis pendens were entered ... *before* the *requisite fair nexus had been established* and, thus, were *unauthorized*") (emphasis added).

The Claimants were not required to read the government's mind, five years after the criminal case was brought and following the criminal defendant's completion of

7

the sentence imposed, to try to determine if the government could possibly have intended at that point to even attempt to make a claim for the LLC property. Through its inaction, the government effectively induced the LLC's substantial investment in the property as to which it has an equitable lien specific to the very existence of the property as its stands today.

4. **The Court has the authority to impose an equitable remedy that accounts for the remediation and restoration of the property by Claimants prior to the government's decision to ultimately seek forfeiture, a decision that, insofar as the record shows at this point, could have been prompted by the restoration itself that created equity.**

Claimants do not lack standing to assert an equitable claim *in the nature of* a construction or mechanics lien as alleged at length in the petition. *See* DE:444:3–4. First, the government does not dispute the facts alleged in the petition or suggest anything to minimize what Claimants did to create equity in the property. The government ignores that, as the court held in *United States v. Silva*, 15-20727-Cr-Gayles, 2018 WL 5847348 (S.D. Fla. Sept. 6, 2018), equitable apportionment may be appropriate. 2018 WL 5847348, at *1 ("[T]he Court finds that Judge Otazo-Reyes's suggested equitable distribution of the net proceeds from the sale of the real properties at issue – with two-thirds of the proceeds going to Claimants and

one third going to the Government – effectuates the remedial purposes of section 853."); *see United States v. Silva*, 2018 WL 5849738, at *8 (S.D. Fla. Sept. 6, 2018) (report and recommendation; "[T]his result effectuates the remedial purposes of the third party interests forfeiture provisions. *See* 21 U.S.C. § 853(o).").

It would be unjust for the government, having delayed unreasonably for five years to seek forfeiture of the property and having confused the status of the title by filing an unauthorized lis pendens notice, to seek to deprive the Claimants of the value that they created turning the negative-equity property into a viable residence before the government ever sought to forfeit it.

Respectfully submitted,

s/ Richard C. Klugh  
Richard C. Klugh, Esq.  
Fla. Bar No. 305294  
Counsel for Claimants  
40 N.W. 3rd Street, PH1  
Miami, Florida 33128  
Tel. (305) 536-1191  
Fax (305) 536-2170  
E-Mail rklugh@klughlaw.com