UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  17-cr-20631-BECERRA/REINHART

UNITED STATES OF AMERICA,

                    Plaintiff,

vs.

OSMANY RODRIGUEZ DIAZ,

                    Defendant.

_____/

## **REPORT AND RECOMMENDATION ON AMENDED PETITION FOR THIRD-PARTY INTEREST IN FORFEITED PROPERTY [ECF Nos. 419, 444]**

      The Government wants to forfeit the real property at 21105 SW 213th Avenue Road, Miami, Florida ("the Property") as a substitute asset to satisfy a money judgment from a healthcare fraud prosecution.[1] Property Investment 7722 LLC ("the LLC"), and Brendan Falcon (collectively "Petitioners") say the Property should go to them, not the Government. ECF No. 444 (Amended Petition for Third-Party Interest in Forfeited Property).

      The matter is fully ripe. After initial and supplemental briefing, I held an evidentiary hearing and oral argument on December 4, 2025. For the following reasons, the Petitioners have not met their burden of proving that the Government

---

[1] According to the Miami-Dade property records, the Property is a four-bedroom single family residence abutting the Everglades, approximately 35 miles southwest of Miami International Airport and the City of Hialeah.

is not entitled to forfeiture of the Property. I recommend that the District Court deny the Amended Petition and enter a Final Order of Forfeiture giving the Government clear title to the Property. 21 U.S.C. §853(n)(7).

## I.    LEGAL PRINCIPLES

### A. *Forfeiture*

Criminal forfeiture is intended to punish a convicted defendant by (1) depriving him of the proceeds of his crime and (2) taking away any property used to commit the crime. *United States v. Waked Hatum,* 969 F.3d 1156, 1162 (11th Cir. 2020).

When a person is convicted of a federal health care offense, the Court must forfeit the defendant's right title and interest in any property "that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense" ("dirty property"). 18 U.S.C. §982(a)(7). Section 982 incorporates the procedures from 21 U.S.C. §853. *See* 18 U.S.C. §982(b)(1).; *Waked Hatum,* 969 F.3d at 1162. The criminal conviction extinguishes the defendant's interest in the dirty property and formally transfers that interest to the Government. *United States v. Amodeo,* 916 F.3d 967, 972 (11th Cir. 2019) (*citing United States v. Gross*, 213 F.3d 599, 600 (11th Cir. 2000)). The transfer of the defendant's interest is memorialized through a Preliminary Order of Forfeiture. Fed. R. Crim. P. 32.2(b).

2

At the time the defendant is convicted, a third party also may have a legal interest in the dirty property. Examples include a mortgage lender, an auto financier, or someone else to whom the property had been pledged as collateral. The Preliminary Order of Forfeiture triggers a process (known as "ancillary proceedings") for a third-party to assert an interest in the dirty property. *United States v. Davenport,* 668 F.3d 1316, 1320 (11th Cir. 2012). Ancillary proceedings are civil in nature. *Id.* at 1323.

First, the third-party must file a timely verified petition describing its interest in the asset and how it acquired that interest. 21 U.S.C. §853(n)(2), (3). Second, after a third-party petition is filed, the Court must hold an evidentiary hearing. 21 U.S.C. §853(n)(5). The third-party can establish an interest in the asset if they can prove by a preponderance of the evidence (1) their interest was superior to the defendant's interest at the time of the "act giving rise to forfeiture" of the dirty property (i.e., the crime), or (2) after the "act giving rise to forfeiture" of the dirty property, they were a bona fide purchaser for value and without reason to believe that the asset was "subject to forfeiture." 21 U.S.C. §853(n)(6)(A) and (B); *see United States v. Gilbert*, 244 F.3d 888, 911 (11th Cir. 2001). In determining whether the petitioner has satisfied this burden, the Court must consider the evidence and

witnesses presented by both parties at the evidentiary hearing, as well as "the relevant portions of the record of the criminal case which resulted in the order of forfeiture." 21 U.S.C. §853(n)(5). Third, the Court enters an order defining the respective interests in the asset. If the petitioner has met its burden, the Court amends the Preliminary Order of Forfeiture to reflect the petitioner's interest in the property. 21 U.S.C. §853(n)(6). If no petitioner establishes a valid interest in the dirty property, the Court enters a Final Order of Forfeiture, which gives the United States "clear title to the property that is the subject of the order of forfeiture." 21 U.S.C. §853(n)(7).

Sometimes, after the conviction, the government (1) cannot locate the dirty property, or (2) the dirty property has been transferred or sold to a third party, or (3) it has been placed outside the court's jurisdiction, or (4) it has substantially diminished in value, or (5) it has been commingled with other property and cannot be divided without difficulty. 21 U.S.C. §853(p)(1) ("the substitute asset triggers"). In that situation, the Government can take other "clean" assets of the defendant as substitutes for the dirty assets. Clean assets can be things the defendant got from non-criminal sources, such as inheritance, post-conviction wages, and gifts. But, the

4

Government can take these substitute assets only after a Court finds that one of the substitute asset triggers has occurred.

If the Government locates a substitute asset, it must get a new Preliminary Order of Forfeiture. 21 U.S.C. §853(p)(2). The same ancillary proceeding process applies as with a dirty property: (1) a third-party must file a timely verified petition, (2) the Court must hear evidence, and (3) the Court enters an Order establishing the ownership interests in the asset. Here, too, third parties can defeat the Government's claim to a clean asset by filing a timely claim, 21 U.S.C. §853(n)(1), then proving they have a superior interest that predates the act giving rise to forfeiture or that after the act giving rise to forfeiture they were a bona fide purchaser for value without knowledge.

To summarize, the Court must address the following questions when ruling on a third-party petition:

1.   What right, title, or interest, if any, does the petitioner have in the property to be forfeited?

2.   When did the petitioner acquire that right, title, or interest?

3.   When was the "act giving rise to forfeiture" of the substitute asset?

4(a).  If the interest was acquired before the act giving rise to forfeiture, is

5

that interest superior to the defendant's interest?

4(b).   If the interest was acquired after the act giving rise to forfeiture, was the petitioner a bona fide purchaser without knowledge?

## B. *Standing*

Ancillary proceedings implicate both constitutional and statutory standing. *See, e.g.*, *United States v. Timley*, 507 F.3d 1125, 1129 (8th Cir. 2007) ("Standing in forfeiture cases has both constitutional and statutory aspects."). A third-party petitioner bears the burden to demonstrate by a preponderance of the evidence both Article III standing and statutory standing. *Via Mat Int'l S. Am. Ltd. v. United States,* 446 F.3d 1258, 1263 (11th Cir. 2006).

Constitutional standing derives from Article III of the Constitution. It "is the threshold question in every federal case, determining the power of the court to entertain the suit." *United States v. 960,000 Dollars in U.S. Currency,* 307 F. App'x 251, 255 (11th Cir. 2006) (*quoting Warth v. Seldin*, 422 U.S. 490, 499 (1975)); *see also United States v. Henry*, 621 F. App'x 968, 971–72 (11th Cir. 2015) (*quoting United States v. Weiss*, 467 F.3d 1300, 1307–08 (11th Cir. 2006)) ("If a claimant lacks Article III standing to challenge a forfeiture, this Court does not have jurisdiction to consider the claim.").

6

To establish Article III standing, the petitioner must establish that it has suffered an "injury in fact" that is concrete and particularized, and actual or imminent, not conjectural or hypothetical, that the injury is "fairly traceable" to the actions of the Government, and that the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992). "In a forfeiture action, the determination of whether a claimant has Article III standing turns upon whether the claimant has a sufficient interest in the property to create a 'case or controversy'; sufficient interest in the property satisfies the 'injury' requirement for purposes of standing." *United States v. All Funds in the Acct. of Prop. Futures, Inc.*, 820 F. Supp. 2d 1305, 1325 (S.D. Fla. 2011). "A claimant must have a 'facially colorable interest' in the property at issue, and courts have repeatedly noted that this standard is not difficult to satisfy." *United States v. Assets Described in Attachment A to the Verified Complaint Forfeiture In Rem*, 799 F. Supp. 2d 1319, 1322 (M.D. Fla. 2011) (collecting cases). A party can have Article III standing to challenge a forfeiture even if they do not own the property being forfeited. *Via Mat Int'l,* 446 F.3d at 1262– 63. A lesser property interest, such as a possessory interest, is enough to show a constitutionally-sufficient injury. *Id.* But, "'straw owners' and persons who have unknowingly been in possession of property that is seized do not necessarily suffer an

7

injury that is sufficient to demonstrate standing." *Id.* at 1363 n.5 (citing *United States v. Cambio Exacto,* 166 F.3d 522 (2d Cir. 1999).

A party can challenge Article III standing either facially or factually. "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion. Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003) (citations omitted). Where Article III standing does not exist, the matter is dismissed without prejudice. *Dupree v. Owens,* 92 F.4th 999, 1007 (11th Cir. 2024).

"Statutory standing differs from Article III standing in that it doesn't ask whether there's a redressable injury, but whether a party 'has a cause of action under the statute.'" *United States v. Sanchez,* No. 22-11923, 2023 WL 5844958, at *4 (11th Cir. Sept. 11, 2023) (citing *Lexmark Int'l v. Static Control Components, Inc.,* 572 U.S. 118, 128 & 128 n.4 (2014)). For an ancillary proceeding, statutory standing exists if the claimant satisfies 21 U.S.C. § 853(n)(2), that is, they are a person "other than the defendant" asserting a "legal interest in the property which has been ordered forfeited

8

to the United States." *See United States v. Parenteau*, 647 F. App'x 593, 598 (6th Cir. 2016) (upholding dismissal of third-party petition on standing because claimant was not a person "other than the defendant" and therefore lacked statutory standing); *see also Timley*, 507 F.3d at 1129–30 (claimant must show that he has a "legal interest" under 21 U.S.C. § 853(n)(2) to have statutory standing); *United States v. Tyrrell,* No. 8:02-CR-111-T-17MAP, 2012 WL 5989344 (M.D. Fla. Nov. 29, 2012) (only third-parties who have a legal interest in the property which has been ordered forfeited have statutory standing to assert claims in criminal forfeiture proceedings). A lack of statutory standing is equivalent to a failure to state a claim upon which relief can be granted; the remedy is a dismissal on the merits, "generally made with prejudice." *Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1313 (11th Cir. 2024) (concurring opinion joined by entire panel).

In determining whether the required legal interest exists, courts look past who possesses "bare legal title" to property; the crucial issue is who exercises dominion and control. *See United States v. One 1990 Beechcraft, 1900 C Twin Engine Turbo–Prop Aircraft,* 619 F.3d 1275, 1278 (11th Cir. 2010) (claimant must be more than nominee who exercises dominion and control. The Court looks to state law to determine the nature of a petitioner's interest in the property, but federal law

determines whether the petitioner's interest in the forfeited property satisfies the requirements of Section 853(n)(6). *See United States v. Shefton,* 548 F.3d 1360, 1364 (11th Cir. 2008) (*citing United States v. Fleet,* 498 F.3d 1225, 1231 (11th Cir. 2007)).

### C. Construction and mechanics lien

State law determines whether a lien interest exists and whether than interest is superior to a defendant's interest in the asset to be forfeited. *United States v. Shefton,* 548 F.3d 1360 (11th Cir. 2008); *United States v. Ramunno,* 599 F.3d 1269 (11th Cir. 2010 (state law issue whether constructive trust exists; federal law question whether it is a superior interest to defendant under (n)(6)(A); *United States v. Kennedy,* 201 F.3d 1324 (11th Cir. 2000).

Chapter 713 of the Florida Statutes, entitled "Construction Lien Law," establishes a statutory framework for establishment and enforcement of construction liens by subcontractors, laborers and materialmen. Fla. Stat. §713.[2] "[T]he fundamental purpose of the Construction Lien Law is to protect those who have provided labor and materials for the improvement of real property." *WMS Constr., Inc. v. Palm Springs Mile Assoc., Ltd.,* 762 So.2d 973, 974–75 (Fla. 3d DCA 2000).

---

[2] The Verified Petition says the equitable lien arose from "*see generally* Fla. Stat. §713.01." ECF No. 444 ¶3.

10

"The mechanics lien law was enacted to protect the interests of subcontractors and materialmen who remain unpaid while the owner pays the contractor directly." *Hardrives Co. v. Tri–County Concrete Prods., Inc.,* 489 So.2d 1211, 1212 (Fla. 4th DCA 1986). The burden is on a party claiming a construction lien to prove that it furnished labor or material for improvement of property. Fla. Stat. §713.08(5).

Chapter 713 recognizes four kinds of liens:

(1) Persons providing professional services "as architect, landscape architect, interior designer, engineer, or surveyor and mapper." Fla. Stat. §713.03;

(2) Persons performing service or furnishing materials for subdivision improvements. Fla. Stat. §713.04;

(3) Materialman or laborer in privity with an owner, or a contractor, who perform labor or services or furnish materials constituting an improvement to the owner's property under a contract with the owner. Fla. Stat. §713.05;

(4) Materialman or laborer not in privity with an owner, or a subcontractor or sub-subcontractor, who perform labor or services or furnish materials constituting an improvement to the owner's property under a contract with the owner. Fla. Stat. §713.06.

11

Fla. Stat. §713.02. These liens are not enforceable unless recorded. Fla. Stat. §713.08(1)(a)–(c). And, "no lien shall exist in favor of any contractor, subcontractor, or sub-subcontractor who is unlicensed." Fla. Stat. §713.02(7). Chapter 713 defines the relevant terms as follows:

> "Contractor" means a person other than a materialman or laborer who enters into a contract with the owner of real property for improving it or who takes over from a contractor as so defined the entire remaining work under such contract.
>
> . . .
>
> "Laborer" means any person other than an architect, landscape architect, engineer, surveyor and mapper, and the like who, under properly authorized contract, personally performs on the site of the improvement labor or services for improving real property and does not furnish materials or labor service of others.
>
> . . .
>
> "Materialman" means any person who furnishes materials under contract to the owner, contractor, subcontractor, or sub-subcontractor on the site of the improvement or for direct delivery to the site of the improvement or, for specially fabricated materials, off the site of the improvement for the particular improvement, and who performs no labor in the installation thereof.
>
> . . .
>
> "Subcontractor" means a person other than a materialman or laborer who enters into a contract with a contractor for the performance of any

part of such contractor's contract, including the removal of solid waste from the real property.

. . .

"Sub-subcontractor" means a person other than a materialman or laborer who enters into a contract with a subcontractor for the performance of any part of such subcontractor's contract, including the removal of solid waste from the real property.

Fla. Stat. §§713.01(8), (17), (21), (29), (30).

## II.    PROCEDURAL HISTORY

Between 2014 and March 2017, Defendant, Osmany Rodriguez Diaz participated in a conspiracy to commit healthcare fraud and wire fraud. ECF Nos. 119–21. He was indicted in September 2017, with a Superseding Indictment in October 2017. The Superseding Indictment contained a forfeiture count but did not identify the Property as a dirty asset. ECF No. 79. In February 2018, Mr. Diaz pled guilty. As part of the guilty plea, he agreed to the entry of a forfeiture money judgment for $1,728,508 and the forfeiture of dirty and substitute property. ECF No. 119 ¶8. On April 17, 2018, this Court entered a Preliminary Order of Forfeiture that imposed the forfeiture money judgment and forfeited various dirty assets. ECF No. 171.

Even after forfeiting the dirty assets, a balance remains outstanding on the money judgment. On August 5, 2022, the United States filed its Motion for Second Preliminary Order of Forfeiture. ECF No. 415. The motion sought to forfeit the Property as a substitute asset to satisfy, in part, the $1,728,508.00 forfeiture money judgment. The motion was supported by a declaration that one or more of the substitute asset triggers had occurred. ECF No. 415-1. On August 8, 2022, the Court entered a Second Preliminary Order of Forfeiture, which forfeited the Property to the United States as substitute property. ECF No. 416. The Preliminary Order of Forfeiture set a deadline for third parties to file claims to the Property. *Id.*

The LLC and Mr. Falcon, individually, filed a Petition for Third-Party Interest in Forfeited Property. ECF No. 419. Both Petitioners asserted a constructive trust arising from their improvements and maintenance of the Property. The LLC asserted that it owned the Property. Mr. Falcon asserted he was "a real party in interest with standing to assert a claim in the [P]roperty." *Id.* Magistrate Judge Goodman recommended dismissing the Petition without prejudice and with leave to amend. He found that Mr. Falcon lacked Article III standing to bring a claim in his capacity as member of the LLC but left open the possibility that Mr. Falcon might be able to assert standing in his individual capacity. ECF No. 438 at 16–17. Judge Scola adopted

14

these portions of the Report and Recommendation. ECF No. 443 at 7. ECF No. 443 at 7–8.

The LLC and Mr. Falcon then filed an Amended Petition for Third-Party Interest in the Property. ECF No 444. The LLC says it owns the Property. It argues that (1) it had a superior interest to Mr. Diaz when the property became forfeitable, under 21 U.S.C. §853(n)(6)(A), or (2) after the Property became forfeitable, it was a bona fide purchaser for value without knowledge that the Property was forfeitable, under 21 U.S.C. §853(n)(6(B). Separately, both the LLC and Mr. Falcon assert an equitable interest in the form of a "construction or mechanics' lien" on the Property because they claim they maintained, improved, and made significant contributions to the Property since 2022. The Amended Petition did not renew Mr. Falcon's ownership claim.

### III.   UNDISPUTED FACTS

The parties submitted an agreed stipulation of undisputed facts. ECF No. 491. At the December 4 hearing, neither party offered additional evidence. I took judicial notice of the facts contained in Petitioners' verified petitions. ECF Nos. 419, 444.

15

The following facts are not in dispute.[3]

On or about May 10, 2017, Mr. Diaz incorporated the LLC. The LLC's Article of Organization identified Mr. Diaz as the LLC's Member and Registered Agent; they also listed the Property as the LLC's "principal office." ECF No. 454-1.

On or about May 25, 2017, the LLC acquired the Property by warranty deed, using funds that did not derive from Diaz's criminal conduct. ECF No. 454-2. Simultaneously, the LLC entered into a Mortgage Deed and an Interest Only Promissory Note with a principal amount of $500,000. Under the note, the LLC was to pay monthly interest of $4,166.67 beginning June 1, 2017, with a balloon payment of the balance due on June 1, 2022. Mr. Diaz signed the note and mortgage in his capacity as Member of the LLC. ECF No. 454-3 at 6,7.

As of March 12, 2023, Mr. Falcon had no "knowledge of the circumstances under which the property was acquired by" the LLC, nor was he "cognizant of the

---

[3] Unless otherwise noted, these facts are taken from ECF No. 454 and its exhibits and from ECF No. 491 ¶¶ 1–24, 26–30, 32–48.

price paid by the LLC for the property or the specific circumstances of that acquisition." ECF No. 454-4 ¶3, ECF No. 454-5 ¶5.[4]

After the April 17, 2018, Preliminary Order of Forfeiture, the United States recorded and later renewed a *lis pendens* on the Property. The original *lis pendens* was recorded on or about September 13, 2018, and the renewed *lis pendens* was on or about December 15, 2021. ECF Nos. 454-6, 454-7.

Mr. Diaz was released from prison on or about September 3, 2021. Approximately four months later, on or about January 6, 2022, he reinstated the LLC (which had become inactive) with the Florida Division of Corporations. The reinstatement paperwork listed Mr. Diaz as the Registered Agent and Member of the LLC. ECF No. 454-8. Between the LLC's incorporation in 2017 and the January 2022 reinstatement, no other document had been filed in the Florida Division of Corporations relating to the LLC.

Mr. Falcon met Mr. Diaz on March 7, 2022, after seeing the Property listed on Zillow for pre-foreclosure. ECF No. 454-13 at 13. Mr. Falcon drove to the Property,

---

[4] March 12, 2023, was the date when Mr. Falcon and the LLC served sworn responses to the Government's interrogatories.

which "was filled with trash and junk cars/trucks." Mr. Diaz told Mr. Falcon there were squatters living in the house, that "he was losing the property [,] and all he wanted was for his debts to be paid and for [Mr. Falcon] to pay for him to get rented." *Id.* at 14.

On or about March 17, 2022, the LLC and Mr. Falcon entered into an "As Is" Residential Contract for Sale and Purchase for $825,000. ECF No. 454-12. Before contracting, Mr. Falcon "had no prior knowledge of or relationship to Osmany Rodriguez Diaz."

Mr. Falcon's "first step . . . was to have a title and lien search done and it came back clear." Almost a month later the title company informed Mr. Falcon the Government had placed a *lis pendens* on the Property. By that point, Mr. Falcon had spent approximately $60,000 to improve the Property so it could pass inspection and qualify for financing. He also had paid approximately $15,000 to rent Mr. Diaz a place to live.

Ultimately Mr. Falcon was not able to finance the Property. So, he "spoke with Mr. Diaz and, with knowledge of the *lis pendens,* took over ownership of the LLC. On April 5, 2022, Mr. Falcon became the sole owner of the LLC. The transaction was based on a verbal agreement between Mr. Falcon and Mr. Diaz. No funds changed

hands between Mr. Falcon and Mr. Diaz. The "terms for acquisition of the LLC included finding and paying the lease for a new residence for [Mr. Diaz] for a period of one year."

To document the transaction, on or about April 5, 2022, the LLC filed a Statement of Change of Registered Office or Registered Agent or Both for Limited Liability Company was filed with the Florida Division of Corporations. The document was signed by Mr. Diaz as Member. It changed the LLC's registered agent from Mr. Diaz to Mr. Falcon. Mr. Falcon signed the document to accept appointment as Registered Agent. In the Statement of Change, the "Registered Office Address" remained the Property's address. ECF No. 454-14.

As of April 5, 2022, the LLC owned no assets other than "the property, and any appurtenant rights." As of April 5, 2022, the LLC has not maintained a corporate office or address other than the Property. As of April 5, 2022, the LLC's only business in Florida was the ownership of the Property.

Before April 5, 2022, the LLC was solely owned and controlled by Mr. Diaz, and the LLC had no members, managers, or employees besides Mr. Diaz. As of March 12, 2023, Mr. Falcon had "no personal knowledge of the company history" other than "the record history indicated on the Sunbiz website of the Florida Secretary of State."

As of that date, Mr. Falcon also had no knowledge of the history of the LLC's assets and management. ECF No. 454 ¶14 (citing ECF No. 454-5 ¶¶13, 15, 17, 19, 21, 22).

On or about April 27, 2022, the LLC filed a Florida Limited Liability Company Amended Annual Report. ECF No. 454-15. The Amended Annual Report was signed by Mr. Diaz as Registered Agent, even though it listed Mr. Falcon as the Current Registered Agent. It listed Mr. Falcon as the LLC's Authorized Member and Manager. It listed the LLC's "Current Principal Place of Business" and "Current Mailing Address" as the address of the Property.

On or about September 29, 2023, the LLC filed a Florida Limited Liability Company Reinstatement. ECF No. 454-16. It was signed by Mr. Diaz as Registered Agent and listed Mr. Falcon as Manager and Authorized Member. The LLC's "Current Principal Place of Business" and "Current Mailing Address" remained the Property's address.

On October 12, 2021, the mortgagee filed a foreclosure action against the LLC in Florida state court. ECF No. 454-17.[5] The mortgagee alleged that the LLC had stopped making monthly interest payments after April 2020 and still owed the entire

---

[5] The mortgagee has not filed a third-party claim to the Property in this federal case.

principal balance of $500,000, plus other costs. As of December 14, 2023, neither the LLC nor Mr. Falcon had made any additional payments on any mortgage or lien encumbering the Property.[6] The LLC and Falcon say:

> Title records reflect a mortgage on the property, but I am not personally liable on such mortgage, and I am unaware of the amount owed, whether it has actually been satisfied or waived, or whether it is otherwise subject to a claim for enforcement. I did not communicate with the mortgagee and do not concede that any such mortgage was or remains valid.

ECF Nos. 454-4 ¶11, 454-5 ¶13. As of May 13, 2024, the Property was subject to $58,809.25 in unpaid property taxes. Neither Falcon nor the LLC have made any payments towards real estate taxes on the Property. On July 26, 2022, the Miami-Dade County Stormwater Utility Section recorded a Notice of Lien for Stormwater Utility Maintenance for $130.14, plus interest. On August 28, 2023, the Miami-Dade County Stormwater Utility Section recorded another Notice of Lien for Stormwater Utility Maintenance for $84.09, plus interest.

As of November 2, 2022, Mr. Falcon and his family were residing at the Property. ECF No. 419 at 1.

---

[6] December 14, 2023, is the date of Petitioners' responses to the Government's Requests for Admission.

## IV.   DISCUSSION

The Government brings a factual challenge to Petitioners' Article III standing. So, I first address the factual claims, then turn to the standing question.

### A. *The Lien Claim*

Both Petitioners say they have an interest in the Property in the form of an equitable construction or mechanics lien on the Property. Petitioners say, "through their expenditure and labor," they have "rehabilitated the residence so as to create equity in the home." ECF No.444 at 3. Petitioners concede that they have not perfected nor recorded a lien on the Property.

The facts in the record do not prove that Petitioners have accrued a lien under Section 713. This case does not involve a subdivision improvement, nor is there evidence that either Petitioner provided professional services as an architect, landscape architect, interior designer, engineer, or surveyor and mapper. Neither Mr. Falcon nor the LLC qualify as a contractor, subcontractor, sub-subcontractor, laborer, materialman, or professional lienor. Nor is there any evidence that Mr. Falcon, either in his individual capacity, or on behalf of the LLC, contracted to improve the Property. Fla. Stat. 713.001(8). And, even if he had, there is no evidence that he is or ever was a licensed contractor.

It was the Petitioners' burden to prove they were entitled to a construction or mechanics' lien interest in the Property, and they have failed to meet that burden.

## B. The Ownership Claim

The LLC has not met its burden of showing by a preponderance of the evidence that it exercised sufficient dominion and control to create a legal right, title, or interest in the Property.

The LLC asserts claims under both Sections 853(n)(6)(A) and (n)(6)(B). As to its (n)(6)(A) claim, it says that at the time of the act giving rise to forfeiture, it had a superior interest to Mr. Diaz in the Property because it held legal title to the Property. ECF No. 444 ¶2.[7] Its (n)(6)(B) claim is that (1) any interest Mr. Diaz had in the Property was extinguished by April 5, 2022, and was acquired by LLC as a bona fide

---

[7]There is a Circuit split on what is the "act giving rise to forfeiture" of a substitute asset. The Second Circuit holds that the underlying crime is the relevant act. *United States v. Daugerdas,* 892 F.3d 545, 555 (2d Cir. 2018). The Government adopts this position. ECF Nos. 455 at 20; 489 at 21–22. The Sixth and Tenth Circuits hold that the relevant act is when a substitute asset triggering event occurs. *United States v. Jarvis,* 499 F.3d 1196, 1204 (10th Cir. 2007); *United States v. Erpenbeck*, 682 F.3d 472, 478 (6th Cir. 2012). Petitioners adopt this position. *See* ECF No. 444 at 2, n.2. The Eleventh Circuit has not decided this question. I need not resolve it here because under either interpretation, Petitioners lack any "right, title, or interest" in the Property.

purchaser for value, "including financial transfers for the benefit of the previous LLC owner prior to the date of the substitute asset forfeiture order" and (2) the LLC was reasonably without cause to believe that the property was subject to forfeiture when it acquired its interest in the Property. *Id.*

The Government responds that the LLC has not exercised sufficient dominion and control over the Property to create a legal interest beyond bare legal title. ECF No. 455 at 14. In support, the Government says the LLC disregarded corporate formalities, became dormant, and conducted no other business. ECF No. 455 at 2, 17. The Government clarified at oral argument that it is not pursuing an alter ego theory, trying to pierce the corporate veil, or otherwise arguing that the LLC's separate corporate form should be disregarded.

The LLC says it is not a 'nominee' for Mr. Diaz. It points to the April 5, 2022, Statement of Change Registered Agent where the LLC's registered agent changed from Mr. Diaz to Mr. Falcon. [8] ECF Nos. 444-1; 490 at 3. At oral argument, the LLC

---

[8]The parties debate whether the LLC was a "strawman," a "nominee." These terms do not advance the Court's analysis. They are not defined. And, the cases the Government cites are not persuasive. They involve a defendant's affirmative efforts to use third parties to conceal ownership of an asset. That situation does not exist, here. There is no evidence that Mr. Diaz placed the Property in the LLC's name to

also correctly noted that failing to observe corporate formalities alone, does not divest

it of any existing right, title, or interest in acquired property. *In re Miner*, 185 B.R.

362, 365 (N.D. Fla. 1995), *aff'd sub nom. Miner v. Bay Bank & Tr. Co.,* 83 F.3d 436

(11th Cir. 1996); *see also In re Paul C. Larsen*, P.A., 610 B.R. 684 (Bankr. M.D. Fla.

2019), *aff'd*, 626 B.R. 446 (M.D. Fla. 2021) (even if corporation does not observe

corporate formalities, this alone is not enough to pierce the corporate veil under

Florida law).

It is not disputed that clean funds were used to buy the Property in 2017, and

that the LLC has held legal title to the Property since that time. But, holding legal

title is not enough to bring a third-party claim in a criminal forfeiture. *See, e.g.*,

*United States v. Carrell*, 252 F.3d 1193, 1204 (11th Cir. 2001)); *Via Mat Int'l*, 446 F.3d

at 1262 n.5.

The LLC says the evidence of dominion and control is that Mr. Falcon lives on

the Property with this family and that significant upgrades and maintenance have

---

conceal that he was connected to the Property. His name appears on the note and.
Mortgage and on the corporate filings with the State of Florida. In any event, no
matter how the LLC is characterized, the question to be resolved is whether the LLC
exercised sufficient dominion and control to create a legally-cognizable interest in the
Property.

been made to the Property since Mr. Falcon acquired the LLC member interest in April 2022. These facts are not dispositive because the question before me is not whether Mr. Falcon exercised dominion and control over the Property in his individual capacity but whether these acts of dominion and control can be imputed to the LLC. Said another way, the relevant issue is whether the LLC has shown by a preponderance of the evidence that Mr. Falcon took these steps in his capacity as the human embodiment of the LLC. The answer is no.

Acts that would evince the LLC exercising dominion and control over the Property could include (but are not limited to): (1) contracts for improvements or maintenance in the LLC's name, (2) paying for improvements (or debts, such as the mortgage or taxes) from a bank account in the LLC's name, (3) maintaining corporate books and records documenting the expenditures on the Property as loans or member contributions from Mr. Falcon, and (4) a written agreement between Mr. Falcon (as tenant) and the LLC (as landlord). The LLC has not offered these or other evidence or facts showing that whatever dominion and control Mr. Falcon exercised was on behalf of the LLC. All it offers is that Mr. Falcon lived at the Property with his family and paid to maintain and improve the Property.

26

At best, the record evidence equally shows Mr. Falcon exercising dominion and control for himself and him exercising it for the LLC. But, even assuming this best case for the LLC, tie goes to the Government. It is the LLC's burden to prove by a preponderance of the evidence that it, not Mr. Falcon, exercised dominion and control. On the evidentiary record, I cannot say that it has met that burden. The LLC therefore lacks a legal right, title, or interest in the Property.

The LLC points to *United States v. Silva* in support of its position that a third-party petitioner holding title to a property is enough to establish standing. *United States v. Silva*, No. 15-cr-20727, 2018 WL 5849738 (S.D. Fla. Sept. 6, 2018), *report and recommendation adopted*, No. 15-20727-CR, 2018 WL 5847348 (S.D. Fla. Nov. 8, 2018). First, *Silvia* is not binding authority on this Court. *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1258 n.10 (11th Cir. 2001). Second, *Silva* is distinguishable. In *Silva*, the burden before the Court was the Government's under an alter ego theory and there, the Court found that the Government did not met Florida's "strict test for piercing [the corporate entity's] veil." *Silva* 2018 WL 5849738, at *8.

In this case, the Government is not trying to pierce the LLC's corporate veil. Instead, it says, the LLC has not exercised dominion or control over the Property and

27

therefore lacks standing to bring a third-party claim. And, the burden on that issue is not on the Government— it is on the LLC. The LLC has failed to meet that burden.

## C. Standing

Where, as here, there is a factual challenge to subject matter jurisdiction, the same analysis may simultaneously resolve both constitutional and statutory standing issues. Petitioners have not met their burden of proving that they have a legal interest in the Property, either as lienholders or as an owner. So, they lack Article III standing because they will not suffer an injury-in-fact if the Property is forfeited to the Government. And, because Petitioners have no legal interest in the Property, they also cannot state a claim under Section 853(n)(6). That said, a Court that lacks subject matter jurisdiction cannot adjudicate the merits of a claim, so the Petitioners' claims should be dismissed without prejudice.[9]

---

[9] As a practical matter, the dismissal is with prejudice because the LLC cannot bring another action to claim an interest in the Property. First, the time to file any ancillary claims has expired. 21 U.S.C. §853(n)(2). Second, Section 853(n) ancillary proceedings are the sole mechanism to challenge a federal criminal forfeiture. 21 U.S.C. §853(k). Third, once the Final Order of Forfeiture is entered, the Government obtains clear title to the Property. 21 U.S.C. §853(n)(7).

### D. Leave to Amend

The Amended Petition did not assert that Mr. Falcon had acquired a right, title, or interest in the Property aside from an equitable lien. But, in a footnote, Mr. Falcon says that if the LLC loses its ownership claim, he wants leave to file another claim saying that he owns the Property:

> To the extent that the government asserts as a defense that the LLC should be treated as a disregarded entity, such as under IRS regulations, Claimant Falcon notes that he would in such event request leave to re-assert his dismissed claim of ownership of the property. Thus, to the extent the government contests the standing of the LLC entity, Claimant Falcon would seek to amend the petition to assert his rights as a real person in interest with valid legal claims to the residential property.

ECF No. 444 at 1, n.1.

This request should be denied. A third party must file their verified claim within thirty days of "the final publication of notice or his receipt of notice . . . whichever is earlier." 21 U.S.C. §853(n)(2). A person who files an untimely petition lacks standing. *United States v. Masilotti,* 510 F. App'x 809, 810 (11th Cir. 2013); *see also Sanchez,* 2023 WL 5844958, at *4 (30-day period for filing third-party petitions is mandatory) (*citing United States v. Davenport,* 668 F.3d 1316, 1323 (11th Cir. 2012)).

29

The Eleventh Circuit's decision in *Sanchez* is instructive. There, a third party who otherwise had Article III standing did not sign the verified petition, as required by Section 853(n)(3) — her lawyer signed it. After the statutory claims deadline had expired, she sought leave to file an amended petition that her added her signature. Chief Judge Altonaga denied leave to amend and the Eleventh Circuit affirmed. It said, "given the language of the statute and our case law, we cannot say that the district court abused its discretion when it enforced this congressionally prescribed, 'mandatory' thirty-day window and denied leave to amend." 2023 WL 5844958, at *4.

Here, even if the Court had discretion to allow an untimely petition, it should decline to exercise that discretion. Mr. Falcon already had one chance to file an amended petition. He chose not to claim that he owned the Property in his individual capacity. Nothing precluded Mr. Falcon from filing a petition, in his individual capacity, taking the position that he, not the LLC, owned the Property. Granted, taking this position would have conflicted with the LLC's ownership claim and been consistent with the Government's position that the LLC never obtained a legal interest in the Property. But, the LLC is a separate legal entity from its member, so Mr. Falcon was not bound by the LLC's litigating position. Just like any other non-defendant, if Mr. Falcon thought he had a good faith ownership claim in his individual

30

capacity or as the real person in interest, he could have asserted it in the ancillary proceedings.

## **REPORT AND RECOMMENDATION**

Accordingly, I RECOMMEND that the District Court deny the Amended Petition for Third-Party Interest in Forfeited Property for lack of Article III standing, dismiss it without prejudice and without leave to amend, and enter a Final Order of Forfeiture in favor of the Government.

31

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Jacqueline Becerra, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 9th day of January 2026.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

32