UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 17-20631-CR-SCOLA

UNITED STATES of AMERICA

v.

OSMANY RODRIGUEZ DIAZ,

PROPERTY INVESTMENT 7722 LLC
and BRANDON FALCON,

    Claimants.
_____/

**THIRD-PARTY PETITIONERS' OBJECTIONS TO
REPORT AND RECOMMENDATION [ECF No. 494]**

    Third-Party Petitioners, Property Investment 7722 LLC and Brandon Falcon ("petitioners"), through undersigned counsel, respectfully object to the Magistrate Judge's Report and Recommendation ("Report") [ECF No. 494], which recommends denying Petitioners' Amended Petition for Third-Party Interest in Forfeited Property [ECF No. 444] on the theory that the record title owner of the property since 2017 (the LLC petitioner) did not exercise dominion and control over the real estate—and thus lacks standing and has no actual ownership interest—even though its sole member resided in, improved, and maintained the house and land.  Because the Report's creation of a new theory of dominion-and-control for single-member LLCs runs contrary to experience and law and would call into question the ownership interests of a vast category of LLC interests, not limited to LLC-owned dwellings in which the LLC members reside in the LLC home, this Court should sustain petitioners' objections, find that the standing defect asserted in the Report does not exist, and find

that the petition of the LLC should be granted.

Alternatively, the Court should sustain petitioners' additional objections to the Report or grant leave to amend in light of the procedural circumstances of the case and a novel dominion-and-control concept used in the Report, which runs directly contrary to the prior Order of Judge Scola that only the actual owner, the LLC, has standing—even in the single-member-resident situation and even though that owner is in possession of the house, a possessory interest that does not diminish any aspect of the legal interest of the LLC itself. For the reasons set forth below, the Court should decline to adopt the Report.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

As the Report explains, the LLC petitioner is the record title owner of the real property located at 21105 SW 213th Avenue Road, Miami, Florida (the "Property"), where the owner of the LLC petitioner (i.e., petitioner Falcon) and his family reside. Report at 21. The Property is untainted by any wrongdoing at all. Thus, this is not a case about the concealment or tracing of criminal proceeds or involvement of the Property in any form of wrongdoing. *See* ECF No. 416 (August 8, 2022 order granting government's request August 8, 2022, under a 21 U.S.C. § 853(p) substitute-asset theory, to forfeit any ownership interest of the criminal defendant and initiating process for filing of ancillary petition by the Property's actual owner).

Nor does the Report find any wrongful conduct in relation to the LLC petitioner's ownership of the Property, from 2017 to the present. *See* Report at 24 n.8 (concluding that the authorities cited by the government "involve a defendant's affirmative efforts

to use third parties to conceal ownership of an asset. That situation *does not exist, here.*") (emphasis added). The government does not—and cannot—contend that the Property itself is tainted by criminal conduct or that the LLC was created as a sham to shield assets, defraud creditors, or for any other improper purpose. Consequently, the government affirmatively waived any "alter ego theory, trying to pierce the corporate veil, or otherwise arguing that the LLC's separate corporate form should be disregarded." Report at 24.

## II. OBJECTIONS

Because the Report correctly concludes that "failing to observe corporate formalities alone, does not divest [the LLC] of any existing right, title, or interest in acquired property," Report at 25, petitioners object to the Report's conclusion that mere formalities—i.e., that the LLC owner did not produce "(1) contracts for improvements or maintenance *in the LLC's name*, (2) paying for improvements (or debts, such as the mortgage or taxes) *from a bank account in the LLC's name*, (3) maintaining *corporate books and records* documenting the expenditures on the Property as loans or member contributions from Mr. Falcon, and (4) a *written* [*tenancy*] *agreement* between Mr. Falcon (as tenant) and the LLC (as landlord), Report at 26—can cause the taking of the LLC's property rights, in violation of Florida law and in the absence of any basis to pierce the corporate veil (indeed in light of the waiver by the government of any grounds to do so).

Contrary to the Report, the undisputed facts set forth in the Report are quite

3

enough to refute any disparagement of the LLC petitioner's ownership interest. *See United States v. Silva*, No. 15-cr-20727, 2018 WL 5849738 (S.D. Fla. Sept. 6, 2018), *report and recommendation adopted*, No. 15-20727-CR, 2018 WL 5847348 (S.D. Fla. Nov. 8, 2018) (ruling that where an LLC entity is not organized for a fraudulent purpose or other misconduct, the government has not met its burden to disregard the legal status of the entity; concluding that the LLC's ownership interest was therefore valid).

When Judge Scola adopted Magistrate Judge Goodman's original report and recommendation in this case, this Court recognized that it was the *government*, and not the petitioners, who had acted in an improper manner in relation to Property formalities, because the government's lis pendens "notices were unauthorized" even though the government for years failed to remove them. ECF No. 443 at 7. Petitioners object that where the government is the only party that has done something the law forbids in relation to the Property, it cannot use mere paperwork formalities—such as the absence of a landlord-tenant agreement between the LLC and its single-member owner—to take property in this manner.

Even more crucially, Judge Scola adopted Magistrate Judge Goodman's reasoning that no matter his personal obligations incurred in relation to the property, the ownership interest accrued to the LLC petitioner, rather than to its single-member owner, petitioner Falcon:

> Under Florida's statutory scheme, a limited liability company (LLC) holds property separate and apart from the property of its members. See Fla. Stat. § 605.0110. (entitled "Limited liability company property").5

4

> Subsection 2 of the statute provides that "Property acquired with limited liability company funds is limited liability company property," and subsection 4 provides that "A member of a limited liability company has no interest in any specific limited liability company property." (emphasis supplied).

ECF No. 438 at 13. Implicit in the Order is that no matter how its members exercise dominion and control over the LLC, as long as they do so lawfully and do nothing to warrant piercing the corporate veil, it is the LLC and not the members who are the owners of real estate titled in the LLC.

The authorities cited in the Report for its dominion-and-control formality theory do not in any way support that theory. Report at 26. To the contrary, the whole point of *United States v. Carrell*, 252 F.3d 1193, 1204 (11th Cir. 2001), was that a person whose title to property existed solely to "disguise" another person who actually had dominion and control over the property was insufficient. But, as the Report acknowledges, there was no disguising the single-member ownership of the LLC by petitioner Falcon (nor even by the prior LLC owner). Report at 24 n8 ("That situation *does not exist*, here.") (emphasis added).

Petitioners object to the Report's use of a novel theory, impossible to anticipate by any LLC owner, that an LLC cannot rely on its single-member owner-manager's dominion and control as a protection of the LLC's interests. The Report's theory for disregarding LLC ownership interests would require a single-member LLC not merely to exist as the ownership entity, but to conduct household functions such as creating paperwork treating its owner's contributions to the maintenance of the dwelling as some sort of loan to the LLC or otherwise engaging in needless file-papering that

5

serves no purpose under Florida law, is not required under any reported appellate or district court case (much less any Eleventh Circuit case), and would make owning an LLC a nightmare—a nightmare not merely for LLCs that own property. Under the Report's theory, a single-member law firm LLC or corporate entity would have to conduct the same useless double papering of the file proposed in the Report—a penalty for corporate dealings never contemplated by federal tax or Florida state authorities and, again, foreign to any case law.

The dominion-and-control notion as used by the Eleventh Circuit in *Carrell* has relevance only where the LLC is *impermissibly* or otherwise *improperly* holding title to property, such as to conceal the actual owner. *See Carrell*, 252 F.3d at 1204 (holding that "'courts look behind the formal title to determine whether the record title owner is a 'strawman' set up to conceal the financial affairs of illegal dealings of someone else'") (quoting *United States v. 900 Rio Vista Blvd.*, 803 F.2d 625, 630 (11th Cir.1986)).

There is not even a hint in the Report that the LLC petitioner's owner was concealing his interest in the property, where he was plainly identified in public records as the sole owner. Nothing he did in terms of expenditures for the property or living there continuously did anything of the sort that divests ownership from the true record owner, the LLC.

In March 2022, Petitioner Brandon Falcon discovered the Property for sale, negotiated an "as-is" purchase contract with the LLC for $825,000, obtained an initially clear title search, and promptly invested approximately $60,000 in repairs to bring the Property up to code and make it financeable, plus $15,000 to relocate Diaz

and establish the LLC's exclusive possession, for a total investment of $75,000. The timeline is critical: March 17, 2022—contract executed after clear title search; March through early April 2022—$60,000 expended on improvements in good-faith reliance on clear title; early April 2022—learned of lis pendens; April 5, 2022—acquired 100% of LLC membership interest with knowledge of lis pendens but only after substantial irreversible expenditures had been made. Falcon acquired the LLC by assuming Diaz's rent obligations for one year and becoming the sole member and registered agent.

This Court should find therefore that the Report misapplies the "dominion and control" test by importing corporate formalities that neither federal nor Florida law imposes on single-member LLCs, thereby ignoring the LLC Act's deliberate flexibility and the basic agency principle that a sole member's acts bind the LLC. This Court should sustain petitioners' objections to the standing and ownership interest findings and conclusions in the Report as contrary to the law and facts of this case, where the LLC owner's actions preserved, rather than disguised, the LLC's ownership interest.

The Eleventh Circuit's "bare legal title" doctrine is aimed at straw owners who conceal criminal assets. See *United States v. One 1990 Beechcraft*, 619 F.3d 1275, 1278-79 (11th Cir. 2010); *United States v. Waked Hatum*, 969 F.3d 1156, 1162 (11th Cir. 2020). There is no evidence of concealment here, and the Government does not argue otherwise.

Florida's Revised LLC Act—by design—permits single-member informality. *See*, *e.g.*, Fla. Stat. § 605.0106 and § 605.0407 (member management without prescribed formalities). Florida courts do not disregard LLC separateness for a mere want of

7

corporate niceties. The Report nevertheless faults the absence of contracts in the LLC's name, a dedicated LLC bank account, formal contribution records, and a written lease between Falcon and the LLC. None of that is required for a single-member entity whose sole actor is the sole member.

The dispositive point is agency. Under Fla. Stat. § 605.04074(1)(a), "each member is an agent of the limited liability company for the purpose of its activities and affairs, and an act of a member…binds the company." *See also* Fla. Stat. § 605.0301(1) (providing that a person has the power to bind the LLC to the extent that person is an agent by virtue of § 605.04074). When there is only one member, that member's acts in managing LLC property are, as a matter of law, the LLC's acts. The Eleventh Circuit looks to state law to determine the nature of a petitioner's interest in property. *See United States v. Shefton*, 548 F.3d 1360, 1364 (11th Cir. 2008) (citing *United States v. Fleet*, 498 F.3d 1225 (11th Cir. 2007)); *FTC v. Olmstead*, 528 F.3d 1310 (11th Cir. 2008) (certifying question), *certified question answered*, *Olmstead v. FTC*, 44 So. 3d 76 (Fla. 2010)(applying state LLC law to determine member's interest). A single-member LLC cannot act except through its sole member, and requiring separate documentation of the member's acts would render meaningless the flexibility the Florida Legislature deliberately built into the LLC Act. Since April 5, 2022, Falcon has been the sole member and manager. His acts, including residing at the Property, investing $60,000 in repairs, paying $15,000 to relocate Diaz, seeking financing, and addressing tax arrearages and stormwater liens, are legally the LLC's acts. The Report's contrary approach draws a false line between "individual" and "corporate" conduct that has no

purchase in the single-member context and that obscures the uncontroverted evidence of continuous possession, maintenance, improvement, and control. The Report's contrary conclusion would effectively write single-member LLCs out of Florida law. If a sole member's continuous possession, substantial improvements, and ongoing management of LLC property do not constitute dominion and control, then no single-member LLC could ever establish standing—a result Florida law neither requires nor permits.

If Falcon's acts bind the LLC under Florida agency principles (which they do), then the LLC exercised dominion and control through its sole member and has standing and ownership. If the government had any basis to pierce the veil under Florida law, it bore the burden under Florida's strict test, a burden it expressly disclaimed pursuing.

### III. ADDITIONAL OBJECTIONS

*Constructive interest in the nature of an equitable lien.*

Petitioners object to the Report's finding that a constructive or equitable lien in ancillary proceedings fails unless it satisfies the requirements for a Florida statutory lien. The Report erroneously collapses equitable liens into statutory mechanic's liens and overlooks Florida Supreme Court authority recognizing equitable liens as an independent remedy to prevent unjust enrichment—precisely the scenario here, where Petitioners conferred $75,000 of value. The Report also disregards the serious due process concerns that accompany substitute-asset forfeitures of clean property, including the Government's attempt to capture petitioners' improvements as an

9

uncompensated windfall.

The Report's treatment of petitioners' equitable-lien claim begins and ends with Fla. Stat. ch. 713. That is error. The Report analyzed only whether petitioners qualified as statutory lienors—contractors, subcontractors, materialmen, or laborers—under Chapter 713's specific categories. [ECF No. 494 at 24]. By limiting its analysis to statutory liens, the Report ignored an entire body of Florida Supreme Court precedent recognizing equitable liens as an independent, extra-statutory remedy available precisely when statutory liens are unavailable. Equitable liens and statutory mechanic's liens are separate and distinct. The former exist to prevent unjust enrichment regardless of statutory compliance; the latter are a creature of statute with specific procedural requirements. Petitioners invoked the former, not the latter. Florida courts have long imposed equitable liens as an extra-statutory remedy when fairness demands it, including where a claimant improves property and the owner would otherwise be unjustly enriched. In *Crane Co. v. Fine*, 221 So. 2d 145, 148 (Fla. 1969), the Florida Supreme Court held that an equitable lien is a right of a special nature over property which may be declared by a court of equity based on general considerations of right and justice to prevent unjust enrichment. Critically, the Court held that the absence of a perfected statutory lien is not fatal to the claim. The Court explained that equitable liens arise either from a written contract or are declared by courts out of general considerations of right and justice, as applied to the relations of the parties and the circumstances of their dealings. This principle was reaffirmed in *Sonneman v. Tuszynski*, 191 So. 18, 21 (Fla. 1939), where the Court imposed an

10

equitable lien against homestead property based on the parties' dealings even without a formal contract, holding that equitable liens may be predicated upon an express contract or may arise or be declared by courts of equity out of the general considerations of right or justice, as applied to the relations of the parties and the circumstances of their dealings.

The Florida court of appeal enforced the lien to prevent unjust enrichment where the claimant had advanced money and services in *Imler Earthmovers, Inc. v. Schatten*, 240 So. 2d 76, 78 (Fla. 1st DCA 1970), holding that equitable liens are appropriate when labor or materials improve land and the mortgage holder or owner would be unjustly enriched by foreclosure without compensating for the improvements. The Court emphasized that the touchstone of equitable lien analysis is whether the defendant would be unjustly enriched by retaining the benefit conferred by the claimant. Florida courts recognize an equitable lien when three elements are satisfied: (1) the claimant conferred a benefit on the defendant's property, (2) the defendant had knowledge of the benefit, and (3) retention of the benefit without payment would be inequitable.

Petitioners satisfy all three elements. First, they conferred a concrete benefit: $60,000 in repairs to bring the Property up to code and make it financeable, plus $15,000 to establish exclusive possession—all documented in sworn interrogatory responses. [ECF Nos. 454 at 5] ("The first step ... was to have a title and lien search done and it came back clear...Almost a month later the title company informed [me] the Government had placed a lis pendens on the Property.") By that point, Mr. Falcon had

11

spent approximately $60,000 to improve the Property. Second, the government has knowledge of this benefit, which was established at the evidentiary hearing and is reflected in the Report itself. Third, the government now seeks to capture that $75,000 value through forfeiture without compensating petitioners—the definition of unjust enrichment. The Property the government will sell is worth at least $75,000 more than it would have been worth absent petitioners' improvements. The government will obtain a windfall created entirely by innocent third parties. This is precisely the scenario equitable liens were designed to prevent. The absence of a perfected statutory lien is irrelevant; it is beside the point. Equity prevents the very windfall the Report would enable.

Petitioners, innocent third parties, enhanced the Property's value by at least $75,000 before receiving any meaningful (or lawful) notice of the forfeiture proceedings. The Preliminary Order of Forfeiture at issue was not entered until August 8, 2022, [ECF No. 416], four months after Mr. Falcon acquired the LLC (April 5, 2022) and five months after he began making improvements (March 2022). Third, the government now seeks to appropriate that $75,000 increase without any compensation to those who created it. The government will obtain a property worth $75,000 more than it would have been worth at the time of forfeiture, purely as a windfall from petitioners' good-faith investments. This offends fundamental fairness. That is the kind of deprivation and windfall that due process abhors. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) (notice requirements); *see also United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993)("Individual freedom finds tangible

12

expression in property rights."). Equity requires at least the recognition of petitioners' improvement interest to prevent an uncompensated taking in substance and effect.

*Bona fide purchaser interests under 21 U.S.C. § 853(n)(6)(B).*

Petitioners further object to the Report's failure to address the bona fide purchaser claim under 21 U.S.C. § 853(n)(6)(B), even though petitioner Falcon acquired the LLC for value and without cause to believe the Property was forfeitable at the time of contracting and initial expenditures, where the law of the case establishes the illegality of the government's use of lis pendens notices. *See* ECF No. 443 at 7.

*Denial of leave to amend.*

In addition, petitioners object to the Report's recommendation of denial of leave to amend in light of the novel dominion-and-control recommendation. The Report asserts that "Nothing precluded Mr. Falcon from filing a petition, in his individual capacity, taking the position that he, not the LLC, owned the Property." Report at 30. But the law of this case, until the Report at least, was that a single-member owner's actions in relation to the property did not divest the LLC of ownership. *See* ECF No. 438 at 15; ECF No. 443 at 3. Petitioners' lack of notice of the abrupt abandonment of the law of the case to the newly asserted and entirely novel formality theory of the Report, combined with the applicability of equitable tolling to the 30-day period in 21 U.S.C. § 853(n)(2), warrants granting leave to amend the petition as requested in the petition itself.

Substitute-asset forfeiture, unlike forfeiture of proceeds or instrumentalities, targets legally acquired property to satisfy a money judgment. *See United States v.*

*Jarvis,* 499 F.3d 1196 (10th Cir. 2007). Ancillary proceedings exist to safeguard innocent owners, and the Government bears the burden to justify forfeiture of substitute assets. *See United States v. Davenport*, 668 F.3d 1316, 1322–24 (11th Cir. 2012). Here, the due process concerns converge. The Property has no criminal nexus: it was purchased with clean funds before any criminal proceedings and is being forfeited solely as a substitute asset.

The Report's refusal to permit amendment overlooks both the posture of prior rulings and the equitable tolling principles applicable to § 853(n)(2)'s 30-day period. The Eleventh Circuit has recognized that equitable tolling may apply where a petitioner lacks notice or where strict enforcement would offend due process. Granting leave is discretionary. *See United States v. Sanchez*, No. 22-11923, 2023 WL 5844958, at *5 (11th Cir. Sept. 11, 2023) (finding no abuse of discretion where "[b]y the time Ms. Palacios sought leave to add her signature to the petition the mandatory thirty-day deadline had long since passed"). Here, unlike *Sanchez*, petitioners conditionally sought leave to amend in the petition itself, well within the 30-day period.

## CONCLUSION

For the foregoing reasons, the Court should sustain the objections, decline to adopt the Report, and enter an order finding that the LLC exercised sufficient dominion and control to establish standing and that it is the owner of the property entitled to relief. Alternatively, the Court should recognize petitioners' $75,000 equitable lien under Florida's settled equitable-lien jurisprudence or grant leave to amend so that Falcon may assert his individual interest under 21 U.S.C. § 853(n)(6),

with equitable tolling of § 853(n)(2)'s 30-day period on grounds of lack of notice and good-faith reliance. These alternative forms of relief represent the minimum required by Florida law and federal due process principles to prevent unjust enrichment and an uncompensated taking.

          Respectfully submitted,

          s/ Richard C. Klugh
          Richard C. Klugh, Esq.
          Fla. Bar No. 305294
          Counsel for Claimants
          40 N.W. 3rd Street, PH1
          Miami, Florida 33128
          Tel. (305) 536-1191
          Fax (305) 536-2170
          E-Mail rklugh@klughwilson.com